# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

|   |   |
|---|---|
| Plaintiff, | CASE NO. CR 15-252 (PKC) |
| v. |   |
| HERNAN LOPEZ, and CARLOS MARTINEZ |   |
| Defendants. |   |

## NOTICE OF MOTION AND MOTION FOR SEVERANCE OF DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; PROPOSED ORDER

**SPERTUS, LANDES & UMHOFER, LLP**
Matthew Donald Umhofer
James W. Spertus
Samuel A. Josephs

*Attorneys for Hernan Lopez*

**MCCOOL LAW PLLC**
Steven J. McCool
Julia M. Coleman

Michael T. Cornacchia

*Attorneys for Carlos Martinez*

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that defendants Hernan Lopez and Carlos Martinez, by and through their counsel of record, respectfully move this Court at the United States Courthouse for the Eastern District of New York, located at 225 Cadman Plaza East, Brooklyn, New York 11201, at the Courtroom of the Honorable Pamela K. Chen, on such date and at such time as the Court sets, for: (1) an order under Federal Rule of Criminal Procedure 8(b) or, in the alternative, under Federal Rule of Criminal Procedure 14, severing them from Full Play Group, S.A., for a separate trial; and (2) an order under Federal Rule of Criminal Procedure 7(d) striking paragraphs 1-19, 23-70, 75-112, 129, 131, and 134, as well as the first sentence of paragraph 20 and the phrase "was an individual associated with the enterprise" in paragraphs 21 and 22 from the third superseding indictment. This motion is supported by the attached memorandum; the files and records in this case; and any evidence or argument presented at a hearing on this matter.

Dated: June 29, 2020

Respectfully submitted,

SPERTUS, LANDES & UMHOFER, LLP

/s/ Matthew Donald Umhofer

Matthew Donald Umhofer
James W. Spertus
Samuel A. Josephs

*Attorneys for Hernan Lopez*

MCCOOL LAW PLLC

/s/ Steven J. McCool

Steven J. McCool
Julia M. Coleman

/s/ Michael T. Cornacchia
Michael T. Cornacchia

*Attorneys for Carlos Martinez*

2.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

The government filed a third superseding indictment ("TSI") just days before the five-year statute of limitations was set to expire on the wire transactions charged against Hernan Lopez and Carlos Martinez.  In its haste to charge new defendants before the statute ran, however, the government stumbled.

Rather than bring a separate case against Mr. Lopez and Mr. Martinez based on the limited conduct actually alleged against them, the government lumped them in with a host of previously charged defendants, even though Mr. Lopez and Mr. Martinez are not implicated in— are not even alleged to have known about—any of the other conspiracies and substantive offenses charged in the TSI.

In doing so, the government violated Federal Rule of Criminal Procedure 8(b), which prohibits charging two or more defendants with similar but unrelated offenses in the same indictment.  The TSI implicates 17 defendants and many more co-conspirators in 12 different conspiracies involving bribes paid to officials of at least 10 different national and international soccer organizations in 4 global regions on 2 continents over the course of nearly 20 years.  In Count 1, the government claims that this sprawling saga constituted one giant RICO conspiracy, and it has corralled all of the named defendants into that count—all, that is, except Mr. Lopez and Mr. Martinez.

Conspicuously absent from the RICO charge, Mr. Lopez and Mr. Martinez are also minimally implicated in the one scheme the government claims they did participate in: the Copa Libertadores Scheme #2.  But that scheme does not share a substantial factual relationship with any of the other eleven schemes described in the TSI.  And the government does not allege that Mr. Lopez or Mr. Martinez knew anything about any of those other schemes, or that either of

them knowingly participated in a common plan that united the charged schemes.  Because the government's allegations against Mr. Lopez and Mr. Martinez are unrelated to the broader RICO, the charges against them must be severed for trial.

Severance is also necessary under Federal Rule of Criminal Procedure 14, to avoid the substantial risk of spillover prejudice.  A trial with any of the other codefendants—all of whom, including newly indicted Full Play Group, S.A., are charged in the RICO conspiracy—would be far longer than a trial limited to the narrow allegations against Mr. Lopez and Mr. Martinez, and would include a surfeit of evidence about an enterprise allegedly corrupted by two decades of bribes, kickbacks, and money laundering (TSI ¶ 63) that did not involve either Mr. Lopez or Mr. Martinez.  Such evidence would be inadmissible at a separate trial involving only these two uniquely situated defendants and would undoubtedly, and unfairly, prejudice them.

The limited scope of the allegations against Mr. Lopez and Mr. Martinez spotlights the weakness of the government's case against them.  They have been brought before this Court for conduct that purportedly occurred as far back as fifteen years ago, with people they have never spoken to, and by businesses they did not oversee.  Unfair as these charges are, Mr. Lopez and Mr. Martinez understand they must fight them in court and are looking forward to vindicating themselves at trial.  They just want a fair chance to do so. The government should not be permitted to shore up its deficient case by deluging the jury with facts concerning conspiracies that the government concedes did not involve Mr. Lopez and Mr. Martinez.  The limited charges against them should be severed for trial.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     RICO Conspiracy

Count 1 of the TSI charges an overarching RICO conspiracy that encompasses 12 separate and free-standing schemes among different groups of people purportedly engaged in bribing officials of several different continental, regional, and national organizations affiliated

with FIFA, soccer's international governing body, over the course of more than 20 years.[1] Hernan Lopez and Carlos Martinez are charged in connection with only one of the schemes described in the TSI, but they are *not* charged in the RICO conspiracy.  In fact, they are the *only* named defendants in the TSI who have not been charged in Count 1.[2]

B.      **The Charged Schemes**

The twelve bribery and kickback schemes charged in the TSI are separated by geography, objective, and time.

One of those schemes, the UNCAF Region Friendlies Scheme, purportedly focused on obtaining the rights to promote the national soccer teams of Costa Rica, El Salvador, and Guatemala in international friendlies.  (TSI ¶ 104.)  Another, the 2011 FIFA Presidential Election Scheme, concerns a candidate for FIFA president who allegedly paid others to vote for him.  (TSI ¶¶ 96-99.)  In two of the schemes, members of FIFA's executive committee allegedly accepted bribes in exchange for their votes for the nation that would have the honor of hosting the 2010 (Jack Warner), 2018 (Ricardo Teixeira, Nicolas Leoz, Co-Conspirator #1), and 2022 (Jack Warner, Rafael Salguero) World Cup tournaments. (TSI ¶¶ 90-95.)

While several of the schemes allegedly related to media and marketing rights for soccer tournaments, those tournaments took place in distant regions of the world (South America, North America, Central America, the Caribbean), some among national teams (*e.g.*, Copa America), others among professional club teams (*e.g.*, Copa Libertadores).  (TSI ¶¶ 67-69, 70-74, 75-78, 79, 80-85, 86-89, 100-103, 104, 105-110.)

---

[1] For the Court's convenience, a chart of the defendants and crimes charged in each count of the TSI, as well as the scheme on which each count is based, is attached to this memorandum as **Appendix A**.

[2] Manuel Burga is also not charged in the RICO conspiracy in the TSI.  But that is only because Burga was charged with RICO conspiracy in the second superseding indictment, went to trial on that charge, and was acquitted.

### C.      The Sparse Allegations against Mr. Lopez and Mr. Martinez

In the government's broad-reaching, decades-spanning, 12-scheme, 17-defendant, 53-count RICO indictment, Mr. Lopez and Mr. Martinez allegedly played a minimal role (though in truth, they played no role at all).  They are conspicuously *not* named as defendants in the RICO conspiracy; they are charged in connection with *only one* of the 12 schemes described in the TSI, the Copa Libertadores Scheme #2; and they are the only defendants charged in connection with just one scheme.  This is the full extent of the allegations against them:

> 73.      [B]etween 2005 and 2015, Alejandro Burzaco and the defendants HUGO JINKIS, MARIANO JINKIS, FULL PLAY, HERNAN LOPEZ and CARLOS MARTINEZ, together with others, agreed to pay, did pay and facilitated the concealment of annual bribe and kickback payments to certain high-ranking CONMEBOL officials, including Luis Bedoya, Carlos Chavez, Rafael Esquivel, Sergio Jadue, Jose Maria Marin and Juan Angel Napout, as well as to the defendants MANUEL BURGA, LUIS CHIRIBOGA, MARCO POLO DEL NERO, EDUARDO DELUCA, EUGENIO FIGUEREDO, JOSE LUIS MEISZNER, ROMER OSUNA and RICARDO TEIXEIRA, in exchange for the officials' support of T&T as the holder of the rights to the Copa Libertadores and other soccer events.

> 74.      The defendants HERNAN LOPEZ and CARLOS MARTINEZ, together with others, relied on loyalty secured through the payment of bribes to certain CONMEBOL officials in connection with the Copa Libertadores to advance the business interests of Fox beyond the Copa Libertadores, including by obtaining confidential information from Co-Conspirator #1 regarding bidding for the rights to broadcast the 2018 and 2022 World Cup tournaments in the United States.

Based on these sparse allegations—which Mr. Lopez and Mr. Martinez categorically deny—they and eleven others were charged with conspiracy to commit wire fraud (Count 9), wire fraud (Counts 10-20), and money laundering conspiracy (Count 21).

### D.      Other Counts Involving Codefendants

While the defendants charged in Counts 9 through 20 with Mr. Lopez and Mr. Martinez are charged in other counts of the TSI, those counts have no other factual connection with the Copa Libertadores Scheme #2, or with Mr. Lopez or Mr. Martinez.

For example, in Counts 7 and 8, the TSI charges Eduardo DeLuca with wire fraud and money laundering conspiracies in connection with the Copa Libertadores Scheme #1.  But that scheme's goal was sponsorship, not television broadcasting, rights (TSI ¶ 70); and the TSI does not allege that either Mr. Lopez or Mr. Martinez knew anything about it.

In Counts 29-36, based on the Copa America Scheme, the Full Play defendants and the same CONMEBOL officials charged in Counts 9 through 21 are alleged to have conspired to obtain media and marketing rights to the Copa America tournament—which, unlike the Copa Libertadores, involves national teams, not private club teams—for a company called Datisa S.A. (TSI ¶¶ 80-85.)  In addition to these factual differences, the substantive wire fraud counts for the two schemes are entirely different; and, unlike the Copa Libertadores Scheme #2, the Copa America Scheme alleges that bribes were paid to Jeffrey Webb, the President of CONCACAF. (*See* TSI ¶¶ 85, 133, 154.)  There is nothing in these counts that implicates either Mr. Lopez or Mr. Martinez.

Counts 27-28, which encompass the CONMEBOL World Cup Qualifiers/Friendlies Scheme, allege that the Full Play defendants conspired with defendant Luis Chiriboga and others to obtain for Full Play the rights to certain World Cup qualifying matches and friendlies among CONMEBOL national teams.  (TSI ¶ 79.)  These counts also have no connection to Mr. Lopez or Mr. Martinez.

The TSI charges at least six other schemes that do not involve any of the defendants charged in Counts 9 through 21:  the CFU World Cup Qualifier Scheme #1, the CFU World Cup Qualifier Scheme #2, the UNCAF Region World Cup Qualifiers Scheme, the UNCAF Region Friendlies Scheme, the 2011 FIFA Presidential Election Scheme, and the 2018 and 2022 World Cup Vote Schemes.  Some of these charged schemes are so clearly unrelated to the Copa Libertadores Scheme #2 that the TSI fails to allege even a single fact connecting Mr. Lopez or

Mr. Martinez to four other defendants listed in the caption—Ariel Alvarado, Gerard Romy, Reynaldo Vasquez, and Jack Warner.

## III.    ARGUMENT

### A.    Misjoinder – Rule 8(b)

The single scheme charged against Mr. Lopez and Mr. Martinez—the Copa Libertadores Scheme #2—does not involve a common object, and does not share a substantial factual relationship, with any of the other schemes charged in the TSI.  Therefore, Mr. Lopez and Mr. Martinez have been improperly joined as defendants in the TSI and should be severed for trial.

### 1.    Legal Background

Federal Rule of Criminal Procedure 8(b) allows joinder of two or more defendants in a single indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  However, Rule 8(b) prohibits "charging several defendants with similar but unrelated offenses."  *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988) (internal quotation marks omitted).

The Second Circuit has interpreted the "same series of acts or transactions" language in Rule 8(b) to allow joinder only where two or more persons' criminal acts (1) are "unified by some substantial identity of facts or participants," or (2) "arise out of a common plan or scheme."  *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990) (internal quotation marks omitted); *see also United States v. Rajaratnam*, 753 F. Supp. 2d 299, 303–04 (S.D.N.Y. 2010).

Under the "substantial identity" test, joinder may be proper where, if separate trials were held, the evidence at one trial "would essentially duplicate the evidence at the other," *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003); or where "proof of one scheme is indispensable for a full understanding of the other," *Turoff*, 853 F.2d at 1044.  Conversely, joinder is improper where "[c]ommission of one of the offenses neither depended upon nor

necessarily led to the commission of the other" and "proof of the one act neither constitute[s] nor depend[s] upon proof of the other." *United States v. Halper*, 590 F.2d 422, 429 (2d Cir. 1978).

Under the "common plan or scheme test," joinder may be proper where "one scheme stemmed from the other" such that one scheme is "part and parcel" of the other. *Turoff*, 853 F.2d at 1044. Knowledge of another conspiracy may also be an "indicator of whether or not there is a common scheme or purpose." *United States v. Ohle*, 678 F. Supp. 2d 215, 225 (S.D.N.Y. 2010). However, "the mere existence of similarities between some of the actors or some of the crimes committed will not suffice." *United States v. Carrozza*, 728 F. Supp. 266, 270 (S.D.N.Y. 1990), *aff'd* 956 F.2d 1160 (2d Cir. 1992).

In considering a motion to sever under Rule 8(b), the Court must take "a common sense approach," *Feyrer*, 333 F.3d at 114, asking whether "a reasonable person would easily recognize the common factual elements that permit joinder," *Turoff*, 853 F.2d at 1044.

"Under the plain language of Rule 8(b), the decision to join parties turns on what is 'alleged' in the 'indictment.'" *United States v. Rittweger*, 524 F.3d 171, 178 (2d Cir. 2008). "Unless the standards set out in Rule 8(b) are met, a motion for severance should be granted even absent a showing of prejudice." *Feyrer*, 333 F.3d at 113.

### 2.     Discussion

Except for the conduct alleged in Counts 9 through 21—which covers only the Copa Libertadores Scheme #2—Mr. Lopez and Mr. Martinez are not "alleged to have participated in the same act or transaction" as any of the other defendants. *See* Fed. R. Crim. P. 8(b). Notably, the TSI does not allege that Mr. Lopez or Mr. Martinez participated in the RICO conspiracy charged in Count 1, which encompasses multiple schemes, transactions and acts unrelated to Mr. Lopez and Mr. Martinez. Thus, joinder of Mr. Lopez and Mr. Martinez in the TSI is not authorized on this ground under Rule 8(b).

Nor does the TSI satisfy either of the tests used to evaluate the alternative "same series of acts or transactions" grounds for joinder under Rule 8(b).

*First*, Counts 9 through 21, which charge wire fraud and money laundering offenses arising from Copa Libertadores Scheme #2, are not "unified by some substantial identity of facts or participants" with the other schemes charged in the TSI. *Cervone*, 907 F.2d at 341. In the Copa Libertadores Scheme #2, Alejandro Burzaco, the Full Play defendants, and Mr. Lopez and Mr. Martinez are alleged to have paid money to certain CONMEBOL officials "in exchange for the officials' support" of a company called T&T Sports Marketing Ltd. as the holder of television broadcasting rights for the tournament. (*See* TSI ¶ 73.) No other scheme in the TSI has as its object securing the television broadcasting rights to the Copa Libertadores tournament. No other scheme includes Mr. Lopez, Mr. Martinez, or T&T Sports Marketing Ltd. No other scheme was allegedly advanced by the ten wires charged in Counts 10 through 20—including the RICO conspiracy charged in Count 1. In short, the alleged conduct underlying the Copa Libertadores Scheme #2 counts does not overlap in any material way with the conduct underlying any of the other counts in the TSI. Thus, evidence relevant to Counts 9 through 21 will not come close to duplicating evidence for the other eleven schemes charged in the TSI. For the same reason, proof of no other scheme is indispensable for a full understanding of the Copa Libertadores Scheme #2, and vice versa, *Turoff*, 853 F.2d at 1044; commission of the Copa Libertadores Scheme #2 did not depend on or necessarily lead to the other charged schemes, *Halper*, 590 F.2d at 429; and proof of Copa Libertadores Scheme #2 would neither constitute nor depend on proof of any of the other schemes, *id.*

*Second*, the Copa Libertadores Scheme #2 does not "arise out of a common plan or scheme" with any of the other schemes charged in the TSI. *Cervone*, 907 F.2d at 341. There is no allegation that the Copa Libertadores Scheme #2 "stemmed from" any of the other eleven fraud schemes such that it is "part and parcel" with them. *See Turoff*, 853 F.2d at 1044. Nor

does the TSI allege that Mr. Lopez or Mr. Martinez had knowledge of any of the other schemes. *See Ohle*, 678 F. Supp. 2d at 225.

That some codefendants charged in Counts 9 through 21 were also involved in other schemes does not justify the joinder of Mr. Lopez and Mr. Martinez in the TSI.  To the contrary, it further justifies severance.  The TSI does not allege that Mr. Lopez or Mr. Martinez had any knowledge of, much less involvement in, any of the other schemes charged in the TSI.  Take, for example, the Copa America 2013 Scheme charged in Counts 29 through 36, which names the others charged in the Copa America Scheme #2 but is otherwise completely different from that scheme.  Again, Copa Libertadores Scheme #2 alleges that Burzaco, the Full Play defendants, Mr. Lopez, and Mr. Martinez conspired to pay kickbacks to CONMEBOL officials "in exchange for the officials' support" of T&T Sports Marketing Ltd. as the holder of the television broadcasting rights to the Copa Libertadores. (TSI ¶ 73.)  By contrast, the Copa America 2013 Scheme alleges that Burzaco, Jose Hawilla, and the Full Play defendants paid CONMEBOL officials bribes in exchange for awarding the media and marketing rights to the 2013 Copa America to a company called Datisa S.A. (TSI ¶ 84.)  The schemes involved different tournaments, different media partners, and different wires, and there is no allegation in the TSI that either Mr. Lopez or Mr. Martinez was even aware of the Copa America 2013 Scheme's existence.  No reasonable person "would easily recognize the common factual elements" of these schemes, *Turoff*, 853 F.2d at 1044, because they do not exist.

The TSI's failure to allege that Mr. Lopez or Mr. Martinez knew about or participated in any of the other charged conspiracies should be decisive for the Rule 8(b) analysis.  In many similar cases in this Circuit, courts have severed counts on the principle that a defendant charged in one conspiracy should not be burdened with the risks inherent in joinder of other alleged conspiracies "simply because he had the misfortune of being charged with another defendant who was subject also to other accusations."  *United States v. Kouzmine*, 921 F. Supp. 1131, 1133

11.

(S.D.N.Y. 1996) (severing counts where "there was no evidence that the defendants joined in the indictments were aware of or joined in all of the schemes alleged"); *see also, e.g.*, *Rajaratman*, 753 F. Supp. 2d at 308-309; *Ohle*, 678 F. Supp. 2d at 225.

For example, in *United States v. Giraldo*, a drug trafficking case, the district court severed counts charging Fermin and Giraldo from counts charging only Giraldo, even though Giraldo participated in both alleged offenses and all sales were to the same cooperating witness, because there was no allegation of a common plan uniting the offenses. 859 F. Supp. 52, 54 (E.D.N.Y. 1994).

Similarly, in *United States v. Gentile*, the district court severed counts in an indictment charging three conspiracies—one in which Gentile bribed Tsotsos, an IRS employee, to lower Gentile's tax liability, another in which Gentile and LaPonzina bribed Tsotsos to lower LaPonzina's tax liability, and a third in which Gentile and Lucadana did the same for Lucadana's benefit. 60 F.R.D. 686, 687 (E.D.N.Y. 1973). Notwithstanding the fact that Gentile and Tsotsos were common defendants to all three conspiracies and there would be some overlap in the evidence presented at separate trials, the district court granted LaPonzina's motion to sever the counts charged against him because "there is nothing in the indictment which indicates the defendants had acted in concert or participated in a common scheme or plan." *Id.* at 687-88.

In *United States v. Lech*, the indictment charged three bribery/fraud conspiracies involving the New York City Board of Education ("BOE")—one in which Russo and Fulton paid BOE officials bribes in connection with a construction project in Brooklyn, another in which Russo, Fulton, and Lech paid bribes to secure a $500,000 asbestos-removal contract, and a third in which Russo bribed BOE officials to induce them to enter into a long-term lease and commercial renovation project in Manhattan. 161 F.R.D. 255, 255-56 (S.D.N.Y. 1995). On Lech's motion to sever, the government conceded he did not know about the Brooklyn project but contended that joinder was proper because Lech was aware that the corrupt BOE official

with whom he and Fulton were dealing was involved in a separate criminal relationship with Fulton. *Id.* at 256. Then-District Court Judge Sotomayor rejected the government's arguments and severed Lech's counts from the others because "Lech had very little, if any, knowledge of the other schemes, and did not participate in them." *Id.* at 257.

This case is on all fours with *Giraldo*, *Gentile*, and *Lech*. While codefendants charged in the Copa Libertadores Scheme #2 may have been charged in other schemes, the TSI does not allege that either Mr. Lopez or Mr. Martinez knew about or participated in those other schemes, much less that Mr. Lopez and Mr. Martinez knew about or participated in a common plan uniting the schemes. Again, the government did *not* charge Mr. Lopez or Mr. Martinez in the RICO conspiracy. That is crucial because, according to the TSI, the RICO conspiracy *is* the common plan uniting the 12 schemes. (TSI ¶ 60.)

The only thing arguably common to the Copa Libertadores Scheme #2 and the other schemes charged in the TSI is the character, broadly speaking, of the underlying offenses— bribes paid to officials connected with one of FIFA's affiliated organizations. (TSI ¶ 73.) But Rule 8(b) "does not permit joinder of defendants solely on the ground that the offenses charged are of the same or similar character." *Turoff*, 853 F.2d at 1042 (quotation marks omitted). It requires a substantial unity of the facts supporting the charges—a unity so substantial that a trial on the challenged counts, if severed, would result in an essentially duplicate presentation of the evidence. As already shown, that is nowhere near the case for Counts 9 through 21. While many officials at FIFA and its affiliated continental and regional organizations may have accepted bribes over the past two decades, that does not mean that all those bribes were part of a common plan. Just as "[t]wo taxpayers using the same accountant to commit fraud are not acting in concert and cannot be joined if they have had no contact with one another," *Carrozza*, 728 F. Supp. at 271, so too Mr. Lopez and Mr. Martinez, who are alleged to have conspired to pay bribes in connection with Copa Libertadores Scheme #2 but are not alleged to have participated

in or have knowledge of any other scheme in the TSI, should not have been joined with the other defendants charged in this TSI.

Because none of the requisite tests for joinder is satisfied, the counts charging Mr. Lopez and Mr. Martinez must be severed.

### B.    Prejudicial Joinder – Rule 14

Even if the Court finds that severance is not required under Rule 8, severance is appropriate under Rule 14 where, as here, "substantial prejudice" would result from the offenses being tried together.  Fed. R. Crim. P. 14; *see also United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980) ("Even though distinct offenses have been properly joined under Rule 8, the court may order separate trials or grant a severance under Rule 14 if it appears that the defendant is prejudiced by the joinder. . . .  In order to prevail, the defendant must show . . . substantial prejudice.").

Rule 14 provides:  "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).  The Supreme Court has held that a district court may grant a severance under Rule 14 "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent a jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). On a motion under Rule 14, the trial court should consider: (i) the number of defendants and counts; (ii) the complexity of the indictment; (iii) the estimated length of trial; (iv) disparities in the amount or type of proof offered against the defendants; (v) disparities in the degrees of involvement by defendants in the overall scheme; (vi) possible conflict between defense theories or strategies; (vii) potential prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant; and (viii) potential prejudice if exculpatory evidence were unavailable in a joint trial, but would have been available to a

defendant tried alone. *See, e.g.*, *Zafiro*, 506 U.S. at 539; *United States v. Santiago*, 174 F. Supp.

2d 16, 22 (S.D.N.Y. 2001); *United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987).

Failure to sever Mr. Lopez and Mr. Martinez for trial will create a severe risk of prejudice

due to their limited alleged role in only one of the numerous schemes charged in the TSI and the

fact that they were not charged in the RICO conspiracy (Count 1).  *United States v. Salameh*, 152

F.3d 88, 115 (2d Cir. 1998) ("'Prejudice' occurs in joint trials when proof inadmissible against a

defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its

admission is proper."); *see also Cervone*, 907 F.2d at 342 (severance may be required where

"spillover might influence a jury to attribute criminal intent to ambiguous conduct associating a

particular defendant with a conspiracy").  As already discussed, Mr. Lopez and Mr. Martinez are

charged in connection with the Copa Libertadores Scheme #2 only, and are *not* charged in

connection with any of the other eleven schemes or the RICO conspiracy.  Nor, obviously, are

they implicated in any way in the immigration fraud and tax fraud counts brought against

Eugenio Figueredo in Counts 48 through 53.  Thus, all the government's evidence on Counts 1

through 8 and 22 through 53 would be irrelevant and inadmissible against Mr. Lopez and Mr.

Martinez.

Being joined to defendants facing trial on the RICO conspiracy charged in Count 1

would significantly exacerbate the risk of prejudice to Mr. Lopez and Mr. Martinez.  "Absent

severance, these defendants would face a lengthy trial that would include evidence of a RICO

enterprise in which [neither] of them is charged with participating. This evidence might prejudice

these defendants significantly because the trial would include a great deal of evidence about [a

deeply corrupt enterprise] which would not be presented at a separate trial and which is not

alleged to have been a part of their criminal activity. Thus, there is clear potential for spillover

prejudice in this case." *United States v. Bellomo*, 954 F. Supp. 630, 650 (S.D.N.Y. 1997); *see

also United States v. DiNome*, 954 F.2d 839, 844-45 (2d Cir. 1992) (reversing mail and wire

fraud convictions of two defendants tried with RICO codefendants because RICO-related evidence was "irrelevant yet highly prejudicial in the context of the remaining mail and wire fraud charges"); *United States v. Burke*, 789 F. Supp. 2d 395, 397 (E.D.N.Y. 2011) (granting severance based upon potential for spillover prejudice where movant was charged with predicate act of witness tampering, but was not alleged to be "part of the criminal enterprise" or "charged with any of the racketeering counts"); *United States v. Maisonet*, No. S3 97 CR. 0817(DC), 1998 WL 355414, *4–5 (S.D.N.Y. July 1, 1998) (granting severance motion of non-RICO defendants charged with narcotics conspiracy despite government's argument that the narcotics conspiracy "tie[d] virtually all the defendants together").  This consideration weighs heavily in favor of a severance.

Another relevant factor under Rule 14 is whether the evidence against each defendant is "straightforward" and unlikely to confuse the jury.  *See United States v. Hernandez*, 85 F.3d 1023, 1029 (2d Cir. 1996); *United States v. Chang An-Lo*, 851 F.2d 547, 556 (2d Cir. 1988).  It is well-recognized that the risks of prejudicial joinder are higher in conspiracy cases because "[a] large number of defendants, many of whom may be charged in some but not all of the counts, coupled with complex and at times overlapping evidence, may test a single jury's ability to compartmentalize the evidence and to make culpability distinctions among the various defendants."  Wright & Miller, 1A FED. PRAC. & PROC. CRIM. § 224 (Prejudicial Joinder of Defendants) (5th ed.).  Indeed, in *Zafiro*, the Supreme Court warned that, "[w]hen many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened."  506 U.S. at 539.  For these reasons, there is very high likelihood of juror confusion at a trial involving the RICO conspiracy, a key concern for Mr. Lopez and Mr. Martinez, who are the only defendants not named in that charge.  At a RICO trial, the law allows the government to introduce evidence of numerous criminal acts by charged and uncharged persons to prove the existence and nature of the RICO enterprise and a

pattern of racketeering activity, even where defendants charged in the conspiracy may credibly claim that they had no knowledge of and did not participate in those acts.  *See DiNome*, 954 F.2d at 843; *United States v. Tellier*, 83 F.3d 578, 582 (2d Cir. 1996) ("A RICO charge allows the government to introduce evidence of criminal activities in which a defendant did not participate to prove the enterprise element."). Indeed, on a RICO conspiracy charge, the jury will generally be instructed that the government does not have to prove that each defendant charged in the conspiracy was aware of the conduct of the others.  But because Mr. Lopez and Mr. Martinez are not charged in the RICO conspiracy, these rules do not apply to them, and evidence of the criminal acts that may be relevant to the RICO charge would be inadmissible against them. Thus, there is a significant chance that, without a separate trial that does not include Count 1, the jury will be confused about what evidence it may consider with respect to the charges against Mr. Lopez and Mr. Martinez.

Accordingly, if the Court determines that severance under Rule 8(b) is not warranted, the Court should grant the requested severance under Rule 14.

### C.        Surplusage – Rule 7(d)

When the Court severs Counts 9 through 21 for a separate trial, Federal Rule of Criminal Procedure 7(d) also requires that the following allegations be stricken from the TSI as prejudicial surplusage:

- Paragraphs 1 through 19 in their entirety;

- The first sentence of paragraph 20, which alleges: "The defendant FULL PLAY was a member of, and was associated with, the enterprise."

- The phrase "was an individual associated with the enterprise" from paragraphs 21 and 22, which describe Mr. Lopez and Mr. Martinez.

- Paragraphs 23 through 70 in their entirety.

- Paragraphs 75 through 112 in their entirety.

17.

- Paragraphs 129, 131, and 134, which incorporate paragraphs 1 through 112 by reference into Counts 9, 10-20, and 21, respectively.

Rule 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information."  Fed. R. Crim. P. 7(d).  Although a Rule 7(d) motion "may only be granted where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial," the trial court has "wide discretion in coping with such motions." *United States v. Mahaffy*, 446 F. Supp. 2d 115, 118 (E.D.N.Y. 2006) (internal quotation marks omitted).  "The danger to be protected against is that material prejudicial and otherwise inadmissible will be conveyed to the jury when the indictment is read."  *United States v. Swinton*, No. 3:19-65-1 (VLB), 2020 WL 1940744, at *1 (D. Conn. Apr. 22, 2020) (internal quotation marks and citation omitted)); *see also United States v. Farmer*, 583 F.3d 131, 144-148 (2d Cir. 2009) (vacating attempted murder conviction due in part to government's "misuse of [defendant's] nickname" following district court's denial of defendant's motion to strike nickname from indictment).  District courts in this Circuit—including in the Eastern District— repeatedly have granted motions to strike surplusage to guard against this danger.  *See, e.g.*, *Swinton*, No. 3:19-65-1 (VLB), 2020 WL 1940744, at *1 (D. Conn. Apr. 22, 2020) (granting portion of motion to strike concerning details of defendant's prior conviction); *United States v. Fishenko*, No. 12 CV 626 SJ, 2014 WL 4804215, at *8-9 (E.D.N.Y. Sept. 25, 2014) (granting, following parties' agreement at oral argument, portion of defendant's motion to strike seeking to omit or redact from the indictment "background information in the International Emergency Economic Powers Act ('IEEPA'), and the Arms Export Control Act ('AECA')"); *United States v. Miller*, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009) ("The court agrees that references to the 'Ralph Nathan Stokes' alias are irrelevant to the crime charged and prejudicial in light of the court's decision to grant defendant's motion *in limine* to exclude evidence regarding the 1996 passport fraud.  Accordingly, this motion [to strike] is granted."); *United States v. Saporta*, 270

F. Supp. 183, 186 (E.D.N.Y. 1967) ("[T]he inclusion of the Triangle stock transaction is not only surplusage but is also highly prejudicial, and the allegations pertaining to this transaction must be stricken pursuant to Rule 7(d).").

Here, unless the Court strikes the allegations identified above, the jury will be presented with material that is irrelevant to the narrow charges against Mr. Lopez and Mr. Martinez, and that is undeniably inflammatory and prejudicial. The portions of the TSI that Mr. Lopez and Mr. Martinez seek to strike are completely unrelated to the Copa Libertadores Scheme #2—the lone scheme in which Mr. Lopez and Mr. Martinez are alleged to have participated. Moreover, as set forth in detail above, the irrelevant portions of the TSI that Mr. Lopez and Mr. Martinez seek to strike concern at least eleven other schemes purportedly aimed at corrupting numerous continental, regional, and national organizations affiliated with FIFA that allegedly were carried out over the course of more than 20 years. Inclusion of these irrelevant, inflammatory allegations would "impermissibly broaden the charges against" Mr. Lopez and Mr. Martinez—a result that Judge Matsumoto determined in the analogous case of *United States v. Greebel* would result in an unacceptable risk of jury confusion and prejudice. *See* No. 15-CR-637 (KAM), 2017 WL 3610570, at *1, at *3 (E.D.N.Y. Aug. 4, 2017). In that case, Greebel moved to strike language that "implie[d] that [he] played a role in orchestrating all four schemes described in the Superseding TSI," despite the fact that the "specific charges against him. . . allege[d] that he was involved in orchestrating [only] two specific schemes." *Id.* He argued that the language "would permit the government to 'enlarge' the charges against him by implicating him in the other schemes described in the Superseding TSI." *Id.* Judge Matsumoto granted the motion, explaining that inclusion of the language at issue "risk[ed] an improper inference that Mr. Greebel was involved in orchestrating all four schemes, conduct beyond the two allegedly fraudulent schemes charged by the grand jury in the Superseding TSI" by "broaden[ing] the actual charges against him, . . . creat[ing] a significant risk of jury confusion and prejudice." *Id.*

19.

at *1, *3 (citing *United States v. Kassir*, No. S2 04 CR. 356 (JFK), 2009 WL 995139, at *4 (S.D.N.Y. Apr. 9, 2009)) (remaining citations omitted).  Just as in *Greebel*, the government's inclusion in the Superseding TSI of allegations concerning nearly a dozen other schemes in which Mr. Lopez and Mr. Martinez are not charged will create a significant risk of jury confusion and prejudice unless the Court strikes those irrelevant, inflammatory allegations.

Mr. Lopez and Mr. Martinez therefore respectfully ask the Court to grant their request to strike from the TSI paragraphs 1-19, 23-70, 75-112, 129, 131, and 134, as well as the first sentence of paragraph 20 and the phrase "was an individual associated with the enterprise" in paragraphs 21 and 22.

### III.    CONCLUSION

At the eleventh hour, the government decided to join Mr. Lopez and Mr. Martinez in a third superseding indictment rather than charge them in a separate indictment—despite the fact that Mr. Lopez and Mr. Martinez were not being charged as participants in the TSI's over-arching RICO conspiracy and are the *only* defendants in this case's five-year history who have *not* been charged with RICO conspiracy.  The only other defendant added by the TSI—Full Play—is also the only other defendant likely to stand trial at this time.  If the government's flawed charging decision is allowed to stand, the trial involving Mr. Lopez and Mr. Martinez will feature extensive evidence relevant only to Full Play Group, S.A.—which is implicated in the RICO conspiracy and at least one other conspiracy alleged in the TSI.  Filling up the trial with extraneous Full Play-focused evidence irrelevant to Mr. Lopez and Mr. Martinez would frustrate the very purpose of Rule 8, and the inevitable, unfairly prejudicial spillover from that evidence is the very thing that Rule 14 is intended to prevent.

For the reasons discussed in this motion, the Court should ensure the fairness of a trial involving Mr. Lopez and Mr. Martinez by severing them as defendants for trial on Counts 9 through 21—or in the alternative, severing the counts at issue and limiting the trial to Counts 9

through 21—and striking the superfluous and prejudicial portions of the TSI, specifically

paragraphs 1-19, 23-70, 75-112, 129, 131, and 134, as well as the first sentence of paragraph 20

and the phrase "was an individual associated with the enterprise" in paragraphs 21 and 22.

Dated: June 29, 2020                    Respectfully submitted,

                                        SPERTUS, LANDES & UMHOFER, LLP

                                        /s/ Matthew Donald Umhofer

                                        Matthew Donald Umhofer
                                        James W. Spertus
                                        Samuel A. Josephs

                                        *Attorneys for Hernan Lopez*

                                        MCCOOL LAW PLLC

                                        /s/ Steven J. McCool
                                        Steven J. McCool
                                        Julia M. Coleman

                                        /s/ Michael T. Cornacchia
                                        Michael T. Cornacchia

                                        *Attorneys for Carlos Martinez*

**APPENDIX A**

| Counts | Charged Crimes | Organization(s) | Scheme | Charged Defendants |
|---|---|---|---|---|
| 1 | RICO Conspiracy | ALL | ALL | ALL (except Lopez, Martinez, Burga) |
| 2-5 | Wire Fraud Conspiracy, Wire Fraud, Money Laundering Conspiracy, Money Laundering | CFU | CFU World Cup Qualifiers #1 | Warner |
| 7-8 | Wire Fraud & Money Laundering Conspiracy | CONMEBOL | Copa Libertadores #1 | Deluca |
| 9-21 | Wire Fraud Conspiracy, Wire Fraud, Money Laundering Conspiracy | CONMEBOL | Copa Libertadores #2 | H. Jinkis M. Jinkis Full Play Lopez Martinez Burga Chiriboga Del Nero Deluca Figueredo Meiszner Osuna Teixeira |
| 22-26 | Wire Fraud Conspiracy, Wire Fraud, Money Laundering Conspiracy | CONCACAF/ FESFUT/ FEPAFUT | UNCAF Region World Cup Qualifiers | Romy Vasquez Alvarado |
| 27-28 | Wire Fraud & Money Laundering Conspiracy | CONMEBOL | CONMEBOL World Cup Qualifiers/ Friendlies Scheme | H. Jinkis M. Jinkis Fully Play Chiriboga |

| Counts | Charged Crimes | Organization(s) | Scheme | Charged Defendants |
|---|---|---|---|---|
| 29-36 | Wire Fraud Conspiracy, Wire Fraud, Money Laundering Conspiracy | CONMEBOL/ CONCACAF | Copa America | H. Jinkis M. Jinkis Full Play Burga Chiriboga Del Nero Deluca Figueredo Meiszner Osuna Teixeira |
| 37-38 | Wire Fraud & Money Laundering Conspiracy | CONCACAF/ CFU | 2011 FIFA Presidential Election | Warner |
| 39-41 | Wire Fraud Conspiracy, Wire Fraud | CONCACAF | CONCACAF Media and Marketing Rights | H. Jinkis M. Jinkis Alvarado |
| 42-45 | Wire Fraud Conspiracy, Wire Fraud, Money Laundering Conspiracy, Money Laundering | CONCACAF/ FESFUT | UNCAF Region Friendlies | Vasquez |
| 46-47 | Wire Fraud & Money Laundering Conspiracy | CONCACAF/ CFU | CFU World Cup Qualifiers #2 | Romy |