**FILED UNDER SEAL**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

HERNAN LOPEZ and
CARLOS MARTINEZ,

                Defendants.

CASE NO. 15-CR-252 (PKC)

**DEFENDANTS HERNAN LOPEZ AND CARLOS MARTINEZ'S NOTICE OF MOTION, MOTION TO COMPEL (1) PRODUCTION OF MATERIALS PURSUANT TO *BRADY* AND FED. R. CRIM. P. 16 AND (2) RESPONSES TO DISCOVERY REQUESTS AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL**

**SPERTUS, LANDES & UMHOFER, LLP**
Matthew Donald Umhofer
James W. Spertus
Samuel A. Josephs

**McCOOL LAW PLLC**
Steven J. McCool
Julia M. Coleman

Ramon A. Abadin

Michael T. Cornacchia

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that defendants Hernan Lopez and Carlos Martinez, by and through their counsel of record, respectfully move this Court at the United States Courthouse for the Eastern District of New York, located at 225 Cadman Plaza East, Brooklyn, New York 11201, at the Courtroom of the Honorable Pamela K. Chen, on such date and time as the Court sets, for an order requiring the government to: (1) identify all *Brady* materials in its productions or affirm that it has reviewed its productions and found no *Brady* materials; (2) produce all documents it obtained from 21st Century Fox and an Argentinian sports media company, Torneos y Competencias, S.A., or explain why those documents are not discoverable pursuant to Fed. R. Crim. P. 16 ("Rule 16") and *Brady v. Maryland*, 373 U.S. 83 (1963), and (3) provide specific responses to the discovery requests of Mr. Lopez and Mr. Martinez, set forth in their letters dated April 21, 2020 and April 27, 2020, respectively.

Dated: September 30, 2020

Respectfully submitted,

SPERTUS, LANDES & UMHOFER, LLP

/s/Matthew Donald Umhofer
Matthew Donald Umhofer
James W. Spertus
Samuel A. Josephs
*Attorneys for Hernan Lopez*

MCCOOL LAW PLLC

/s/Steven J. McCool
Steven J. McCool
Julia M. Coleman

/s/ Ramon A. Abadin
Ramon A. Abadin

/s/Michael T. Cornacchia
Michael T. Cornacchia

*Attorneys for Carlos Martinez*

# MEMORANDUM OF LAW

## INTRODUCTION

This motion seeks three forms of relief, each of which is reasonable considering the government's discovery productions to date.  Mr. Lopez and Mr. Martinez respectfully request that the Court enter an order requiring the government to: (1) identify all *Brady* materials in its productions or affirm that it has reviewed its productions and found no *Brady* materials; (2) produce all documents it obtained from 21st Century Fox ("Fox") and an Argentinian sports media company, Torneos y Competencias, S.A. ("Torneos") or explain why those documents are not discoverable pursuant to Fed. R. Crim. P. 16 ("Rule 16") and *Brady v. Maryland*, 373 U.S. 83 (1963), and (3) provide specific responses to the discovery requests that Mr. Lopez and Mr. Martinez set forth in their letters of April 21, 2020 and April 27, 2020, respectively.

For months, the government has responded to defense requests for *Brady* materials by merely stating that it "understands and will comply" with its *Brady* obligations, but there is considerable evidence that the government does not understand those obligations and has not complied with them.  The government has (incorrectly) asserted that there is not a single page of *Brady* material within the 18 million pages of documents it has produced.  That assertion is at odds with *Brady*, and is contradicted by documents the government has produced and favorable statements made to the government by a former colleague of Mr. Lopez and Mr. Martinez that the government recently disclosed to the defense (while adhering to its view that her statements were <u>not</u> *Brady*).  The government has also withheld more than one hundred thousand pages that Fox and Torneos, two companies at the heart of this case, produced in response to its request for documents related to this case.  The government has not explained its reasons for withholding these documents despite defense requests for an explanation.  Torneos has admitted its central role in the bribery scheme at issue.  Fox employed both Mr. Lopez and Mr. Martinez during the

1

relevant time period.  Thus, it is plainly clear that documents the government obtained from Fox and Torneos are discoverable under Rule 16 and should be produced.  Yet the government has not provided a valid reason for withholding any of those documents.

While the government has withheld Torneos and Fox documents, it has produced hundreds of ███████████████████████████████████████████████████ ███████████████████████████████████████████████████.  To be clear, none of these ██████ were found on Mr. Lopez's or Mr. Martinez's electronic devices and they do not have anything to do with Mr. Lopez, Mr. Martinez, or the government's case against them.  The production of these ██████ highlights the problems with the government's continued refusal to produce documents in response to the defense's requests, and it and undermines the government's continued reassurance that is has reviewed the materials in its possession and produced documents in compliance with its obligations.  Simply put, if the government had actually been reviewing materials in their possession pursuant to *Brady* and Rule 16, and/or applying the correct standard to their reviews, they could not, and would not, have produced such ████████████ materials.  The defense submits that this glaring abdication of the government's responsibility requires the Court to order the government to review their productions, using the correct standard, and identify all *Brady* materials therein or certify that there are none, as well as produce all documents obtained from Fox and Torneos, pursuant to both Rule 16 and *Brady*.

Because of the government's lapses and misinterpretations, the defense reasonably questions the government's cursory assertions regarding compliance with its discovery obligations.  Messrs. Lopez and Martinez are entitled to the information they request and, if the government disagrees, it must explain why it believes it is not obligated to produce all such

documents.  It is reasonable for parties to disagree about the scope of the government's discovery obligations and seek the Court's intervention to resolve those disagreements.  However, the government's intransigent refusal to provide its reasons for withholding documents and review its productions for *Brady* materials prevents a meaningful and productive exchange before the Court.

Mr. Lopez and Mr. Martinez have each requested specific categories of documents and information from the government, but it has continually refused to confirm that it has the requested information, let alone whether it will produce it.  Given the government's failure to recognize the extent of its obligations, it should be ordered to produce the information requested and provide itemized responses to those requests, the benefits of which far outweigh the burdens, given the resources the government has devoted to prosecuting Mr. Lopez and Mr. Martinez.

Mr. Lopez and Mr. Martinez respectfully request that the Court order the government to (1) comply with its obligations under *Brady* by properly re-reviewing its productions and identifying any *Brady* materials therein or affirming that it has conducted such a review and found no *Brady* materials, (2) produce all documents it has obtained from Fox and Torneos or, if it withholds any such documents, explain why those documents are not discoverable pursuant to Rule 16 and *Brady*; and (3) identify any materials it does not intend to produce by providing particularized responses to Mr. Lopez's and Mr. Martinez's discovery requests.

## **BACKGROUND**

Almost five years after initially indicting this case (Dkt. 1), a grand jury returned a Third Superseding Indictment (the "TSI") alleging that Mr. Lopez and Mr. Martinez were aware of a scheme to bribe CONMEBOL officials to obtain the broadcast rights to a soccer tournament called the Copa Libertadores (Dkt. 1319 ¶¶ 72-74; 129-35).  In particular, the TSI charges that

Mr. Lopez and Mr. Martinez conspired in this scheme involving overseas media companies, including Torneos, to use foreign entities to pay soccer officials in South America.  (*Id.*)  For instance, Counts Eighteen and Nineteen of the TSI allege wire transfers from a foreign bank account associated with a Dutch company called Torneos & Traffic Sports Marketing B.V. and another account for a Panamanian company called Valente Corp.  (*Id.* ¶ 133.)

The evidence presented at the 2017 trial of three CONMEBOL officials, which included allegations that overlap with the scheme at issue here, focused heavily on the conduct of Torneos executives, including its CEO, Alejandro Burzaco.  Burzaco testified at length about the means that Torneos executives used to further their scheme to obtain the broadcast rights to the Copa Libertadores.  (*See generally* 2017 Trial Transcript 226:1-421:18; 459:1-602:13.)  He testified that Torneos used a joint venture that it owned with Fox, T&T Sports Marketing Ltd., which Torneos managed and controlled, to facilitate bribes.  (*E.g.*, 2017 Trial Transcript 314:4-316:2; 319:25-320:14; 344:8-13.)  In particular, Burzaco asserted that he and Torneos used "sham" contracts with overseas companies, including Valente Corp, to deceptively steal T&T's funds and funnel them to CONMEBOL officials.  (2017 Trial Transcript 314:4-316:2; 319:25-320:14.)  Under Torneos's management and control, T&T Sports Marking Ltd. entered into the "sham" agreements prior—as early as 2003, *i.e.*, years prior—to Mr. Lopez's and Mr. Martinez's involvement in Fox's Latin American sports broadcasting operations.  (*See, e.g.*, Gov't ex. 152; 2017 Trial Transcript 314:4-316:2, 319:25-320:14.)

According to Burzaco, an important part of the conspiracy involved the assignment of certain rights to Torneos & Traffic Sports Marketing B.V., which was referred to at trial as "T&T Netherlands."  (2017 Trial Transcript 492:2-8.)  Despite its nickname at trial, testimony and exhibits demonstrated that Torneos and Traffic Sports Marketing, B.V., was not an affiliate

4

of T&T Sports Marketing, Ltd. (the Fox/Torneos joint venture) but was another company

managed and/or controlled by Burzaco. (*See, e.g.*, Gov't Exs. 166A, 623; 2017 Trial Transcript

685:3-14.) To date, the only evidence that has purportedly linked either Mr. Lopez or Mr.

Martinez to the conspiracy has been Burzaco's testimony that they understood the nature of the

transactions involving T&T Netherlands:

> [B]y September 2014, the five persons that we were having lunch together at Milos
> restaurant in Miami Beach, knew that part of the funding for the bribe payments
> under the CONMEBOL Copa Sudamericana and Copa Libertadores contracts, was
> coming from Globo payment to T&T Netherlands, and from them, to the
> executives. So, me, Hernan Lopez, Carlos Martinez and me, nor Juan Angel
> Napout, nor [Luis] Bedoya wanted to modify that structure.

(2017 Trial Transcript 565:22-566:4.)

Realizing the government's case would revolve around Burzaco's false testimony that

they joined Torneos's bribery scheme, Mr. Lopez and Mr. Martinez requested that the

government turn over certain pieces of plainly exculpatory evidence, including all evidence or

information that they did not know of Burzaco's conspiracy or intentionally participate in it.

(Umhofer Decl. Ex. A at 5-7; Coleman Decl. Ex. A at 7-26.) Recognizing that Burzaco's

testimony would likely feature prominently at their trial as well, Mr. Lopez and Mr. Martinez

requested any information undermining or casting doubt on Burzaco's testimony. (*Id.*) For

instance, Mr. Lopez and Mr. Martinez requested any documents suggesting that Burzaco or

anyone at Torneos concealed or misrepresented the existence or nature of any transactions

related to the scheme. (*Id.*) The government responded to these initial requests by stating:

> The government confirms that it is aware of, and will comply with, its discovery
> obligations pursuant to Rule 16 of the Federal Rules of Criminal Procedure, <u>Brady
> v. Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, 405 U.S. 150 (1972), and
> the Jencks Act, 18 U.S.C. § 3500. The government declines to further characterize
> its approach to discovery or to provide itemized responses to the dozens of specific

requests listed in your letter, some of which reference materials that are not discoverable under any applicable rule or statute.

(Umhofer Decl. Ex. B.)

Since April, the government and counsel for Mr. Lopez, and Mr. Martinez engaged in extensive back-and-forth correspondence regarding the government's *Brady* and Rule 16 obligations.  (Umhofer Decl. Exs. B-S; Coleman Decl. Exs. B-C.)  But each time the defense requested clarification about the government's view of its obligations under *Brady*, the government responded in the same way: that it understands and will comply with those obligations.  (Umhofer Decl. Exs. B, H, O.)  Similarly, the government continuously declined to explicitly state whether it is withholding any documents it obtained from any source, including Fox or Torneos.  (Umhofer Decl. ¶¶ 17, 26.)  Concurrently, the government has produced about 4.7 terabytes of material, totaling approximately 18,094,288 pages.  (Umhofer Decl. ¶ 25.)

Finally, on August 28, 2020, the government informed counsel for Mr. Lopez and Mr. Martinez that it believes there are no *Brady* materials in the millions of pages it has produced to date.  (Umhofer Decl. Ex. S.)  However, paradoxically, the government provided a statement from ███████, a former Fox executive and colleague of Mr. Lopez and Mr. Martinez, "out of an abundance of caution."  Yet the government made clear that it does not consider ███ ███████'s statement *Brady* material:

> In response to a question from a government attorney as to whether Mr. Lopez had at any point expressed concern about his own potential criminal exposure in connection with the government's FIFA investigation, ███████ stated, in relevant part, "I don't recall him being concerned about his own exposure." ███ ███ further stated, "The concern was more about what's happening with the business being, you know, in an investigation of such. It's not, you know, it's a very serious matter for everybody. But not that he would have done anything wrong, or anybody would have done anything wrong." ███████ later stated of Mr. Martinez and Mr. Lopez, "I work[ed] with these people for, you know, ten years. Hernan, you know, he was my boss and he was considered a golden star in News Corporation. I didn't have any reason to not believe that they, you know, they

make good business decisions on good businesses."  Asked whether ▮ trusted that Mr. Lopez and Mr. Martinez were acting in the best business interests of their employer, ▮▮▮▮▮▮ replied, "Yes."

(Umhofer Decl. Ex. S.)

The government has also stated that it is withholding documents it has obtained from various entities, including Fox and Torneos, asserting that those documents are not discoverable. The government confirmed, for instance, that it is withholding "emails between counsel to schedule telephone calls," referring to emails between counsel for the government and counsel for Torneos or Fox.  (Umhofer Decl. Ex. X.)  The defense has ascertained that the government's productions are potentially missing hundreds of thousands of pages it received from Fox and Torneos.  (Umhofer Decl. ℙ 26.)

While the government has withheld Fox and Torneos documents, it has produced at least ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (Abadin Decl. ℙℙ 4-8, 11.)  None of these ▮▮▮▮▮ were recovered the computers, electronic devices, phone or email accounts of Mr. Lopez or Mr. Martinez nor reference them in any way, or bear any connection to this case.  (Abadin Decl. ℙ 9, 12.)

## ARGUMENT

**A.** *Brady* **Requires the Government to Turn Over Evidence That Undermines its Case Against Mr. Lopez and Mr. Martinez.**

*Brady* requires the government to disclose information "that is both favorable to the accused and material either to guilt or to punishment."  *United States v. Bagley*, 473 U.S. 667, 674 (1985); *United States v. Bundy*, — F.3d —, 2020 WL 4517572, at *9 (9th Cir. Aug. 6, 2020) ("The prosecution has an affirmative obligation to learn of potentially favorable evidence and provide it to the defense.").

7

Evidence is material if "there is a reasonable likelihood that disclosure of the evidence would have . . . put the case in such a different light as to undermine confidence in the outcome." *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004) (citing *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995)).  A "reasonable likelihood of a different result" that "undermine[s] confidence" in a verdict means only that the government's failure to disclose any information deprived the defendant of a fair trial; defendants are not required to show the outcome would have been different had he been armed with the undisclosed evidence.  *Kyles v. Whitley*, 514 U.S. 419 at 434-35 (1995).

Thus, evidence is material if it undermines an important aspect of the government's case. *Bundy*, 2020 WL 4517572, at *16 (dismissing indictment with prejudice where "[t]he government said the Bundys' claim of 'snipers' was 'false' and 'deceitful,'" but "withheld a slate of information bolstering the claim that the defendants could have had a reasonable basis for believing there were snipers in the area").  This includes evidence reducing the effectiveness of a key government witness whose testimony links a defendant to a charged conspiracy.  *See United States v. Thomas*, 981 F. Supp. 2d 229, 243 (S.D.N.Y. 2013) ("[T]he Government's suppression of favorable evidence undermining its key witness violates due process.").  Evidence may also be material if it could lead to the discovery of admissible, favorable evidence.  *United States v. Mahaffy*, 693 F.3d 113, 131 (2d Cir. 2012) (finding *Brady* violation and reversing where suppressed "testimony could have led the defendants to interview and possibly subpoena Geiler, Tiedman, and Shulman, who could have identified the other senior Merrill employees with whom Geiler spoke."); *see also United States v. Nejad*, 18-cr-224, Dkt. 348 at *1 (S.D.N.Y. June 5, 2020) (recognition by the United States Attorney's Office for the Southern District that defendant should not be further prosecuted after determining that prosecutors failed to turn over

evidence that "would have pursued different investigative, litigation, and trial strategies had the disclosures been made.").

Materiality is not evaluated in a vacuum—favorable evidence must be "considered collectively, not item by item." *Kyles*, 514 U.S. at 436. Similarly, if evidence or information has exculpatory and inculpatory characteristics, it must still be disclosed if it is consistent with the defense's theory of the case. *Rivas*, 377 F.3d at 199 (finding *Brady* violation despite acknowledging that witness's inconsistent statement with exculpatory qualities "was consistent with his trial testimony that the narcotics belonged to [defendant] Rivas"). Moreover, some courts found that materiality is not a significant hurdle (if at all) in the pre-trial context and that the government must turn over "any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed with the benefit of hindsight" after the trial. *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005); *see also Sudikoff*, 36 F. Supp. 2d at 1199-1200 (in pre-trial context, government is "obligated to disclose all evidence . . . which might reasonably be considered favorable to the defendant's case," including "inadmissible evidence that would [lead] to admissible evidence"); *United States v. Carter*, 313 F. Supp. 2d 921, 925 (E.D. Wis. 2004) ("[I]n the pre-trial context, the court should require disclosure of favorable evidence under Brady and Giglio without attempting to analyze its 'materiality' at trial"); *cf.* Department of Justice, *Justice Manual* § 9-5.001(D) ("Recognizing that it is sometimes difficult to assess the materiality of evidence before trial, prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence. While ordinarily, evidence that would not be admissible at trial need not be disclosed, this policy encourages prosecutors to err on the side of disclosure if admissibility is a close question." (citations omitted)).

9

The government has not met its obligations under *Brady* and, as a result, risks depriving Mr. Lopez and Mr. Martinez of the fair trial to which they are entitled.  The government's contention that there are no *Brady* materials in any of its productions to date is not accurate: there are *Brady* materials in its productions.  For instance, the government has produced an email thread, dated October 2, 2014, between Torneos executives ████████ and ████████████. In the initial email, ████ informs ████ that Burzaco reported on a call he received from Mr. Lopez in which Mr. Lopez had been made aware that T&T was making some payments without corresponding invoices.  ████ seems to express surprise that Mr. Lopez has been made aware of this issue.  (Umhofer Decl. Ex T.)  ████ then exhibits concern regarding the level of oversight Mr. Lopez and Fox now seem to be exercising with respect to T&T, questioning whether Fox is performing an audit of T&T's administration and management or whether Fox is auditing Torneos itself. This document is obviously favorable: two Torneos executives—one of whom, ████, Torneos likely referred to in its deferred prosecution agreement as assisting with its corrupt machinations, *see United States v. Torneos y Competencias, S.A.*, No. 16-cr-634 (PKC), Dkt. 4-2 at B-10 (E.D.N.Y. Dec. 13, 2016)—are concerned that Mr. Lopez and Fox are questioning payments that Torneos made and which Mr. Lopez and Fox clearly know nothing about, and asking whether such questioning is the product of increased oversight by Fox.  The government's contention that no *Brady* materials were produced is contradicted by this document, which demonstrates how far the government is off the mark in its interpretation of *Brady*.[1]

---

[1] While reviewing the government's productions, the defense has located other documents that, in its view, constitute *Brady* material.  However, out of concern for the confidentiality of counsel's work product and defense strategy, those documents have not been submitted here.  (Umhofer Decl. ¶¶ 22-23.)  Should the Court prefer to review these additional

This same flaw was displayed by the government's determination that ███████'s statements to government attorneys were not *Brady* material.  One statement in particular is undoubtedly favorable—in response to a question designed to elicit an inculpatory response, ███ ███████ unequivocally stated that Mr. Lopez was unconcerned about criminal exposure despite learning that the government was investigating conduct with which it later charged him.  ███ ███████ also stated that she trusted that both Mr. Lopez and Mr. Martinez were acting in the best interests of their employer—a statement fundamentally at odds with the fraud charges in the TSI.  Taken alone or with other evidence, ███████'s statements can be safely characterized as evidence that would put this case in "a different light."  Indeed, those statements will undoubtedly reframe or refocus allegations that Mr. Lopez and/or Mr. Martinez's actions during the relevant time period were, in fact, intended to further the conspiracy.

The government's apparent misapplication of *Brady* risks depriving Mr. Lopez and Mr. Martinez of important information to which they are entitled which, in turn, will render their trial unfair in multiple ways.  First, this misapplication will prohibit Mr. Lopez and Mr. Martinez from obtaining critical, exculpatory interview statements and grand jury testimony at trial that are otherwise undiscoverable under Rule 16 or any other disclosure mechanism available to defendants.

Second, if the information that Mr. Lopez and Mr. Martinez have requested is withheld, their ability to prepare a defense will be impermissibly impaired.  The massive number of documents that the government has produced must be harmonized and placed in context within the defense's narrative.  However, this process is impossible if Mr. Lopez and Mr. Martinez are

---

documents, Mr. Lopez and Mr. Martinez are prepared to provide them in an *in camera*, *ex parte* submission.

unable to review and consider documents in light of material, potentially exculpatory information, like witness statements, that the government is withholding. Currently, Mr. Lopez and Mr. Martinez are forming a trial strategy without the aid of information that is, by definition, important to that process. If the government is allowed to continue withholding documents under a misguided approach to disclosure, Mr. Lopez and Mr. Martinez will not be able to use or present the favorable evidence in an organized or thoughtful way. Rather, they will be forced to shoehorn those materials into their case at the eleventh hour, an outcome that is inconsistent with Rule 16, *Brady*, and Justice Department policy.

Last, but still significant, given the number of documents that will ultimately be produced in this case and the many individuals and entities who likely have information material to the defense who are outside the country, exculpatory witness or interview statements are especially critical. It is entirely likely that exculpatory information provided by the government may cause Mr. Lopez and Mr. Martinez to seek information from individuals interviewed or questioned by the government, including those abroad. Thus, Mr. Lopez and Mr. Martinez may lose useful, exculpatory testimony or documents if *Brady* materials are not identified.

**B.      The Government Has Impermissibly Withheld Materials That Are Discoverable Under Fed. R. Crim. P. 16.**

The government reads its disclosure obligations under Rule 16 too narrowly and has applied this reading inconsistently thus far. Rule 16, like *Brady*, requires that the government produce evidence that is "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). But the Rule 16 materiality standard is low. *See United States v. Stein*, 488 F. Supp. 2d 350, 356 (S.D.N.Y. 2007) ("The materiality standard [of Rule 16] normally is not a heavy burden. . . ."). Indeed, "[e]vidence is material under Rule 16 if it 'could be used to counter the government's case or to bolster a defense." *United States v. Messina*, No. 11–CR–31 (KAM), 2011 WL

3471511, at *1 (E.D.N.Y. Aug. 8, 2011) (quoting *United States v. Stevens*, 985 F.2d 1175, 1180 (2d. Cir. 1993)); *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) ("Materiality is a low threshold; it is satisfied so long as the information would have helped to prepare a defense." (internal quotation marks omitted)).  Thus, defendants are entitled to evidence that is helpful to their trial presentations or discovery and investigative efforts, *see Stein*, 488 F. Supp. 2d at 356-57, including evidence that may even cause them "to completely abandon a planned defense and take an entirely different path," *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (internal quotations omitted).

Mr. Lopez and Mr. Martinez are not privy to the government's internal deliberations regarding discoverability under Rule 16.  Nonetheless, the government's representations to the defense and its production of ███████████████████████████████████ ███████████ leaves no doubt that it has failed to discharge its discovery obligations.

Fox and Torneos are at the center of this case.  This is illustrated by the government's case in the 2017 trial, which relied heavily on the testimony of Burzaco and another Torneos executive.  Likewise, the government's assertions about Mr. Lopez and Mr. Martinez are premised on their employment at Fox. According to the government's allegations, Mr. Lopez and Mr. Martinez seemingly could not have done what is alleged (although the allegations' vagueness leaves it uncertain) had they not been high-ranking Fox executives.  In other words, the government's own allegations establish that documents it obtained from Fox and Torneos, during its investigation into Mr. Lopez and Mr. Martinez, should be produced pursuant to Rule 16.  Yet the government has offered no basis for withholding these documents other than its (mistaken) assertion that scheduling emails between the government and counsel for these entities are not discoverable.

Even assuming that there was a valid reason to withhold some Fox or Torneos documents, the government has not articulated any such reason for withholding any documents. The government has admitted that it is withholding correspondence with counsel for Fox and Torneos, all of which should be produced pursuant to Rule 16. Indeed, even scheduling emails are material because, at minimum, the fact and timing of those emails will contextualize meetings with cooperating entities, permitting the defense to draw specific inferences about the government's investigation. In other words, they will provide information that will guide defense investigations and trial preparation, and the defense must be permitted to review that correspondence to determine how to best put it to use. Likewise, the defense has identified, at minimum, one potentially exculpatory document that the government has failed to produce in this case: a confidential communication between Torneos and Full Play Group, a defendant in this case, and others about the Copa Libertadores. That failure is evidence that the government has incorrectly interpreted its obligations under Rule 16.

The government's decision to withhold documents about correspondence with counsel for Fox and Torneos is also at odds with its decisions about what else to produce in this case. While the government has withheld documents it obtained from Fox and Torneos, including correspondence with their counsel, it has produced a whole slate of ███████████ ███████████████████████ that have nothing to do with defendants. (Abadin Decl.) The government's production of documents with such little relevance to any of the allegations in this case contrasts starkly with its deliberate decision to withhold documents that are material under Rule 16. Certainly, if the government is producing ██████████, there is no reason that it should withhold its correspondence with a cooperating entity on the basis that it cannot be used to prepare a defense. And while the government has declined to produce certain documents in

this case, its decision to withhold emails (even scheduling emails) that it has exchanged with counsel demonstrate that its analysis about discoverability is unsound.  *See Stein*, 488 F. Supp. 2d at 358-59 (finding that government correspondence with cooperating entity was discoverable under Rule 16); *cf. Sudikoff*, 36 F. Supp. 2d at 1204 (ordering the government, pursuant to *Brady*, to produce "all notes or other evidence of any communication between the government and [a cooperating witness] or his counsel" because they could lead to admissible evidence).

Put simply, a correct application of *Brady* and Rule 16 is essential to preserving Mr. Lopez and Mr. Martinez's constitutional right to a fair trial.  Because government attorneys "wield enormous prosecutorial power," they must exercise that power "in a way that is fully consistent with their constitutional . . . obligations.  And it is the obligation of the courts to ensure that they do and hold them accountable if they do not."  *Nejad*, Case No. 1:18-cr-00224-AJN (S.D.N.Y.), Dkt. 379 at 4.  In *Nejad*, the court dismissed an indictment with prejudice after the government acknowledged both that it failed to disclose certain materials it possessed for years prior to trial and that its failure stunted the defendant's ability to investigate and present defenses.  Dkt. 348; Dkt. 364 at 1-2; Dkt. 379 at 3, 21-25.  The *Nejad* Court was able to reach the conclusion that a key exculpatory document had been wrongfully withheld partially because it became privy to the government's internal communications, which included discussion about burying the document when producing it to the defense.  *Id*.

As stated above, Mr. Lopez and Mr. Martinez are not privy to the government's internal communications regarding which documents it does and does not believe are discoverable under Rule 16 and *Brady*.  As a result, they cannot discern why the government somehow believes that ███████████████████████████████████████████████████ are discoverable under Rule 16, but information produced by Torneos and Fox is not discoverable.

Given the government's failure to correctly abide by its disclosure obligations here, Mr.

Lopez and Mr. Martinez face the same prejudice that warranted dismissal in *Nejad*—proceeding

to trial without all the discovery to which they are entitled under Rule 16 and *Brady*.  Mr. Lopez

and Mr. Martinez are not seeking obscure information or evidence helpful to a particular defense

that they have not disclosed to the government.  They merely want the government to provide

any information that it obtained to further its investigation or that challenges its case.  This

includes evidence that rebuts the government's theory about their involvement in the conspiracy

and, relatedly, information that undermines the inculpatory testimony of Burzaco.  The

government possesses such information, and both *Brady* and Rule 16 mandate that it correctly

identify *Brady* materials in its possession and produce Fox and Torneos documents it has thus far

withheld.

**C.      The Court Should Order the Government to Provide Itemized Responses to Mr.
Lopez's and Mr. Martinez's Discovery Requests.**

The Court should, at minimum, order the government to provide substantive responses to

the requests for specific categories of information contained in the letters from Mr. Lopez and

Mr. Martinez, dated April 21, 2020, and April 27, 2020, respectively. "When the prosecutor

receives a specific and relevant request, the failure to make any response is seldom, if ever,

excusable." *United States v. Agurs*, 427 U.S. 97, 106 (1976).  Responses to specific discovery

requests may be appropriate where a general response is insufficient to clarify areas of dispute or

agreement. *See United States v. Ashburn*, No. 11–CR–303 (NGG), 2014 WL 1800409, at *14

(E.D.N.Y. May 6, 2014) (requiring the government to respond to defendant's specific requests

"in the interest of clarifying the contours and . . . remaining discovery disputes in this

case"); *United States v. Turner*, No. 08-cr-069, Dkt. 34, p. 2-3 n.2 (S.D. Ga. June 24, 2008)

(noting that "providing separate responses to each of a defendant's motions facilitates the Court's

ability to most efficiently assess the motions that have been filed."); *United States v. Aiken*, 76 F. Supp. 2d 1339, 1341 n.4 (S.D. Fla. 1999) (requiring more specific responses to defendant's requests for numerous categories of discovery).

A general, opaque response to itemized discovery requests, such as that provided by the government, is insufficient to clarify areas of agreement or dispute. Accordingly, the government should be required to provide an itemized response to each specific request. Mr. Lopez and Mr. Martinez are entitled to the information they seek, and if the government disagrees, it should explain why it will not provide this information. A specific response to the itemized requests, and to other discovery requests going forward, will provide the defense with that information. If the government continues to withhold information about the extent of the materials it possesses or is willing to provide, Mr. Lopez and Mr. Martinez will be unable to identify areas of dispute about the government's discovery obligations. That knowledge is a prerequisite to narrowing any such disputes and, if necessary, challenging the government's determinations on discoverability. Mr. Lopez and Mr. Martinez must be able to challenge those determinations or risk forfeiting crucial evidence that they could not obtain because its existence was never disclosed to them.

Moreover, the government's refusal to provide an itemized response will undoubtedly delay the resolution of any discovery disputes until the eve of trial. If these disputes go unresolved until then, it will be impossible for Mr. Lopez and Mr. Martinez to fully formulate their respective defenses, as they will be premised on whether further discovery is forthcoming. If the Court orders the government to disclose materials close to the start of trial, Mr. Lopez and Mr. Martinez may be deprived of an opportunity to pursue leads based on those materials or to fully evaluate how to use any materials they receive. Neither of these outcomes is permissible or

17

fair.  *See United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) (*Brady* materials must be turned over far enough in advance of trial to provide a defendant with "a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial.").

Mr. Lopez and Mr. Martinez simply ask for an itemized response to their requests so that they may effectively pursue discovery and prepare their defenses.  By obtaining these responses, they will be able to evaluate which issues may or may not need to be brought to the Court, making more efficient use of the its resources and time.

*     *     *     *     *

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Lopez and Mr. Martinez request that the Court enter an order requiring the government to (1) identify all *Brady* materials in its productions or affirm that it has reviewed its productions and found no *Brady* materials; (2) produce all documents it obtained from Fox and Torneos or, explain why those documents are not discoverable pursuant to Rule 16 and *Brady*, and (3) provide specific responses to the discovery requests of Mr. Lopez and Mr. Martinez contained in their letters of April 21, 2020 and April 27, 2020, respectively.

Dated: September 30, 2020

Respectfully submitted,

SPERTUS, LANDES & UMHOFER, LLP

/s/Matthew Donald Umhofer

Matthew Donald Umhofer
James W. Spertus
Samuel A. Josephs
*Attorneys for Hernan Lopez*

MCCOOL LAW PLLC

/s/Steven J. McCool
Steven J. McCool
Julia M. Coleman

/s/ Ramon A. Abadin
Ramon A. Abadin

/s/Michael T. Cornacchia
Michael T. Cornacchia

*Attorneys for Carlos Martinez*

19