SPN/MKM/PTH/KTF
F. #2015R00747

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                        Docket No. 15-CR-252 (S-3) (PKC)

FULL PLAY GROUP, SA,
HERNAN LOPEZ and
CARLOS MARTINEZ,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GOVERNMENT'S MEMORANDUM OF LAW IN
OPPOSITION TO MOTION TO COMPEL FILED BY
DEFENDANTS HERNAN LOPEZ AND CARLOS MARTINEZ

SETH D. DuCHARME
ACTING UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Samuel P. Nitze
M. Kristin Mace
Patrick T. Hein
Kaitlin T. Farrell
Assistant U.S. Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to defendants Hernan Lopez and Carlos Martinez's (the "Defendants") September 30, 2020 motion to compel the government to (1) identify all <u>Brady</u> materials in its discovery productions or affirm that it has reviewed its productions and found no <u>Brady</u> materials; (2) produce all documents it obtained from 21st Century Fox ("Fox") and Torneos y Competencias, S.A. ("Torneos"), including email communications with counsel regarding matters such as scheduling telephone calls; and (3) provide specific responses to more than 325 itemized discovery requests set forth in letters to the government by Lopez and Martinez dated April 21 and April 27, 2020. ECF Dkt. No. 1441 (the "Motion" or "Mot.").  The motion rests on a series of misrepresentations, or misunderstandings, of the contents of the government's discovery productions to date, the intended scope of the government's discovery productions going forward, the positions articulated by the government during conferral with defense counsel on discovery issues, and the law governing the government's disclosure obligations.  For the reasons set forth below, the Court should deny the motion to the extent it asks the Court to compel the government to do more than it has already committed to doing, which includes complying with its disclosure obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny, Federal Rule of Criminal Procedure 16, and the Jencks Act, 18 U.S.C. § 3500.

BACKGROUND

The charges in this case arise from the defendants' involvement in a years-long scheme to pay bribes to soccer officials to secure lucrative commercial rights to certain soccer tournaments and events.  Martinez, Lopez, and corporate co-defendant Full Play Group, SA ("Full Play") were charged in a third superseding indictment returned on March 18, 2020 with various wire fraud and money laundering offenses in connection with the scheme.  ECF Dkt. No.

1337.  Full Play also was charged with racketeering conspiracy and additional wire fraud and money laundering counts arising from the company's involvement in related schemes to bribe soccer officials.[1]

To date, the government has produced more than 18 million pages of discovery to over the course of seven productions.[2]  The documents have been produced in a searchable format suitable for upload into a document review platform.  With each production, the government provided the Defendants with an index describing the enclosed documents, categorized the documents by Bates range, and noted that the government would continue to produce discovery on a rolling basis.[3]  (See, e.g., Umhofer Decl. Exs. C, G, J).  The parties have been in frequent communication about discovery-related issues since the start of the case, sometimes in writing, sometimes by phone.  The government has repeatedly emphasized that it is available for consultation on discovery matters and any other issues relating to the case.

---

[1] The government does not here provide a full response to the Motion's misframing of the allegations in the Indictment or minimization of the evidence adduced to date of the Defendants' guilt, except to note that (1) the Indictment alleges that Lopez and Martinez actively conspired and participated in the charged conduct, not that they were merely "aware" of it, (2) the charges against Lopez and Martinez involve the use of domestic, as well as foreign, media companies, other corporate entities, and bank accounts to pay bribes to soccer officials, and (3) because the evidence introduced at the 2017 trial was not directed at establishing the involvement of the Defendants, who were not on trial, it provides no basis for inferring any evidentiary shortcoming in this case.  See, e.g., Mot. at 3-4.

[2] The government produced batches of discovery materials on April 30, May 7, June 4, July 9, July 17, August 24, and September 30, 2020.

[3] The government is working to produce the remaining discovery as quickly and efficiently as possible, but the process has been slowed by complications arising from the COVID-19 pandemic, including restrictions on in-office staffing and remote-access limitations on data management and processing.

On April 21, Lopez sent the government a 15-page discovery demand letter in which, among other things, Lopez requested "open file" discovery or, in the event the government declined to open its files, documents falling into dozens of specified categories. (Umhofer Decl. Ex. A). The government responded by confirming its commitment to abiding by its disclosure obligations but declined to provide open file discovery or to respond to itemized discovery demands, many of which sought documents clearly outside of the government's disclosure obligations under Rule 16. (Umhofer Decl. Ex B). On April 27, 2020, Martinez sent the government a 29-page discovery letter in which he lodged more than 200 specific discovery requests. (Coleman Decl. Ex. A). The government again confirmed its intention to comply with its discovery and related disclosure obligations but declined to provide itemized responses to the hundreds of demands. (Coleman Decl. Ex. B). The government has indicated that it intends to take a broad view of discovery, as it did before the 2017 FIFA trial (the "2017 trial"), and to produce, among other materials, all discovery produced to the 2017 trial defendants.

With respect to the hundreds of specific discovery demands made by Lopez and Martinez, although the government has declined to provide item-by-item answers to these civil litigation-type demands, it has addressed many of the issues raised in those letters orally and in writing. To give one example, in an email from the government to defense counsel dated May 15, 2020, the government addressed various concerns and questions raised by defense counsel, stating, among other things, that the government intended to produce all of the discovery produced in advance of the 2017 trial, with limited exceptions (such as where privileged materials were only produced to the privilege-holder), and that the government intended to follow the Office's general practice of producing Jencks Act materials in advance of trial but did not intend to provide witness statements at this stage of the case.

In addition to affirming its commitment to full compliance with its obligations under Rule 16, the government has repeatedly affirmed that it understands and will comply with its obligations under Brady and its progeny.  On August 6, 2020, Lopez sent a letter to the government requesting, among other things, that the government confirm whether it was in possession of any Brady materials.  (Umhofer Decl. Ex. P).  The government responded by email on August 28, 2020 that it was not aware of any Brady materials in its productions to date and that if it became aware of any such materials it would so advise the defendants.  (Umhofer Decl. S).  The government attached to the email a letter in which it summarized statements by ███████ ███████, a former colleague of Lopez and Martinez, that, in substance, ███ "didn't recall [Lopez] being concerned about his own [criminal] exposure" in connection with the government's investigation.  (Umhofer Decl. Ex S).  The government stated in the letter that, in its view, ███████ statements – reflecting ███ lack of recollection or ███ opinion about Lopez's state of mind – did not constitute Brady material.

Counsel for the movants have sent several requests for confirmation that the government intends to produce all materials it has received from Fox and Torneos.  For example, on June 17, 2020, defense counsel sent a letter to the government in which, among other things, they asked the government to confirm whether it had produced all materials received from Fox and whether it intended to produce additional documents from Torneos, including correspondence and other materials relating to the deferred prosecution agreement (DPA) entered into between the government and Torneos.  (Umhofer Decl. Ex. I).  On July 9, 2020, the government responded by email, stating, among other things, that it was not in a position to confirm that it had produced all materials from Fox or Torneos because the government continued to receive materials from those entities and that it was unaware of any authority

holding that communications between the government and a cooperating entity are discoverable as a categorical matter.  (Umhofer Decl. Ex K).  The government added that, in its view, whether all materials provided by a particular source have been produced is not, in itself, discoverable information.  (Id.).  On July 20, 2020, defense counsel sent the government a letter raising a series of discovery demands, some made previously, including that the government confirm whether it had Fox or Torneos documents in its possession that it believed were not discoverable. The government confirmed on July 30, 2020 that, among other things, it intended to produce all discoverable materials produced by cooperating entities.  (Umhofer Declr. Ex. O).

On August 7, 2020, defense counsel sent a letter to the government requesting, among other things, that the government confirm whether it was withholding materials produced to it by Fox or Torneos on the ground that they were not material to preparation of a defense. (Umhofer Decl. Ex. Q).  On September 1, 2020, Lopez sent a follow-up letter to the government asking it to clarify whether it was withholding any documents obtained from Fox or Torneos. (Umhofer Decl. Ex. U).  Defense counsel also stated that, in reviewing the government's productions, they had identified gaps in the underlying Bates numbering used by Fox and Torneos in its productions to the government, which, counsel argued, suggested that the government had withheld materials obtained from Fox and Torneos.  (Id.).  The government responded by email on September 4, 2020, explaining that it did not intend to withhold documents produced before the 2017 trial and asking that defense counsel identify a sampling of the purported production gaps to assist the government in determining whether there might have been a technical problem in processing the document production.  (Umhofer Decl. Ex. V).

On September 7, 2020 defense counsel sent the government a letter asking it to clarify previous comments relating to materials produced by Fox and Torneos and providing a

475-page table listing purported gaps in the government's productions (inferred from purported gaps in underlying Torneos and Fox Bates numbering).  (Umhofer Decl. Ex W).  Upon receipt of the table, the government began to review the gaps identified by defense counsel and quickly determined, on a spot check, that, in fact, the defendants had received documents falling within identified gaps.  On September 8, 2020, the government wrote to defense counsel to provide an example of a gap identified by the defense that the government believed had been produced, identified by the "FIFA2-" Bates numbering convention used in this case.  (Umholfer Decl. Ex. X).  With respect to the Fox and Torneos documents, the government confirmed that it intended to provide all discoverable materials but noted that it was not prepared to state that it would produce all materials obtained from Fox and Torneos because the universe of materials obtained from those entities included documents such as scheduling emails among counsel that, in the government's view, are not discoverable.  (Id.).

That same day, September 8, 2020, without responding to the government's request that counsel look into whether it had received the gap document identified by the government, counsel stated that because the government did not intend to produce all documents (including scheduling emails) received from Fox and Torneos, they intended to raise the matter with the Court.  (Umhofer Decl. Ex. Y).  Counsel asked whether the government agreed that counsel's obligation to meet and confer had been satisfied.  (Id.).  The government responded that, in its view, additional conferral was warranted because the government did not understand, and had not had an opportunity to respond to or address, the relief counsel intended to seek. (Umhofer Decl. Ex. Z).  Counsel responded on September 9, 2020 that it intended to ask that the Court to (1) direct the government to provide all documents obtained from Torneos and Fox, and (2) respond to the itemized requests listed in its discovery letters.  (Umhofer Decl. Ex. AA).

Counsel said nothing about <u>Brady</u> and did not state that they believed there were hundreds of thousands of Fox or Torneos documents missing from the government's productions.  The government responded that it was open to reviewing any authority counsel could provide indicating that the government was required to produce scheduling emails.  The government further reiterated its request that counsel provide further information about the purported production gap referenced in the government's email of September 8, 2020.  (Umhofer Decl. Ex. BB).  On September 28, 2020, defense counsel sent the government a letter acknowledging that it did, in fact, have the document referenced in the government's September 8, 2020 email, notwithstanding that the document previously had been listed in the 475-page table of documents purportedly missing.  (Umhofer Decl. Ex. CC).  Counsel stated that its review of the gaps was ongoing, but that it nevertheless had concluded that it was missing more than 100,000 pages from the Torneos documents produced to the government because it had identified a document with a Torneos Bates number of Torneos_00260005, suggesting that the government had received more than 260,000 pages of discovery from Torneos.   (<u>Id.</u>).

Lopez and Martinez filed the instant motion on September 30, 2020. Accompanying the motion was a declaration by Mathew Umhofer, lead counsel for Mr. Lopez, stating that, among other things, the defense "has been able to determine that the government has not produced hundreds of thousands of pages that it obtained from Fox and Torneos" based on the document bearing underlying Bates number Torneos_00260005, "a much larger figure than the total number of pages the government has produced bearing Torneos Bates numbers (approximately 99,000)."  (Umhofer Decl. ¶ 26).  In preparing its response, the government, which had not intended and does not intend to withhold historical documents produced by Torneos (as opposed to documents and communications generated during the course of

Torneos's interactions with the government through counsel), and without the benefit of conferral on this particular argument, began to look into whether there had been a data processing error.  The government determined that it had never received any document with the Bates number identified by defense counsel and had not received 260,000 pages of documents from Torneos.  Accordingly, the government asked defense counsel to provide the referenced document to the government to assist it in looking into the matter further.  They did not.  Instead, on October 15, 2020, defense counsel filed a "Notice of Errata" correcting Mr. Umhofer's declaration, noting that counsel for Lopez "had incorrectly recorded the document bearing the Bates number 'Torneos_00026005' as 'Torneos_00260005,'" and conceding that the Bates number identified in the original declaration as the basis for the defendants' claim in the Motion that the government had withheld more than 100,000 pages from the defense, was wrong.

ARGUMENT

Defendants Lopez and Martinez seek Court intervention and an order directing the government to comply with its various disclosure obligations, among other relief, on the grounds that (1) the government has violated its obligations under Brady by timely producing, but failing to identify for the defendants, documents that the defendants construe as favorable to a defense theory; (2) the government has withheld hundreds of thousands of pages produced by Fox and Torneos and is wrong in its determination that communications between the government and counsel for the defendants, including scheduling emails, are not discoverable; and (3) the government has not responded, line by line, to more than 300 civil-style interrogatories and demands.  Each of these claims is meritless.

I.      The Defendants Once Again Have Not Taken Care in Their Handling of the Record

Before responding to the specific arguments advanced in support of the three categories of relief sought by the Defendants, the government notes that, taken as a whole, the

Motion is littered with misstatements of the record and baseless accusations regarding the government's handling of its discovery obligations to date. As with the Defendants' motion to dismiss the indictment on the ground that the grand jury lacked a quorum, erroneous assertions in the Motion might have been avoided, or at least the scope of the arguments productively narrowed, had defense counsel engaged in good-faith conferral with the government about the particulars of their concerns. See Govt.'s Opp'n to Mot. to Dismiss, ECF Dkt. No. 1385 (correcting Defendants' erroneous assumption that a regular, rather than the Special, grand jury returned the indictment in this case and noting that conferral with the government might have avoided a baseless motion). Unfortunately, Defendants have once again failed to meaningfully confer in an apparent effort to surprise the government with arguments about Brady and inferences drawn from their (erroneous) reading of secondary Bates numbering.

Moreover, while the Motion attempts to paint the government as intransigent, uncommunicative, and sloppy with its disclosure obligations, none of that is true. The truth is that the government has been producing discovery in an orderly fashion; does not intend to withhold historical documents produced to the government by Fox or Torneos; has been responsive, within reason, to defense requests for information; has not withheld Brady material; and has committed to promptly producing any such material of which it becomes aware. The defense, by contrast, has now twice led the government astray. The Defendants first provided a 475-page table of purported discovery lapses that the defense later acknowledged, after repeated emails from the government, was inaccurate. The government still has not been informed by the Defendants what portions of the table, if any, are reliable. In response to the government pointing out this error, the Defendants responded that they were still analyzing the gaps identified in the table but had determined that, in any event, the government had failed to turn

over more than 100,000 pages of discoverable documents produced by Torneos.  The

government again began to investigate in good faith, only to learn through a filing with the Court

that the Defendants had made a "clerical error" in documenting the secondary Bates number

supporting their claim.  The government understands that mistakes can happen, especially in

complex cases such as this.  However, for the defendants to attack the government's approach to

discovery and urge the Court to intervene on the basis of the government's "lapses and

misrepresentations" in this context is jarring, to say the least.  The government hopes that, going

forward, the Defendants will engage in meaningful conferral so that errors and false accusations

can be avoided.

II.    The Government Is Complying with its *Brady* Obligations

The Defendants' first argument is that the government "has not complied" with its

Brady obligations and that the government must not only produce but also locate and identify in

its productions all materials that the defendant might view as Brady.  (Mot. at 1).  The

Defendants are wrong.

A.    Legal Standard

The government has a "constitutional duty to disclose evidence favorable to an

accused when such evidence is material to guilt or punishment."  United States v. Coppa, 267

F.3d 132, 135 (2d Cir. 2001) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)).  Favorable

evidence includes not only evidence that tends to exculpate a defendant, but evidence that is

useful for impeaching a witness.  Id. (citing Giglio v. United States, 405 U.S. 150, 154 (1972)).

"[A] prosecutor must disclose evidence if, without such disclosure, a reasonable probability will

exist that an outcome of a trial in which the evidence had been disclosed would have been

different."  Id. at 142.  "The rationale underlying Brady is not to supply a defendant with all the

evidence in the [g]overnment's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the [g]overnment."  United States v. LeRoy, 687 F.2d 610, 619 (2d Cir. 1982). Notably, the government's Brady obligation does not extend to "investigative files merely because they contain information which could assist the defendant."  United States v. Reddy, 190 F. Supp. 2d 558, 575 (S.D.N.Y. 2002) (citations omitted); see also United States v. Mavashev, No. 08-CR-902 (DLI), 2010 WL 670083 (E.D.N.Y. Feb. 23, 2010) (same) (quoting Reddy).

The Second Circuit has often "reiterate[d] the longstanding constitutional principle that as long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner."  Coppa, 267 F.3d at 144; see also United States v. Nixon, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); United States v. Yu, No. 97-CR-102 (SJ), 1998 WL 57079, at *5 (E.D.N.Y. Feb. 5, 1998) ("Brady material of an impeachment nature, commonly referred to as Giglio material, is not required to be produced before trial.").

In addition to the foregoing constitutional requirement, government attorneys abide by the expanded disclosure policy set forth in the Justice Manual ("JM"), which, inter alia, notes that "it is sometimes difficult to assess the materiality of evidence before trial," and therefore directs prosecutors to "take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence."  JM § 9-5.001(B)(1).

B.    Analysis

The government has complied with its Brady obligations thus far and will continue to do so.  The Defendants have failed to show otherwise.  Although they claim that

there is "considerable evidence that the government does not understand [its] obligations and has not complied with them," (Mot. at 1), the cited examples demonstrate that the government is complying with, and even going beyond, its disclosure obligations.

First, the government provided, in an abundance of caution, a disclosure to the defendants in a letter dated August 28, 2020. (See Umhofer Decl. Ex. S). As noted above, the government identified in the letter a former colleague of the Defendants, ████████, who had made statements that are arguably helpful to the defense. (Id.). The government provided not only ████████'s name, but a summary of the information potentially helpful to the defense, namely, the fact that ██ "d[idn't] recall [Lopez] being concerned about this own [criminal] exposure" or that "anybody would have done anything wrong."[4] (Id.). In doing so, the government has clearly complied with, and gone beyond, its disclosure obligations.

The Second Circuit has made clear that disclosure of the names of potential exculpatory witnesses satisfies the government's Brady obligations. See United States v. Zagari, 111 F.3d 307, 320 (2d Cir. 1997); Reddy, 190 F. Supp. 2d at 575 ("In fulfilling its obligations under Brady, the [g]overnment may direct the [d]efendants' attention to any witnesses who may have material exculpatory evidence"); Mavashev, 2010 WL 670083 at *3. When the government "has also described the nature of the exculpatory information possessed by each witness," the government has "further assist[ed] [the] defendant's ability to make 'effective use' of it at trial." Mavashev, 2010 WL 670083 at *3 (finding that the government had satisfied its

---

[4] The Motion mischaracterizes the quoted language in the letter, claiming that ████████ "unequivocally stated that Mr. Lopez was unconcerned about criminal exposure despite learning that the government was investigating conduct with which it later charged him." (Mot. at 11).

Brady obligations when it disclosed the identities of witnesses with potentially exculpatory information and one- to two-sentence summaries of that information).

Here, the statements of ████████ merely reflect the favorable opinion of a former colleague and the fact that ███ did not "recall" Lopez being concerned about criminal exposure.  Such statements of personal opinion and lack of recollection or observation of "concern" are clearly not admissible or material.  Nevertheless, the government disclosed ███ ████'s identity and the substance of ███ statements that could be viewed as favorable to the defense, giving the Defendants ample time to contact ████████ and/or investigate further.  Thus, the government not only fulfilled its disclosure obligation, see Zagari, 111 F.3d at 320; Reddy, 190 F. Supp. 2d at 575, but demonstrated that the government is taking "a broad view of materiality" and erring on the side of disclosure, see JM § 9-5.001(B)(1).

Second, the Defendants point to another instance in which the government in fact complied with its obligations, citing to a document bearing Bates number FIFA2-000979389. (Mot. at 10; Umhofer Decl. Ex. T).  This document was produced to the Defendants by the government on May 7, 2020, long before the filing of this motion, not to mention trial, a date for which has not yet been set.  The Defendants' complaint, although not entirely clear, appears to be that the government produced the document without specifically referring to it as Brady.

As an initial matter, the government notes that the produced email exchange does not constitute Brady.  The emails refers to Lopez calling Alejandro Burzaco of Torneos and telling him that there were payments concerning Colombia that did not have corresponding invoices.  In the context of Fox's purported audit, this is damning evidence that Lopez was working closely with Burzaco to deal with the lack of documentary support for financial

transactions.[5]  That lower-level Torneos employees were concerned about how the audit was being managed does not tend to exculpate Lopez and is not Brady.  See Coppa, 267 F.3d at 135.

Needless to say, the government recognizes that the defense may view a document differently than the government does, especially when defendants are formulating a defense and have chosen not to reveal the nuances of that defense to the government.  (See Mot. at 10 n.1 (noting that the Defendants are maintaining confidentiality "of counsel's work product and defense strategy" guiding their interpretation of this and other produced documents)).  This is one of the reasons that the government takes a broad view of discovery.

Despite these examples of the government complying with, if not going beyond, its discovery obligations, the Defendants claim, somewhat inconsistently, that the government "is withholding" potentially exculpatory documents and witness statements (Mot. at 12), and that there is a "risk" that the government is "depriving Mr. Lopez and Mr. Martinez of important information to which they are entitled."  (Mot. at 11).  They then use this as a basis to ask the Court to order the government to identify in the produced materials any documents that might be viewed by the defense as helpful.  (Mot. at 1).  Both variations of the factual premise are wrong and the relief sought is not supported by the law.

As their own examples demonstrate, the government has produced the documents and information that the Defendants claim they need in accordance with the government's obligations.  See Coppa, 267 F.3d at 140 ("The government [] has a so-called 'Brady obligation'

---

[5] The email exchange suggests that a Torneos employee was surprised by Lopez's knowledge of certain payments.  Even out of context, this supports the conclusion that Lopez had a detailed level of knowledge of undocumented payments, at least as of October 2014.  The government notes that the context of the email does not establish that the payments in question were bribes.  The government will prove through other evidence at trial that Lopez knew of, and had agreed to, the bribery conspiracy alleged in the indictment prior to 2014.

only where <u>non-disclosure</u> of a particular piece of evidence would deprive a defendant of a fair trial.") (emphasis supplied).  The legal authority offered by the Defendants do not require more.  (<u>See</u> Mot. at 7-9 (citing, e.g., <u>United States v. Bagley</u>, 473 U.S. 667 (1985) (defining standard of materiality applicable to "nondisclosed evidence"); <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995) (assessing materiality of "suppressed evidence"); <u>United States v. Rivas</u>, 377 F.3d 195 (2d Cir. 2004) (holding that <u>Brady</u> violation occurred when prosecution failed to disclose information until after verdict); <u>United States v. Nejad</u>, 18-CR-224, Dkt. 348 (S.D.N.Y. June 5, 2020) (considering evidence not disclosed to the defendant until after trial).

Still, the Defendants claim that the government should be required to review all of the <u>produced</u> discovery, which is already in the Defendants' possession, to identify any documents that might be interpreted by the defense as supporting their undisclosed defense theory.  (Mot. at 1, 10 n.1).  No such obligation exists.  As the Second Circuit has explained, "[t]he government's duty to disclose generally does not include a duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence."  <u>United States v. Kirk Tang Yuk</u>, 885 F.3d 57, 86 (2d Cir. 2018) (internal quotation marks and citation omitted); <u>see also</u> <u>United States v. Taylor</u>, 17 F. Supp. 3d 162, 176-77 (E.D.N.Y. 2014) (denying "motion to compel the government to clarify what <u>Brady</u> material exists"), aff'd, 802 F. App'x 604 (2d Cir. 2020).  "While the Supreme Court in <u>Brady</u> held that the Government may not properly conceal exculpatory evidence from a defendant, it does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case."  <u>United States v. Weaver</u>, 992 F. Supp. 2d 152, 156 (E.D.N.Y. 2014) (internal quotation marks and citations omitted); <u>see</u> <u>also</u> <u>Kirk Tang Yuk</u>, 885 F.3d at 86 (rejecting the suggestion that "the government should bear the full burden of reviewing and characterizing each document within a

voluminous evidentiary record").  In other words, "Brady and its progeny permit the government to make information within its control available for inspection by the defense, and impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed."  United States v. Pellulo, 399 F.3d 197, 212 (3d Cir. 2005).

Courts have held that, especially where the government provides indices and the materials are produced in a searchable format, no more is required.  See Weaver, 992 F. Supp. 2d at 156 (denying motion to compel government "to conduct immediate review of all documents in its possession in this matter, and identify all Brady materials for all defendants," where government provided detailed indices for all the materials it produced, the majority of which were provided in a format that could be easily searched); see also United States v. Rubin/Chambers, Dunhill Ins. Servs., 825 F. Supp. 2d 451, 457 (S.D.N.Y. 2011) (observing that government had "provided Defendants with access to all potential Brady material and has taken additional steps to facilitate Defendants' review of that material" where disclosures were searchable and included descriptive indices).

Here, although the produced discovery is voluminous, the government has provided the Defendants with detailed indices for the materials and the materials can be easily searched.  The Defendants therefore are in a position to search the discovery to identify documents that may be helpful to any defense theories, and the government should not be required to "ferret out any potentially defense-favorable information" contained within those materials.  Pellulo, 399 F.3d at 212.

The government has complied and will continue to comply with its Brady obligations.  The Motion should be denied to the extent it seeks an order requiring more.

III.     The Government is Complying with its Rule 16 Obligations

          The Defendants next assert that the government's approach to discovery to date
"leaves no doubt that it has failed to discharge its discovery obligations" under Rule 16.  (Mot. at
13).  Specifically, the Defendants contend that the government has inconsistently and too
narrowly applied its Rule 16 discovery obligations by including ███████████   ██████████
█████████████   in its document productions while not producing every document obtained from
Fox and Torneos, including email communications with counsel.  (Id. at 1, 12-13).  As discussed
below, the Defendants' assertions are baseless.  The government has complied, and will continue
to comply, with its Rule 16 obligations.

     A.     Legal Standard

          Rule 16 requires, among other things, that the government produce evidence that
is "within the government's possession, custody, or control" and "is material to preparing the
defense."  Fed. R. Crim. P. 16(a)(1)(E)(i).  The "materiality standard [of Rule 16] normally is not
a heavy burden; rather, evidence is material as long as there is a strong indication that it will play
an important role in uncovering admissible evidence, aiding witness preparation, corroborating
testimony, or assisting impeachment or rebuttal."  United States v. Messina, No. 11-CR-31
(KAM), 2011 WL 3471511, at *1 (E.D.N.Y. Aug. 8, 2011) (quoting United States v. Stein, 488
F. Supp. 2d 350, 356-57 (S.D.N.Y. 2007) (quoting United States v. Lloyd, 992 F.2d 348, 351
(D.C. Cir. 1993).  "Evidence is material under Rule 16 if it 'could be used to counter the
government's case or to bolster a defense.'"  Messina, 2011 WL 3471511, at *1 (quoting United
States v. Stevens, 985 F.2d 1175, 1180 (2d. Cir. 1993)).

          "Materiality means more than that the evidence in question bears some abstract
logical relationship to the issues in the case."  Messina, 2011 WL 3471511, at *1 (citing United

17

States v. Maniktala, 934 F.2d 25, 28 (2d Cir. 1991)). Rather, the requested information must "enable[ ] the defendant significantly to alter the quantum of proof in his favor." Id.; see also United States v. Cardoso, No. 05CR. 563(LTS), 2006 WL 739836, at *1 (S.D.N.Y. Mar. 23, 2006) (holding that evidence is "material" under Rule 16(a)(1)(E)(i) if its "pretrial disclosure will enable a defendant to alter significantly the quantum of proof in his favor"). The defendant bears the burden of making a *prima facie* showing that documents sought under Rule 16(a)(1)(E) are material to preparing the defense. Cardoso, 2006 WL 739836, at *1 (quoting Maniktala, 934 F.2d at 28). "To satisfy this burden, a defendant must offer more than conclusory allegations that the requested evidence is material or that it would be useful to the defense." Messina, 2011 WL 3471511, at *2.

B.    Analysis

The Defendants base their assertion that the government has failed to discharge its discovery obligations on the purported inconsistency between the government's production of ███████████████████████     ████ and its decision to withhold certain documents provided to the government by Fox and Torneos. (See Mot. at 14 ("The government's production of documents with such little relevance to any of the allegations in this case contrasts starkly with its deliberate decision to withhold documents that are material under Rule 16.")). The argument is meritless.

The government has produced more than 18 million pages of discovery to date as part of its rolling Rule 16 productions. It has assured the Defendants that it is taking a broad view of its discovery obligations, including, for example, producing all documents that it produced to defendants prior to the 2017 trial. Consistent with this approach, as the government has explained to the Defendants, it has produced and is producing many materials that are not

discoverable under Rule 16 or otherwise.  The ███████████████  ████████

██████████ were included in the data recovered during the government's investigation and

produced to the defendants pursuant to a protective order before the 2017 trial.  Although the

Defendants have not given the government the opportunity to confirm the origins of ████████

(referenced without Bates numbers), they likely were obtained from a computer used by

defendant Juan Ángel Napout and were produced before the 2017 trial as potentially relevant to

defense arguments concerning the reason the computer was stolen from CONMEBOL's offices.

See Transcript dated Oct. 10, 2017 at 16-21 (discussing the government's letter to counsel for

defendant Napout, dated Oct. 9, 2017, calling Napout's attention to materials recovered from the

stolen computer).  █████████████ fall outside the scope of Rule 16 in this case, but the government

produced them consistent with its commitment to producing all documents produced to previous

trial defendants (with minor exceptions, such as where privileged materials were only produced

to the privilege-holder).  Given that the Defendants initially sought "open file" discovery, they

should not now be heard to complain that the government has produced too much.

       The documents the Defendants contend the government has decided to withhold

fall into two categories for purposes of the Motion.  First, the Defendants urge an inference that

the government has withheld hundreds of thousands of pages based on the Defendants' analysis

of secondary Bates numbering.  The government has not been afforded an opportunity to confer

with defense counsel about these documents, except to point out errors in their analysis of the

Torneos documents.  To be clear, the government does not intend to withhold any historical

documents produced by either Fox or Torneos – i.e., the documents that received the underlying

secondary Bates numbers reflecting their original production to the government – and is prepared

to work with defense counsel to determine what gaps, if any, there have been in the productions.

19

Second, the Defendants take the position that "if the government is producing ██████, there is no reason that it should withhold its correspondence with a cooperating entity on the basis that it cannot be used to prepare a defense." (Mot. at 14). This is a *non sequitur*. The government's production of certain materials that fall outside the technical limits of Rule 16 does not create an obligation to produce other materials that are not discoverable under the law.

Emails between the government and counsel for Fox or Torneos are not discoverable under Rule 16 or otherwise. The Defendants contend that scheduling emails are material because "the fact and timing of those emails will contextualize meetings with cooperating entities, permitting the defense to draw specific inferences about the government's investigation" and "will provide information that will guide defense investigations and trial preparation, and the defense must be permitted to review that correspondence to determine how to best put it to use." (Mot. at 14). In other words, the Defendants would like to engage in a fishing expedition through aspects of the government's investigation in hopes that maybe, at some point, they will find a way to make use of the information provided. See Cardoso, 2006 WL 739836, at *2 (denying a motion to compel under Rule 16(a)(1)(E) because "the defense has failed to sustain its burden of demonstrating that the discovery sought is material, rather than merely potentially helpful, to the defense").

Rule 16 does not require such disclosures, particularly when, as here, there is no reason to think that correspondence among lawyers would "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal," Messina, 2011 WL 3471511, at *1, or "enable the defendant significantly to alter the quantum of proof in his favor," Maniktala, 934 F.2d at 28; see Messina, 2011 WL 3471511, at *1; Cardoso, 2006 WL 739836, at *1. The defendants have cited no

20

authority to the contrary.  Although Stein, cited in the Motion (and, in the government's view, wrongly decided in certain respects), held that while certain communications between a cooperating entity and the government "relat[ing] to the facts at issue in th[e] indictment" were material to the defense and thus discoverable, requests for communications that "swe[pt] more broadly" did not seek material information.  488 F. Supp. 2d at 359-60.  Stein did not order scheduling emails to be produced, and scheduling emails and other communications between counsel for Fox, Torneos and the government in this case do not shed light on the facts at issue in the indictment.  Likewise, in United States v. Sudikoff, 36 F. Supp. 2d 1196, 1201-04 (C.D. Cal. 1999), also cited in the Motion, the court ordered, pursuant to Brady and Giglio, the production of information, including communications between the government and a cooperating witness and his counsel, that related to the witness's credibility.  But the credibility of the entities that produced documents to the government are not at issue in this case.  To the extent the credibility of any witnesses who worked for those entities is at issue, the defense has received, or will receive, the impeachment materials the government is required to disclose.

The Defendants' additional allegation in support of their argument that the government has failed to comply with its Rule 16 obligations – namely, that the government has failed to produce a "potentially exculpatory" communication between Torneos and defendant Full Play Group about the Copa Libertadores (see Mot. at 14) – also fails.  So far as it has been able to determine, the government does not possess the document referenced in the Motion, and thus neither Brady nor Rule 16 requires its production.[6]  Here, again, had the Defendants

---

[6] After the Defendants filed their Motion, the government asked the Defendants to further identify the document.  The Defendants responded that the document was produced with Bates number TORNEOS-GOLTV-00002247 in a civil suit currently stayed in federal court in the Southern District of Florida.  In light of the Defendant's Motion, the government may request all

conferred with the government about the purportedly withheld document, the government would have been able to verify and clarify that it does not have the document.

In sum, the Defendants' Motion is meritless and should be denied to the extent it seeks an order directing the government to do more than it has already committed to do with respect to its Rule 16 obligations.

## IV.   The Government is Not Required To Respond To More Than 300 Itemized Requests

Finally, the Defendants argue that the Court should, at a minimum, order the government to respond to more than 300 itemized requests for discovery and other demands. Because there is no basis in the law for this request, it should be denied.

### A.   Legal Standard

Rule 16 contains no provision requiring the government to provide itemized written responses to a list of demands posed by a defendant.  See generally Fed. R. Crim. Pro. 16 (requiring government to "furnish" or permit the defendant to "inspect and copy" various documents, and requiring a "written summary" only of expert testimony).  To the contrary, courts have long held that the criminal discovery rules do not permit a defendant to propound interrogatories.  E.g., United States v. Conder, 423 F.2d 904, 910 (6th Cir. 1970) (interrogatories filed by defendants inappropriate in criminal discovery); United States v. Kearney, 436 F. Supp. 1108, 1117 (S.D.N.Y. 1977) (interrogatories "designed to elicit the date and scope of the government's knowledge of defendant's activities and its election to neither investigate nor prosecute . . . are not discoverable under Rule 16").  As discussed above, Rule 16 provides for

---

documents produced by Torneos to co-defendants in the civil suit and, upon receiving them, will reproduce those documents to the Defendants, notwithstanding that they will be duplicative of documents the Defendants have long had in their possession.

the discovery of a limited range of enumerated materials.  Moreover, Rule 16 specifically

excepts certain categories of documents from discovery, including transcripts of grand jury

proceedings, <u>see</u> Fed. R. Crim. P. 16(a)(3), and investigative documents and memoranda, <u>see</u>

Fed. R. Crim. P. 16(a)(2).

     B.   <u>Analysis</u>

        The Court should deny the Defendants' request that it order the government to

respond to hundreds of itemized discovery demands, a request that is unsupported by the law.

The Defendants cite a number of cases for the proposition that the government is obligated to

provide individualized responses to a defendant's list of discovery demands, but the cases are

largely inapposite.  Indeed, with one exception, the cited cases have little to do with responding

to a defendant's itemized discovery demands and are taken out of context:

- In <u>United States v. Agurs</u>, 427 U.S. 97, 106 (1976), the Supreme Court made the uncontroversial observation that the government's deliberate suppression of exculpatory evidence in the face of a demand for that evidence would be inexcusable.

- In <u>United States v. Turner</u>, No. 08-cr-069, Dkt. 34. P. 2-3 n.2 (S.D. Ga. June 24, 2008), the defendants filed 11 motions seeking various discovery.  In its omnibus response, the government addressed many of the motions in the preliminary statement alone.  In the cited footnote, the Court chided the government for structuring its brief this way.  <u>Id.</u>

- In <u>United States v. Aiken</u>, 76 F.Supp.2d 1339, 1341 n.4 (S.D. Fla. 1999), the defendant had made "extraordinary" discovery requests relating to mitigating factors in the event that he was charged with the death penalty.  The government, with the court's blessing, did not initially respond to the requests because the defendant had not been certified as death-eligible and the issue was therefore unripe.  <u>Id.</u> at 1341.  Once the defendant was certified as death-eligible, however, the court required the government to provide more specific responses as to penalty-phase discovery requests.  <u>Id.</u>

        The only case relied on by the Defendants that is remotely relevant to the issue at

hand is <u>United States v. Ashburn</u>, No. 11-CR-303 (NGG), 2014 WL 1800409, at *14 (E.D.N.Y.

May 6, 2014).  There, Judge Garaufis ordered the government to submit a letter responding to six

discovery demands for highly specific information (e.g., surveillance videos, crime scene photos,

lineup photos) in order to "clarify[] the contours and scope the all [sic] remaining discovery disputes in this case."  Id.  In response, the government provided a letter which, in sum and substance, confirmed that the government had already produced everything in its possession in those six categories.  Requiring the government to respond to six highly specific requests in order to crystalize the remaining disputes for the Court's benefit is a far cry from requiring the government to respond to over 300 wide-ranging demands.

This is particularly true where, as here, the requests include numerous categories of materials that are not within the ambit of Rule 16.  Indeed, although Lopez describes his discovery demands as "specifically tailored to seek information that is material to Mr. Lopez's defense," even a cursory review of his April 21, 2020 discovery demand reveals that it is overbroad and seeks information that is immaterial or otherwise not discoverable.  (Umhofer Decl. Ex. A).  The same is true of Martinez's April 27, 2020 discovery demand.  Among the documents requested are *all* subpoenas issued during the course of the government's investigation, and, in the case of Lopez, confirmation as to whether any subpoenas remain outstanding.  (Umhofer Decl. Ex. A at C.6; Coleman Decl. Ex. A at 4).  Lopez also demands, without limitation, that the government "identify all documents received by any government agent from an outside lawyer . . . or any other person."  (Umhofer Decl. Ex. A at F.3).  Both defendants request the unsealing and production of grand jury transcripts.  (Umhofer Decl. Ex. A at E.15; Coleman Decl. Ex. A at 9).  These wide-ranging requests are merely exemplars of the defendants' over 300 "discovery" requests.

Nothing in the criminal law entitles the defendants to what amounts to detailed interrogatory responses.  The Court should deny their request accordingly.

V.    <u>Sealing</u>

The Court directed the government to respond to the Defendants' filing of its

papers under seal, in accordance with the protective order governing discovery in this case.  The

government proposes that the parties' memoranda of law be unsealed but respectfully requests

that the Court grant the government until October 23, 2020, to determine what portions, if any, of

the attached declarations and related Exhibits should remain under seal.

CONCLUSION

For the foregoing reasons, the government respectfully submits that the Motion

should be denied, without prejudice to the Defendants' ability to seek relief from the Court in

connection with discovery disputes or any other matter as the case progresses.

Dated:    Brooklyn, New York
          October 17, 2020

                                        SETH D. DUCHARME
                                        Acting United States Attorney
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201


                              By:    /s/_____
                                     Samuel P. Nitze
                                     M. Kristin Mace
                                     Patrick T. Hein
                                     Kaitlin T. Farrell
                                     Assistant United States Attorneys
                                     (718) 254-7000