UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

       Plaintiff,

  v.

FULL PLAY GROUP, S.A., *et al.,*

       Defendants.

Crim. Case No.: 15-cr-252 (PKC)

# DEFENDANT FULL PLAY GROUP'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS AND FOR SEVERANCE

**MCDERMOTT WILL & EMERY LLP**
Carlos F. Ortiz
One Vanderbilt Avenue
New York, New York 10017
Tel.: (212) 547-5566

Annabel Rodriguez
200 Clarendon Street, Floor 58
Boston, MA 02116
Tel. (617) 535-4063

**NORTON ROSE FULBRIGHT US LLP**
Mayling C. Blanco
Katey L. Fardelmann
1301 Avenue of the Americas
New York, New York 10019
Tel.: (212) 318-3000

*Attorneys for Defendants Full Play Group S.A.*

Defendant Full Play Group S.A. ("FPG") respectfully submits this Reply Memorandum in Further Support of its Motion to Dismiss and for Severance pursuant to Federal Rules of Criminal Procedure 8(b), 12(b), and 14 (Dkt. No. 1594, "DB") and in answer to the Government's Opposition. (Dkt No. 1604, "GB").

## I. The Criminal Charges Against FPG are Constitutionally Void for Vagueness Because *Skilling*'s "National Standard" Does Not Extend to Foreign Private-Sector Employment Relationships

The government fails to address FPG's void-for-vagueness argument. The government focuses on defendants Martinez and Lopez's vagueness challenge to the exclusion of FPG's argument. Specifically, the government describes the defendants' vagueness challenge as follows:

> (1) In *Skilling*, the Supreme Court failed to define the nature of the fiduciary duty that must be breached in an honest services fraud offense; (2) accordingly, in the wake of *Skilling*, some courts have struggled to determine which sources of fiduciary duties are sufficient to support an honest services fraud prosecution; and (3) because the question is unsettled in certain respects, the honest services fraud statute is unconstitutionally vague as applied to the conduct at issue here, involving fiduciary duties owed by foreign nationals to their foreign employers.

GB at 11. This strawman formulation is not FPG's vagueness argument. Rather, FPG argues that: (1) *Skilling* "'establish[ed] a uniform *national* standard, defin[ing] honest services with clarity' as applying to 'offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes[,]'" DB at 1 (quoting *Skilling v. United States,* 561 U.S. 358, 407-08, 411 (2010)) (emphasis added); (2) "the indictment did not identify fiduciary duties that exist within U.S. national borders[,]" *id.*; and (3) "even if the *Skilling* national standard were extended to foreign nations, the indictment bases the fiduciary duties on private employer codes of ethics that do not, as a matter of law, create fiduciary duties whose breach is criminal" in the nations in which the employment relationships existed, *id.*

1

The government ignores that *Skilling* expressly established a "uniform national standard," not an international one. The Supreme Court spoke clearly and presumably meant what it said. The Supreme Court supported its clear establishment of a national standard through a survey of pre-*McNally* case law—all cases involving domestic fiduciary duties owed by private-sector employees and public officials. *Skilling*, 561 U.S. at 399-401, 407-08. The government does not—and indeed cannot—dispute that all the pre-*McNally* honest-services fraud cases involving private-sector employees addressed potential breaches of domestic fiduciary duties. There simply are no pre-*McNally* cases extending domestic fiduciary law principles to foreign private-sector employment relationships. Neither the clear language the *Skilling* Court used to limit the geographic scope of its "uniform *national* standard" nor the domestic fiduciary duty case law it analyzed to support its national standard extends the standard's application to foreign private-sector employment relationships.

That courts have struggled to determine what may serve as the source of a fiduciary duty is beside the point. The point is that the Supreme Court did not—in word or in analysis—extend domestic fiduciary duty principles to foreign private-sector employment relationships. Indeed, no court has held that U.S. domestic fiduciary duty principles apply to foreign private-sector employment relationships. For these reasons, the government's reliance on *United States v. Nouri*, 711 F.3d 129 (2d Cir. 2013), *United States v. Milovanovic*, 678 F.3d 713 (9th Cir. 2012) (*en banc*), *United States v. Bahel*, 662 F.3d 610 (2d Cir. 2011), and *United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) (*en banc*) is misplaced. These cases all involve fiduciary duties by domestic employees or agents to domestic employers or principals, and not fiduciary duties owed by foreign employees to foreign employers. *United States v. Napout* is not to the contrary. The *Napout* Court

did not find any case law applying the honest-services fraud statute to foreign private-sector employment relationships. *See United States v. Napout*, 963 F.3d 163, 183-84 (2d Cir. 2020).

The government's reliance on Judge Hall's concurrence in *Napout* is similarly misplaced. The majority did not join Judge Hall's concurring opinion that defendants, "by virtue of their relationship with FIFA and CONMEBOL, had a fiduciary duty not to accept bribes or kickbacks, a duty that was explicitly laid out by the two associations' respective codes of conduct." GB at 15 (quoting *Napout*, 963 F.3d at 191 (Hall, J., concurring)). And the majority did not join for good reason. Napout and Marin did not raise in the District Court—and thus Judge Hall did not review or address on appeal—that the law in their jurisdictions of employment (*i.e.*, Paraguay and Brazil) did not recognize criminally enforceable fiduciary duties not to accept bribes or kickbacks.

The government further argues that FPG "misunderstands *Skilling* and ignores binding authority in this Circuit" insofar as "*Skilling* did not restrict honest services fraud prosecutions to cases with facts or participants similar to those at issue before *McNally*[.]" GB at 18 (quoting *Bahel*, 662 F.3d at 632 ("*Rybicki*, like *Skilling*, stands for the proposition that fraud actionable under Section 1346 is limited to the nature of the offenses prosecuted in the pre-*McNally* cases . . . — not the identity of the actors involved in those cases.") (internal quotation and alterations omitted)). FPG neither misunderstands *Skilling* nor ignores binding authority in this Circuit. To the contrary, it is the government that ignores the plain text of *Skilling*. In doing so, it not only attempts to expand *Skilling*'s "national standard" beyond its borders, but it also demands that domestic fiduciary duty principles supplant those governing foreign employment relationships.

Moreover, FPG does not argue that Section 1346 is limited to the identity of the actors in pre-*McNally* cases. Rather, FPG accurately highlights that *Skilling* limited the scope of Section

3

1346 to the core of pre-*McNally* cases and that none of the pre-*McNally* cases the Supreme Court surveyed applied honest-services fraud to foreign private-sector employment relationships.

**II.     Even if the *Skilling* Standard Were Extended to Foreign Private-Sector Employment Relationships, the Charges Against FPG Would Still be Constitutionally Void for Vagueness, as the Law in the Relevant Foreign Jurisdictions did not Recognize a Fiduciary Duty Between Employees and Employers Whose Violation by Receipt of a Bribe is Criminally Actionable**

The government trivializes as a "specter" the "unbridled enforcement of employment relationships across the globe" that its unmoored interpretation of *Skilling* would unleash. GB at 18. It argues that "[t]his prosecution is not primarily focused on policing foreign employment relationships, any more than the prosecutions brought in *Pasquantino v. United States*, 544 U.S. 349 (2005), or *Trapilo* were focused on securing foreign sovereigns' ability to secure tax revenue." GB at 19.[1] But in *Pasquantino*, the Supreme Court found it necessary to examine foreign law to decide whether the defendant committed a crime. *See Pasquantino*, 544 U.S. at 369-70. Here, by contrast, the government insists that FPG's "repeated references to foreign law . . . are *irrelevant*[.]" GB at 18 n.7 (emphasis added).

Assuming *arguendo* that *Skilling* applies to foreign private-sector employment relationships, then like the wire fraud prosecution in *Pasquantino*, "a prosecution like this one requires a court to recognize foreign law to determine whether the defendant violated U.S. law[.]" *Pasquantino*, 544 U.S. at 351. Specifically, this Court would have to examine whether FPG, "in violation of a fiduciary duty, participated in bribery or kickback schemes." *Skilling,* 561 U.S. at 407; *Rybicki*, 354 F.3d at 128 (applying honest-services doctrine to domestic private-sector

---

[1] In *Pasquantino*, the Supreme Court resolved "a conflict in the Courts of Appeals over whether a scheme to defraud a foreign government of tax revenue violates the wire fraud statute." 544 U.S. at 354 ("[c]omparing *United States v. Boots*, 80 F.3d 580, 587 (1st Cir. 1996) (holding that a scheme to defraud foreign nation of tax revenue does not violate wire fraud statute), with *United States v. Trapilo*, 130 F.3d 547, 552-53 (2d Cir. 1997) (holding that a scheme to defraud a foreign nation of tax revenue violates wire fraud statute)").

scheme "in which the defendant breached or induced the breach of a duty owed by an employee or agent to his employer or principal that was enforceable by an action at tort") (quoting *United States v. Rybicki*, 287 F.3d 257, 264 (2d Cir. 2002)). Under New York choice-of-law principles governing tort actions, "[t]he law of the jurisdiction having the greatest interest in the litigation will be applied" and "[u]nder this formulation, significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 384 (2d Cir. 2006) (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985)).[2]

The question this Court would have to address, therefore, is whether the law in FPG's state of incorporation (Uruguay), FPG's principal place of business (Argentina), or the domicile of its principal counterparty (Paraguay) recognizes a fiduciary duty between employees and employers whose violation by receipt of a bribe is criminally actionable. If that were not the case, then FPG would not have constitutionally fair notice that a commercial bribe could result in a criminal prosecution and would be subject to arbitrary enforcement. *See generally Johnson v. United States*, 576 U.S. 591, 595 (2015). As the uncontroverted declarations of Dr. Gonzalo D. Fernández, Dr. Rodolfo Carlos Barra, and Dr. Jorge Enrique Bogarín González make clear, the law of the relevant jurisdictions does not do so.

The government next argues that FPG's "argument ignores that the [Third Superseding Indictment ("TSI")] charges domestic, not extraterritorial, violations of the wire fraud statute."

---

[2] *See also BlackRock, Inc. v. Schroders PLC*, No. 07 Civ. 3183(PKL), 2007 WL 1573933, at *1 (S.D.N.Y. May 30, 2007) ("Where, as is the case here, the laws in question regulate conduct, courts in New York will usually apply the law of the place of the tort. As previously discussed, the actions giving rise to BlackRock's complaint occurred largely in Germany.") (internal citation omitted); *Tyco Int'l Ltd. v. Walsh*, 751 F. Supp. 2d 606, 619 (S.D.N.Y. 2010), *rev'd on other grounds*, 455 F. App'x 55 (2d Cir. 2012) ("Bermuda's substantive law applies to Tyco's breach of fiduciary duty claim against Walsh. Tyco is a Bermuda corporation, and there is no reason in this case not to follow New York's internal affairs doctrine, which typically applies the law of the state of incorporation to claims involving a director's duties to the corporation.").

GB at 18 n.7. The government stresses "what is proscribed is the use of the telecommunications systems of the United States in furtherance of a scheme to defraud." GB at 19 (internal quotation and citation omitted). But the question whether the alleged scheme to defraud is constitutionally vague is distinct from the question whether "the telecommunications systems of the United States [were used] in furtherance of a [properly pled] scheme to defraud." That is, if the codes of ethics in the jurisdictions governing the foreign private-sector employment relationships did not create a fiduciary duty whose violation by receipt a bribe is criminally actionable, then the indictment fails to plead a scheme to defraud that passes constitutional muster, regardless of whether U.S. telecommunication systems were used. *See United States v. Pierce*, 224 F.3d 158, 166 (2d Cir. 2000) ("If no Canadian duty or tax actually existed, the [defendants] were no more guilty of wire fraud than they would have been had they used the wires in furtherance of a scheme surreptitiously to transport liquor down the Hudson River from Yonkers into New York City, by flat-bottomed boat in the dead of night, in the sincere but mistaken belief that New York City imposes a duty on such cross-border shipments.").

Finally, the rule of lenity counsels against adopting the government's globally sweeping and unprecedented interpretation of *Skilling*. As the Supreme Court has made clear, when confronted with "two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language." *McNally v. United States,* 483 U.S. 350, 359–60 (1987); *see Napout*, 963 F.3d at 183 ("As we have noted, the statute [*i.e.*, 18 U.S.C. § 1346] provides no textual guidance about the duties whose violation will amount to a deprivation of honest services . . . .") (internal quotations and citation omitted). The Supreme Court has advised that "[t]his interpretive guide is particularly appropriate here . . . [where w]ire fraud is a predicate offense under the Racketeer Influenced and Corrupt Organizations Act

6

(RICO), 18 U.S.C. § 1961(1) (2000 ed., Supp. II), and the money laundering statute, § 1956(c)(7)(A) (2000 ed.)." *Pasquantino*, 544 U.S. at 383 (Ginsburg, J., dissenting).

**III. The Government Ignores its Own Allegations and the Corporate Form in its Response to FPG's Motion to Dismiss for Failure to State a Claim**

FPG argued in its Motion that because almost all of the highest ranking officials of CONMEBOL and CONCACAF were alleged to have participated in the charged bribery schemes, those entities could not have been defrauded as a matter of law. *See* DB at 11-18. The government's response ignores the corporate form and their own allegations raised in the TSI.

The government first argues that the question of whether CONMEBOL or CONCACAF was "defrauded is a question of fact to be determined by [a] jury." *See* GB at 33. However, the Court need only look to the four corners of the TSI to decide the issue. The TSI describes a 20-plus year conspiracy in which over thirty of the highest ranking officials of CONMEBOL and CONCACAF received bribes during the relevant period, including: (i) three former Presidents, one former Vice President, one former Second-Vice President, two former General Secretaries, and one former Treasurer of CONMEBOL; (ii) the former presidents from *all ten* of CONMEBOL's national member associations; and (iii) various high-ranking officials from CONCACAF, including three of its former Presidents. *See* DB at 12-13. Thus, as a legal matter, CONMEBOL and CONCACAF could not have been defrauded. As organizations, they can only act through their officers or other duly authorized agents. *See In re Payroll Express Corp.*, 186 F.3d 196, 207 (2d Cir. 1999) ("A corporation, possessing an identity only in a legal sense, necessarily speaks through its agents."); *Kirschner v. KPMG LLP*, 2010 NY Slip Op 7415, ¶¶ 8-9, 15 N.Y.3d 446, 465, 912 N.Y.S.2d 512, 517-18, 938 N.E.2d 941, 950-51 ("Corporations are not natural persons. Of necessity, they must act solely through the instrumentality of their officers or other duly authorized agents.") (internal quotations and citation omitted). Because almost all of

the highest ranking members of these organizations have been accused of engaging in the bribery schemes alleged in the TSI, CONMEBOL and CONCACAF as corporate entities were aware of the alleged bribery and could not have been defrauded. *See* DB at 11-14. The cases cited by the government in its Opposition only reinforce this concept.[3]

Next, the government argues that the simple concept that an employee or agent cannot be held liable for commercial bribery if their employer or principal was aware of the payment (*See* DB at 14-18) does not apply here because the alleged bribery was carried out by the CONMEBOL and CONCACAF officials in secret. *See* GB at 35. This argument fails for the same reason discussed above. With nearly every high-ranking official from CONMEBOL and CONCACAF accused of engaging in the charged bribery schemes, the alleged "victim" organizations were well aware of the purportedly secret conduct. *See United States v. Ramiro Andres Luque-Flores*, No. 1:17-cr-00537 (CBA), ECF No. 80, at 14-15 (E.D.N.Y. May 14, 2021) (finding that a widespread bribery and money laundering scheme involving numerous high-level officials at a company who were convicted, arrested, or investigated for their involvement in the scheme is not a case of an "innocent company's employees stealing from the till").

Finally, citing to *Napout*, the government argues that a jury has already found that CONMEBOL and CONCACAF were defrauded, and that this Court has already deemed these

---

[3] For example, in *Benedict v. Amaducci*, 1995 U.S. Dist. LEXIS 17684, at *22-25 (S.D.N.Y. Nov. 25, 1995), the court dismissed plaintiffs' commercial bribery action because, as here, the complaint failed to show that the illicit payments were made without the knowledge or consent of the recipients' employer or principal. Similarly, in *Jaclyn, Inc. v. Edison Bros. Stores, Inc*., 406 A.2d 474, 485-86 (N.J. Super. Ct. 1979), the court found that the defendant-company could not assert the defense of commercial bribery in action brought by plaintiffs to recover funds because the defendant possessed more than "alerting circumstantial information" that its employees were accepting bribes ("no fraud perpetrated upon a principal when he is made aware of the commissions or gifts paid to his agent by another . . . ."). The *Bridge v. Phoenix* case cited by the government has nothing to do with commercial bribery; this is a RICO case based on the predicate act of mail fraud. *See Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639, 641-42 (2008).

entities to be victims of the charged schemes. *See* GB at 34. This argument also lacks merit and indeed, the findings of a prior jury are wholly irrelevant to this matter.

IV.     **The Indictment is an Improper Domestic Application of the Statute**

Initially, we note the government acknowledged that Section 1346 is limited only to domestic applications and they do not seek to argue it applies extraterritorially. GB at 20. As such, the government must demonstrate that the conduct relevant to the statute's focus occurred in the United States. *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016). While the government contends that *Napout* binds this Court, FPG maintains that there are sufficient factual differences for an alternative conclusion when applied to here. First, the *Napout* decision relies heavily on *Bascuñán v. Elsaca*, 927 F.3d 108 (2d Cir. 2019), a civil RICO case stemming from the misappropriation of funds, rather than violations of the right to honest services under Section 1346, which makes the current analysis fundamentally different. The "focus" of Section 1346 is on the "scheme to defraud" by depriving another of the intangible right to honest services, rather than exclusively on the use of wires. *Id.* at 121. Here, the alleged "scheme to defraud" involves bribes and kickbacks by a foreign company to foreign soccer officials in order to obtain rights to tournaments in foreign countries. There are very few domestic ties relating to this alleged scheme as it relates to FPG to support the domestic application of the statute.

Second, to the extent there are allegations of some domestic wires in relation to FPG's involvement, such activity was merely incidental to the alleged scheme and insufficient to establish domestic application of the statute. *Bascuñán* held that "the use of the . . . wires must be *essential*, rather than merely incidental, to the scheme to defraud." 927 F.3d at 122 (emphasis added). In other words, the use of the mail and wires is only sufficient domestic conduct when "the use of the mail or wires [is] a *core component* of the scheme to defraud." *Id.* at 122 (emphasis added). As

9

highlighted above, the core component of the charge as alleged in the TSI is a scheme by foreigners against foreigners, which occurred almost exclusively off shore. *See* TSI at ¶¶ 133, 154 (*see, e.g.*, Count Twelve and Thirty). All the wires allegedly involving FPG flowed from foreign financial institution to foreign financial institution. The fact that there may have been a few occurrences of funds flowing through intermediary U.S. financial institutions cannot overcome the presumption against extraterritoriality, particularly in light of the foreign nature of the alleged scheme. For the above reasons, this case fails to sufficiently charge a domestic application of the honest-services wire fraud statute.

## V. FPG's Request for Severance is Warranted

FPG should stand trial independent of Lopez and Martinez because of their stated intention to put on a "blame Full Play defense." The government dismisses the argument claiming that the quoted statements are taken out of context. GB at 41-44. Despite their purported context the statement is plain that co-defendants intend to deploy a "'Blame Full Play Defense,' [described as] the notion that Torneos and Full Play . . . conspired together in a very close way, in ways that were not . . . perceivable or perceived by Mr. Lopez and Mr. Martinez." March 3, 2021 Hearing Tr. at 31. This was not a passing reference or careless oratory, as counsel reiterated its point later in his argument. *Id.* at 32. Indeed, the discovery co-defendants' sought was to bolster its "Blame Full Play Group" defense strategy. To ignore counsel's explicit statements would result in substantial prejudice to FPG's right to a fair trial, thus FPG's motion for severance should be granted.

## VI. Conclusion

For all these reasons, this Court should dismiss the indictment for failure to state an offense. Failing that, FPG respectfully requests that it be severed from co-defendants for trial purposes.

Dated: New York, New York
September 3, 2021

By: */s/ Carlos F. Ortiz*

MCDERMOTT, WILL & EMERY
Carlos F. Ortiz
One Vanderbilt Avenue
New York, New York 10017
Tel. (212) 547-5566
Fax (212) 547-5444
cortiz@mwe.com

Annabel Rodriguez
200 Clarendon Street, Floor 58
Boston, MA 02116
Tel. (617) 535-4063
anrodriguez@mwe.com

*Attorneys for Defendants Full Play Group S.A.*

NORTON ROSE FULBRIGHT US LLP
Mayling C. Blanco
Katey L. Fardelmann
1301 Avenue of the Americas
New York, NY 10103
Tel. (212) 318-3000
Fax (212) 318-3400
mayling.blanco@nortonrosefulbright.com
katey.fardelmann@nortonrosefulbright.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 3, 2021, I electronically filed the foregoing with the Clerk of Court for the United States District for the Eastern District of New York by using the CM/ECF system, which will electronically notify all participants in this case.

> */s/ Carlos F. Ortiz*
> Carlos F. Ortiz