## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CARLOS MARTINEZ,<br><br>　　　　　　Defendant. | CASE NO. 15-cr-252-33 (PKC) |

**DEFENDANT CARLOS MARTINEZ'S REPLY IN SUPPORT OF HIS MOTION *IN LIMINE* TO PRECLUDE: (1) LAW ENFORCEMENT AGENTS FROM TESTIFYING AS BOTH FACT WITNESSES AND EXPERTS, AND (2) IMPROPER TESTIMONY FROM GOVERNMENT AGENTS THAT TESTIFY AS EXPERTS**

**McCOOL LAW PLLC**
Steven J. McCool
Julia M. Coleman

**SPERTUS, LANDES & UMHOFER, LLP**
Samuel A. Josephs
Payton J. Lyon
Hannah A. Bogen

Michael T. Cornacchia

Ramon A. Abadin

*Counsel for Carlos Martinez*

## INTRODUCTION

Mr. Martinez respectfully submits this reply in support of his Motion *in Limine* to Preclude: (1) Law Enforcement Agents from Testifying as Both Fact Witnesses and Experts and (2) Improper Testimony from Government Agents That Testify as Experts (the "Motion"). For the reasons discussed below, Mr. Martinez requests that the Court grant the Motion.

The Court should not permit government agents from testifying as both fact and expert witnesses because permitting them to do so creates an unacceptable risk of prejudice to Mr. Martinez. This Circuit has plainly recognized that case agents who testify as experts are cloaked in "[an] aura of special reliability and trustworthiness," their testimony risks improperly buttressing the credibility of witnesses on whose testimony they rely, and their transitions between expert and lay testimony may confuse the jury. *See United States v. Dukagjini*, 326 F.3d 45, 53-54 (2d Cir. 2003). Despite the presence of each of those concerns here, the government states that any such testimony "will not pose the risk of prejudice about which the defendants are concerned" but offers no explanation as to how such risks will be avoided in this trial. (ECF No. 1720 ("Opp'n") at 18.)

Moreover, government agents may not combine or connect evidence to assert inferences or conclusions for the jury, regardless of whether they testify as an expert or as a lay witness. IRS-CID Special Agent Berryman ("SA Berryman") did this repeatedly during the 2017 trial by comparing entries in bribery ledgers with records of bank transactions—the obvious inference for the jury is that the identified bank transaction *was* a bribe payment. Such testimony is barred. *See United States v. Mejia*, 545 F.3d 179, 192-93 (2d Cir. 2008). The government's assertion that such testimony is permitted pursuant to Fed. R. Evid. 701 (Opp'n at 19) fails because "Rule 701 does not extend so far as to allow a witness to serve as the thirteenth juror and compare two pieces of

1

evidence that are already available to the jury." *United States v. Earls*, 704 F.3d 466, 472 (7th Cir. 2012). The government can argue that certain payments or contracts facilitated the bribery scheme, but it cannot introduce that conclusion through a witness. Accordingly, the Court should grant the Motion and preclude agents from acting as summary witnesses by combining or connecting evidence to state conclusions that are for the jury to reach.

## ARGUMENT

A. **Permitting Any Government Agent to Provide Both Lay and Expert Testimony Will Unfairly Prejudice Mr. Martinez.**

The Court should not permit any government agent to testify as both a lay witness and an expert at Mr. Martinez's trial. Contrary to the government's assertions, SA Berryman provided a mix of expert and lay testimony during the 2017 trial, and any similar testimony will also be improper. Expert testimony is testimony based on "scientific, technical, or other specialized knowledge," Fed. R. Evid. 702, *i.e.*, testimony "concern[ing] matters that the average juror is not capable of understanding on his or her own." *Mejia*, 545 F.3d at 194. SA Berryman expressly relied on his specialized experience when he explained, for instance: the use of travel companies in criminal schemes (2017 Trial Tr. at 3434); jargon in banking documents (*id.* at 3508-09); and the use of multiple signatory groups for company bank accounts (*id.* at 3377). Indeed, the transcript suggests that SA Berryman opined that one payment was "indicative of a bribe payoff" from a "money laundering intermediary" based on his years of experience as an IRS agent.[1] (*Id.* at 3370.)

---

[1] The government has stated that it does not intend to elicit this type of testimony from its testifying agents (Opp. at 17) and defendants highlight it here only as an example of improper testimony. If any similar testimony is elicited at this trial, it should be stricken.

2

The Second Circuit has expressly warned that there is "a risk of prejudice" to a defendant "when a fact witness or a case agent also functions as an expert for the government," because "the government confers upon him [t]he aura of special reliability and trustworthiness surrounding expert testimony." *Dukagjini*, 326 F.3d at 53 (internal quotation marks omitted) (alteration in original). The risk of such prejudice is particularly acute "when the [agent] bases his opinion on in-court testimony of fact witnesses, such testimony may improperly bolster that testimony and may 'suggest[] to the jury that a law enforcement specialist . . . believes the government's witness[] to be credible and the defendant to be guilty, suggestions we have previously condemned.'" *Id.* at 53 (second, third, and fourth alterations in original) (quoting *United States v. Cruz*, 981 F.2d 659, 663 (2d Cir. 1992)). Furthermore, such testimony risks confusing the jury, who may be unable to discern the difference between the agent's expert testimony and lay perceptions. *Id.* at 54.

The government's opposition demonstrates that the concerns about mixed fact and expert witnesses that the Second Circuit discussed in *Dukagjini* will be present at Mr. Martinez's trial. SA Berryman alternated between testimony based on his expertise as an IRS special agent with thirty years of experience and testimony based on his perceptions during his investigation. A law enforcement witness who similarly provides fact and expert testimony at Mr. Martinez's trial should be excluded because it is unreasonable to assume that jurors would be able to parse out the distinction between evidence that is based on the agent's own observations and testimony based on his expertise as a law enforcement agent. That distinction is important, as witnesses may lend more credibility to testimony they believe is based on an agent's specialized skills or knowledge. *See Dukagjini*, 326 F.3d at 53-54. Similarly, when a law enforcement witness bases testimony on the testimony of other witnesses at trial, the testimony of those witnesses will be unfairly credited.

3

Given the risk of prejudice arising from this type of testimony, the Court should limit government agents to testifying as either lay witnesses or as experts.

**B.  Government Agents Cannot, as SA Berryman Did, Act as Summary Witnesses by Comparing or Connecting Evidence.**

The government's proposed use of law enforcement agents would impermissibly combine and connect evidence to assert inferences and conclusions for the jury. The government asserts that testimony like SA Berryman's is appropriate because he "merely read from or described payments in the previously admitted bank records and ledger entries" and "identifi[ed]" entries in those documents that "on their face appear related." This oversimplification ignores the order and context in which SA Berryman "read from" records and "described" payments. By reading sections from a contract or entries from purported bribery ledgers immediately before describing the details of a facially corresponding transaction (*see, e.g.*, Motion at 3-4), SA Berryman was not merely reciting the details of records and transactions that "on their face[s] appear related"—he was opining that they *are* related. That is the only reason for offering the testimony in that order and, as the government noted, SA Berryman also testified to "connections" among the records. (Opp'n at 14, 18.) Indeed, if the agent were merely reading the details of easily decipherable transactions into the record, as the government contends, the agent's testimony would have little to no probative value and would be excludable as cumulative and a waste of time. *See Dukagjini*, 326 F.3d at 54.

Testimony that compares or connects evidence to assert an inference or conclusion that the jury should draw is inadmissible, regardless of whether it is presented as expert testimony or, as the government asserts it will be, as lay witness testimony. *See United States v. Freeman*, 730 F.3d 590, 597 (6th Cir. 2013) ("A witness, lay or expert, may not form conclusions for a jury that they are competent to reach on their own."). To the extent any government agents rely on or apply

4

any expertise or professional experience to "connect" or "combine" different records, that type of expert testimony would clearly run afoul of the Second Circuit's decisions in *Dukagjini* and *Mejia*. *See Dukagjini*, 326 F.3d at 55 (holding that the district "erred in allowing [an agent] to stray from his proper expert function" by testifying "as a summary prosecution witness"); *Mejia*, 545 F.3d at 190-91 (finding that when an agent expert provides summary testimony, the "officer expert transforms into the hub of the case, displacing the jury by connecting and combining all other testimony and physical evidence into a coherent, discernible, internally consistent picture of the defendant's guilt").

The government is incorrect that testimony like SA Berryman's is appropriate under Fed. R. Evid. 701 because "Rule 701 does not extend so far as to allow a witness to serve as the thirteenth juror and compare two pieces of evidence that are already available to the jury." *United States v. Earls*, 704 F.3d 466, 472 (7th Cir. 2012) (citing cases from the First, Ninth, and Eleventh Circuits); *United States v. Grinage*, 390 F.3d 746, 749 (2d Cir. 2004) ("Rule 701(b) . . . 'is designed to provide assurance [ ] against the admission of opinions which would merely tell the jury what result to reach.'" (second alteration in original) (quoting *United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir.1992))).

In *Grinage*, a case from this Circuit, the government introduced approximately 2,000 recorded phone calls into evidence, thirteen of which it played for the jury; three of those thirteen calls involved the defendant. *Grinage*, 390 F.3d at 748. The government's agent interpreted the calls that did not involve the defendant and then, based on the contents of those calls and the numerous other calls in evidence, the agent interpreted the calls involving the defendant. *Id.* The government argued that the agent's testimony was permissible under Fed. R. Evid. 701 because "'it was helpful for the jury to have the benefit of the testimony of an individual who reviewed

5

every call' and could assist the jury by placing the [defendant's] call in context and *highlighting its similarities* to other calls in furtherance of the conspiracy." *Id.* at 750 (emphasis added). The court found that the government's argument "fundamentally misunderstands Rule 701(b)" because, if that argument were accepted,

> there would be no need for the trial jury to review personally any evidence at all. The jurors could be "helped" by a summary witness for the Government, who could not only tell them what was in the evidence but tell them what inferences to draw from it. That is not the point of lay opinion evidence.

*Id.* The court ultimately concluded that the agent's testimony "usurped the function of the jury to decide what to infer from the content of the calls and in particular what to infer from the calls involving [the defendant] as to [his] participation in the drug ring." *Id.*

The cases above reject the government's argument that Fed. R. Evid. 701 permits government agents to connect or combine evidence to create inferences that the jury can reach on its own. The government's assertion that some summary testimony is "customary" (Opp'n at 18) is not justification for doing what the law prohibits. At the end of the day, the government may not displace the jury by offering any lay or expert testimony that connects evidence in a way that draws inferences or conclusions that the jury must reach on its own. *See Mejia*, 545 F.3d at 191; *Grinage*, 390 F.3d at 750; *see also United States v. Zhong*, No. 19-4110, 2022 WL 532947, at *11 (2d Cir. Feb. 23, 2022) (finding that the government impermissibly used expert testimony to "interpret and vouch for the admissible evidence [it had] offered." (alternation in original) (internal quotation marks omitted)).

None of the cases that the government cites change the analysis here. The government cites *United States v. Barnwell*, No. 15-cr-620, 2017 WL 1063457 (S.D.N.Y. Mar. 20, 2017), to supports its assertion that courts commonly permit agents to testify in a summary manner. (Opp'n at 15, 20.) But that case is distinguishable from the Second Circuit cases cited above because the

6

IRS agent there was "merely perform[ing] tax calculations" based on "numerical facts provided by [other] witnesses." *Barnwell*, 2017 WL 1063457, at *2. She was not drawing connections or inferences between records of different types, as SA Berryman did and as agents may do during Mr. Martinez's trial. The defense does not take issue with a government agent "tracing" funds from one bank account to another or calculating sums of money. Problems arise when agents "connect" different evidence in a manner that infers that facially innocuous wire transactions are the entries listed in a bribery ledger or paid pursuant to a sham contract. The other case from this Circuit that the government cites, *United States v. Riglioni*, 694 F. App'x 14 (2d Cir. 2017) (summary order), is inapposite because that agent did not compare or combine facts already in evidence, he simply identified the defendant's voice in a recording.

 Finally, it is important to note that limiting agent testimony in the manner requested here does not, in fact, prohibit the government from arguing facts to the jury. As the government admits, records about which SA Berryman testified were already in evidence (Opp'n at 14), so the government can still summarize all of the evidence in its closing argument and, at that time, assert that contracts or entries in a bribery ledger are reflected in wire transfers. It just may not do so through an agent acting as a summary witness "to 'provide [itself] with an additional summation.'" *Zhong*, 2022 WL 532947, at *11 (quoting *Dukagjini*, 326 F.3d at 54).

\* \* \* \* \*

## **CONCLUSION**

For the foregoing reasons, Mr. Martinez respectfully requests that the Court issue an Order: (1) prohibiting law enforcement agents from testifying as both fact witnesses and expert witnesses; and (2) precluding law enforcement agents from testifying about their opinions in the case and/or as "summary witnesses" for the government.

Dated: March 4, 2022                                    Respectfully submitted,

/s/ Steven J. McCool
STEVEN J. McCOOL
D.C. Bar No. 429369
JULIA M. COLEMAN
D.C. Bar No. 1018085
McCOOL LAW PLLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
Telephone:  (202) 450-3370
Fax:  (202) 450-3346
smccool@mccoollawpllc.com
jcoleman@mccoollawpllc.com


/s/ Samuel A. Josephs
SAMUEL A. JOSEPHS
sjosephs@spertuslaw.com
PAYTON J. LYON
plyon@spertuslaw.com
HANNAH A. BOGEN
hbogen@spertuslaw.com
SPERTUS, LANDES & UMHOFER, LLP
1990 S. Bundy Drive, Suite 705
Los Angeles, CA 90025
Telephone: (310) 826-4700


/s/ Michael T. Cornacchia
MICHAEL T. CORNACCHIA


/s/ Ramon A. Abadin
RAMON A. ABADIN

*Counsel for Carlos Martinez*