SPN/PTH/KTF/VAZ
F. #2015R00747

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

      - against -                                  Docket No. 15-CR-252 (S-3) (PKC)

FULL PLAY GROUP S.A., et al.,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

THE GOVERNMENT'S MEMORANDUM IN OPPOSITION
TO THE DEFENDANTS' MOTIONS FOR RULE 17 SUBPOENAS

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Samuel P. Nitze
Patrick T. Hein
Kaitlin T. Farrell
Victor A. Zapana
Assistant U.S. Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this brief in response to defendants Hernan Lopez and Carlos Martinez's (the "Defendants") motions for the issuance of pretrial subpoenas pursuant to Rule 17 to (1) PricewaterhouseCoopers ("PwC"), to obtain specified data relating to a BlackBerry device used by government witness Alejandro Burzaco, see ECF Dkt. No. 1754 (the "PwC Motion"), and (2) to DirecTV, PwC, and/or Torneos y Competencias ("Torneos") to obtain documents tending to show that Mr. Burzaco concealed the charged bribery schemes from DirecTV and other partners and investors in Torneos, see ECF Dkt. No. 1755 (the "DTV Motion"). The government also responds herein to the Defendants' related motion for impeachment material relating to the specified DirecTV documents. See ECF Dkt. No. 1751.

The PwC Motion should be denied as moot because neither PwC nor Torneos possesses the data the Defendants seek. The Motion also rests on a faulty premise – namely, that Mr. Burzaco has made representations to the government that he did not cause the reset of his BlackBerry – and fails to satisfy the requirements of Rule 17. The DirecTV Motion should be denied because, at this late date, it seeks documents likely held by or on behalf of foreign entities through use of Rule 17 subpoenas instead of letters rogatory. Such subpoenas are improper to the extent they seek documents held by foreign entities and, in any event, would impose an undue burden on the subpoenaed parties given the nature of the documents sought and (needlessly) short timeframe for their production. Notably, the Defendants could have raised their request for these records years ago, or at least in the motion for a letter rogatory that was partially granted by the Court in September 2021. The DirecTV Motion also fails to satisfy Rule 17's threshold requirements of relevancy, admissibility, and specificity. Accordingly, and for the reasons discussed further herein, the motions should be denied.

BACKGROUND

I.  Factual Context Relating to Mr. Burzaco's BlackBerry Reset to Factory Settings

The Defendants have provided an incomplete and misleading summary of the relevant factual context related to the PwC Motion, perhaps in an effort to muscle the facts into conformity with applicable legal standards.

It is the government's understanding, based primarily on information provided by Mr. Burzaco, that on or about May 29, 2015, after having made a final decision to turn himself in and waive extradition to the United States, Mr. Burzaco determined that it was essential that he affirmatively surrender to the authorities before being apprehended, to avoid the risk that he would be misperceived as having been caught while on the run. See Gov't Mem. In Opp. Mot. to Compel, ECF Dkt. No. 1673, at 3 (summarizing same factual context). Mr. Burzaco turned his phones over to his attorney, who attempted to disable the antennae on the phones, with Mr. Burzaco's assistance, to avoid any chance that Mr. Burzaco was being tracked. Mr. Burzaco took custody of the phones and chips again days later, when his attorney traveled back to Argentina, out of concern that the phones might be confiscated or otherwise compromised during travel. In early June, during the period when Mr. Burzaco's attorney was in Argentina, Mr. Burzaco attempted to turn the BlackBerry on but saw that it did not work. Mr. Burzaco believed at the time that someone likely cut off his BlackBerry service. Contrary to the Defendants' assertion, Mr. Burzaco has never represented to the government that he was not responsible for the restoration of his BlackBerry to factory settings – indeed, he did not know following his surrender and to this day has no firsthand knowledge that the BlackBerry was restored to factory settings. Rather, when Mr. Burzaco was unable to turn on his BlackBerry in June of 2015, he assumed access to the device had been cut off remotely. From Mr. Burzaco's perspective, if in fact the BlackBerry was restored to factory settings on May 29, 2015 – again, he does not know this to be so, though the government

2

agrees the data so indicates – that restoration may well have been caused by his and his attorney's efforts to disable the antenna on the device.

The government has not represented to defense counsel that Mr. Burzaco did not cause the restoration of the BlackBerry to factory settings. Rather, during a telephonic meet-and-confer, and in response to questions clearly meant to ascertain whether Mr. Burzaco sought to destroy evidence, the government relayed its understanding that Mr. Burzaco did not "wipe" the BlackBerry, as in seek to destroy information on the device.

II.     The Defendants' Previous Motions for Rule 17 Subpoenas Related to Mr. Burzaco

The Defendants have filed numerous applications for Rule 17 subpoenas and letters rogatory seeking information related to Mr. Burzaco, among other materials. The Defendants have filed the applications seriatim, with the first filed more than 16 months after the unsealing of the third superseding indictment in this case. See ECF Dkt. No. 1599. Following is a brief summary of some of the relevant submissions.

On August 17, 2021, Lopez and Martinez moved for issuance of a subpoena compelling production of the BlackBerry, iPhone, and related "chips" in the possession of Mr. Burzaco's counsel and a letter rogatory to Torneos y Competencias ("Torneos") requiring the production of "[a]ll information from or relating to" Mr. Burzaco's BlackBerry device. See ECF Dkt. No. 1599-4. On August 20, 2021, the Court initially granted the motion but later that day stayed its order at the government's request to give the government an opportunity to file a response. See Aug. 20, 2021, Minute Orders. On August 27, 2021, the government filed a motion to quash, arguing that the requested process was improper under applicable law but offering to review the BlackBerry, iPhone, and chips for relevant materials. See ECF Dkt. No. 1614. On September 3, 2021, the Court issued an order granting in part and denying in part the government's motion to quash. See ECF Dkt. No. 1621. Specifically, the Court, among other things, directed

3

the government to make good on its offer to obtain Burzaco's devices, denied the Defendants' request for all information "from or relating to" Mr. Burzaco's BlackBerry device, and authorized a letter rogatory to Torneos for email communications, text messages, calendar entries, and WhatsApp communications from Mr. Burzaco's BlackBerry that were stored or maintained on certain Torneos servers, to be provided to the government for review for discoverable materials. Id. at 3.

On December 13, 2021, Lopez and Martinez sought subpoenas to email service providers Google and Yahoo for the entire contents, without date limitation, of four personal email accounts of Mr. Burzaco, asking that the Court make the subpoenas returnable to the government with the direction that the government review all the materials and thereafter promptly produce all materials discoverable pursuant to Rule 16, Brady and Giglio. See ECF Dkt. No. 1663 at 4. The government opposed the motion. On January 17, 2022, the Court issued an order denying the defendant's motion. Order at 3-4, ECF Dkt. No. 1693.

On January 7, 2022, Lopez and Martinez filed a motion requesting that the Court issue an order compelling the government to obtain from PwC – or, alternatively, that the Court issue a subpoena to PwC demanding production of – several categories of materials that PwC had purportedly collected from Torneos. ECF Dkt. No. 1680. On January 28, 2022, the government opposed the defendants' motion. ECF Dkt. No. 1708. On February 22, 2022, the Court denied the defendants' motion in its entirety, holding that the requested materials were not discoverable (1) under Federal Rule of Criminal Procedure ("Rule") 16(a)(1)(E)(i) because they were not within the government's possession, custody, or control and the defendants had not demonstrated that they did not already possess all of the requested records that are material to preparing their defense;

4

and (2) under Rule 17(c) because the request did not clear the relevancy, admissibility and specificity hurdles. ECF Dkt. No. 1723.

It has come to the government's attention that, in addition to the above-referenced filings, the Defendants have filed several ex parte applications with the Court, until recently without any notice to the government even of the bare fact of the filings. The government understands from counsel for Lopez that the Defendants have filed no fewer than five ex parte applications seeking letters rogatory and pre-trial subpoenas, several of which were granted by the Court.[1]

Finally, with respect to the pending motions, on March 18, 2022, Lopez and Martinez filed the PwC Motion seeking a subpoena to PwC to obtain data relating to Mr. Burzaco's BlackBerry device, see ECF Dkt. No. 1754, and on March 23, 2022, the defendants filed the DTV Motion seeking subpoenas to DirecTV, PwC, and/or Torneos to obtain documents showing that Mr. Burzaco concealed the bribery schemes from DirecTV and other partners and investors in Torneos, see ECF Dkt. No. 1755.[2]

---

[1] The government was given no opportunity to respond to these applications on the merits or even to consider or respond to the factual context proffered by the Defendants in support of their applications. The government respectfully requests that the Court carefully consider whether the entirety of these applications is appropriately left under seal and undisclosed to the government. The Defendants have already provided the government with – and stated in open Court – details regarding some of their core defense theories. Others are not difficult to imagine. In addition, the government notes that it has repeatedly requested reciprocal discovery from the Defendants, dating back to the government's first discovery letter, but to date has received none.

[2] The Defendants' proposed subpoena to DirecTV requests: "All documents, including communications, reports, analyses, due diligence materials, financial audits, and representations and warranties, from January 1, 2007 through May 27, 2015, relating to DirecTV's investment in [Torneos] evidencing efforts by Alejandro Burzaco, or others acting at his direction, to conceal the various bribery schemes charged in this matter from DirecTV and its personnel or nominees to the TyC board of directors." ECF Dkt. No. 1755-1. The Defendant's proposed subpoena to PwC and Torneos requests, in relevant part, "all documents from [Torneos] from January 1, 2007 through

5

ARGUMENT

Lopez and Martinez base the PwC Motion on the premise that if the requested BlackBerry Enterprise System ("BES") data reflects that Mr. Burzaco's BlackBerry was not reset remotely, it follows that Mr. Burzaco lied to the government. Therefore, the Defendants argue, they are entitled to seek the information for the purpose of impeaching Mr. Burzaco, and the BES data would be admissible at trial for that purpose. The argument is both moot and meritless. The DirecTV Motion seeks information that, to the extent it exists, may not be held by any domestic entity and could have been sought months, if not years, ago through a timely application for a letter rogatory. The request also fails to meet the requirements of Rule 17. Both applications should be denied.

I.  Applicable Law

Rule 17(c) "was not intended to provide a means of discovery for criminal cases." United States v. Nixon, 418 U.S. 683, 700 (1974); see also Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951) (same). Rather, because the rule's "purpose is trial-focused," a Rule 17(c) subpoena "may be used only to obtain materials admissible as evidence at trial." United States v. Louis, No. 04-CR-203 (LTS), 2005 WL 180885, at *3 (S.D.N.Y. Jan. 27, 2005). Accordingly, a defendant seeking documents pursuant to a Rule 17(c) subpoena bears the burden of satisfying the "strict standard" set forth by the Supreme Court in Nixon, namely of "specifically identifying the materials sought and showing that they are relevant and admissible." United States v. Brown, No. 95-CR-168 (AGS), 1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995). More

---

May 27, 2015, evidencing efforts by Alejandro Burzaco, or others acting at his direction, to conceal the various bribery schemes charged in this matter from actual or potential outside partners with or investors in TyC, including DirecTV." ECF Dkt. No. 1755-2, 1755-3.

6

succinctly, "the party seeking issuance of the subpoena 'must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity.'" United States v. Blakstad, No. 19 Cr. 486 (ER), 2020 WL 5992347, at *11 (S.D.N.Y. Oct. 9, 2020) (quoting Nixon, 418 U.S. at 700); see also United States v. RW Pro. Leasing Servs. Corp., 228 F.R.D. 158, 162 (E.D.N.Y. 2005) (citing Nixon, 418 U.S. at 699-700). A Rule 17(c) subpoena may not be used to conduct a "general 'fishing expedition.'" Nixon, 418 U.S. at 700. Thus, it is "insufficient" for a party to show only that the subpoenaed documents "are potentially relevant or may be admissible," RW Pro. Leasing Servs., 228 F.R.D. at 162.

Consistent with these principles, a Rule 17(c) subpoena cannot be used to obtain material that could be used only, if at all, to impeach a potential government witness. United States v. Nektalov, No. 03-CR-828 (PKL), 2004 WL 1574721, at *2 (S.D.N.Y July 14, 2004) ("[D]ocuments sought solely for impeachment purposes are not the proper subject of a Rule 17(c) subpoena."); United States v. Jasper, No. 00-CR-825 (PKL), 2003 WL 1107526, at *2 (S.D.N.Y. Mar. 13, 2003) (quashing defendant's subpoena for personnel files regarding a government witness where the documents were sought only for impeachment and would not have been admissible at trial); United States v. Iozia, 13 F.R.D. 335, 340 (S.D.N.Y. 1952) (Rule 17(c) cannot be used "to require in advance of trial, and in preparation for trial, a disclosure to the defendant of information which may tend to impeach persons the Government may or may not call as witnesses"). But see United States v. Cole, No. 19-CR-869 (ER), 2021 WL 912425, at *4 (S.D.N.Y. Mar. 10, 2021) (noting that Rule 17 subpoena returnable at, but not before, trial may seek impeachment material, assuming other Rule 17 conditions are met).

Rule 17(c)(2) permits this Court to quash or modify a Rule 17(c) subpoena on a motion promptly made. In addition to the subpoena's recipient, the government has standing in

its own right to move to quash a subpoena "based 'upon its interest in preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on [the witness'] credibility.'" United States v. Giampa, No. 92-CR-437 (PKL), 1992 WL 296440, at *1 (S.D.N.Y. Oct. 7, 1992) (quoting United States v. Raineri, 670 F.2d 702, 711 (7th Cir. 1982)); see also United States v. Vasquez, 258 F.R.D. 68, 71-72 (E.D.N.Y. 2009). Moreover, even if the government does not have standing, "the Court has an independent duty to review the propriety of the subpoena – a duty in this case that requires the Court to consider whether the documents sought are privileged and whether the subpoena itself comports with the requirements of Rule 17." Vasquez, 258 F.R.D. at 72; see also United States v. Coriaty, No. 99-CR-1251 (DAB), 2000 WL 1099920, at *6 n.4 (S.D.N.Y. Aug. 7, 2000) (considering government's motion to quash third-party subpoena, notwithstanding defendant's objections on ground that government had no standing, because "it is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose" (citation omitted)).

II.     The PwC Motion Should Be Denied As Moot and Because the Defendants Have Not Satisfied the Requirements of Rule 17

The PwC Motion is moot because neither PwC nor Torneos possesses the BES data logs sought by the Defendants.[3] Even if PwC or Torneos did possess the requested BES data, the Defendants would not be entitled to it because they have not satisfied the requirements of Rule 17. First, their request should be denied because it expressly and exclusively seeks impeachment material. See, e.g., Nektalov, 2004 WL 1574721, at *2 ("[D]ocuments sought solely for impeachment purposes are not the proper subject of a Rule 17(c) subpoena.") In addition, the

---

[3] Counsel for Torneos assisted in obtaining this information but noted that it is no longer under a Deferred Prosecution Agreement and does not intend to set a precedent of providing information to the Defendants in response to repeated requests for Rule 17 subpoenas, thereby permitting subpoena requests to function, in effect, as interrogatories.

8

evidence they seek is not relevant because, even assuming that the BES data were to reflect that Mr. Burzaco's handling of the BlackBerry caused the reset, Mr. Burzaco has not made statements to the contrary. Rather, Mr. Burzaco has stated, and is expected to testify at trial, that he does not know if the BlackBerry was reset, that he did not intend to reset it, and that it is feasible that his and his counsel's efforts to disable the antenna caused a reset of the BlackBerry. Accordingly, the Defendants' sole argument for relevance – that the BES data "would definitively answer the question of whether Burzaco lied to the government when he stated that he did not erase his phone" (Mot. at 1) – is baseless. See United States v. Libby, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) ("The first prong of [the Rule 17] test—relevance—requires the Court to assess whether the documents sought have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'").

Furthermore, even if the BES data were somehow marginally relevant, it would be inadmissible at trial under Federal Rule of Evidence ("Rule") 608(b) because it would not contradict Mr. Burzaco's testimony or establish that he had testified falsely. See, e.g., United States v. Watts, No. 10–CR–627 (KAM), 2013 WL 2020178 at *2-3 (E.D.N.Y. May 14, 2013) (denying defendant's motion to introduce extrinsic evidence to establish bias because the witness's expected testimony was not shown to be false and did not evince a bias). In addition, Rule 403 would bar the BES data as extrinsic evidence likely to lead to juror confusion and a distracting mini-trial on a collateral issue. See id. at *4 (holding that even assuming the extrinsic evidence could show the witness's testimony to be false, its "questionable probative value" was substantially outweighed by "the danger of undue delay, misleading and confusing the jury, and unfair prejudice" because the jury "would be forced to engage in a trial within this trial").

9

The defense will of course be free to ask Mr. Burzaco questions about the BlackBerry and to advance related arguments, to the extent appropriate, as to Mr. Burzaco's credibility. See ECF Dkt. No. 1673, at 3 (previewing potential defense and government arguments in this area).

In light of the foregoing the PwC Motion should be denied.

III.   The DTV Motion Should Be Denied Because Proceeding By Subpoena Is Improper, the Request Is Untimely and the Defendants Have Not Satisfied the Requirements of Rule 17

The DTV Motion seeks records that the Defendants could have sought through the letter rogatory process early on in the case and, in any event, as recently as seven months ago when they first moved the Court to issue a letter rogatory to Torneos. In addition, their request is barred by Rule 17 because the records they seek do not meet the rule's requirements of relevancy, admissibility and specificity. The requested records – principally documents that might reflect that Mr. Burzaco concealed the charged bribery schemes from DirecTV when it became a minority shareholder of Torneos – are not relevant as impeachment materials because Mr. Burzaco has consistently stated, and is expected to testify at trial, that he did not disclose the charged bribery schemes to the board of DirecTV. Furthermore, even if these requested records were somehow marginally relevant, they would be inadmissible at trial under Federal Rules of Evidence 608(b) and 403 as extrinsic evidence likely to lead to juror confusion and a distracting mini-trial on a collateral issue. Finally, the Defendants' request for these records is vague and overbroad.

A.   The Request Is Untimely and Improper

The Defendants first moved for a letter rogatory seeking a wide range of records from Torneos in August 2021, sixteen months after the third superseding indictment in this case was unsealed. Now, more than seven months later, and less than two months before the start of trial, the Defendants seek records related to DirecTV, previously a minority shareholder in

10

Torneos, that they could have sought at any point during the last two years. The requested subpoena would be unduly burdensome to a third party given the tight period of time before trial within which the subpoenaed entity would have to locate the requested materials, review them for responsiveness as well as for applicable privileges, and, in the meantime, consider whether to litigate the propriety of the subpoenas.

In addition, the Defendants improperly seek these materials pursuant to subpoenas to DirecTV, PwC, and/or Torneos rather than a letter rogatory to Torneos. The government notes that DirecTV's corporate form has evolved substantially since the unsealing of the original indictment in this case, and it is not clear that there is a domestic entity that could (or would) accept service for the former DirecTV Latin America business. Nor is it appropriate for the defendants to subpoena PwC or Torneos's U.S. counsel on the chance that, in the course of their privileged relationships with Torneos, these entities came to possess the impeachment material that the defendants seek. See Kiobel by Samkalden v. Cravath, Swaine & Moore LLP, 895 F.3d 238, 247 (2d Cir. 2018) (reversing district court's issuance of subpoena to U.S. law firm for foreign entity's documents in civil case, reasoning that "if foreign clients have reason to fear disclosing all pertinent documents to U.S. counsel, the likely results are bad legal advice to the client, and harm to our system of litigation"); Ratliff v. Davis Polk & Wardwell, 354 F.3d 165, 170 (2d Cir. 2003) (in broader civil discovery context, civil plaintiffs only entitled to subpoena documents of foreign client that counsel had previously shared with the SEC).[4] The Defendants should be seeking these records, if at all, pursuant to a letter rogatory to Torneos, as they have done previously. In any

---

[4] Unlike in Ratliff, the materials sought by the defendants in the DTV Motion have not been produced to the government. See 354 F.3d at 170. Nor is the government in possession of the DTV materials through other means. Thus, the defendant's request seeking those materials from the government, see ECF Dkt. No. 1751, is moot.

11

event, as set forth below, there is no basis to compel production of these records regardless of the means.

      B.      <u>The Request Fails Rule 17's Requirements</u>

The Defendants' DTV Motion should also be denied because it fails to meet Rule 17's requirements of relevancy, admissibility, and specificity.

      1.      <u>The Requested Records are Irrelevant</u>

The Defendants argue that the records they are requesting from DirecTV, PwC, and/or Torneos are relevant because they purportedly (1) will tend to show that Mr. Burzaco hid the bribery schemes from investors and partners and "employed similar means and methods in hiding the scheme from Fox, including from Hernan Lopez and Carlos Martinez," and (2) constitute impeachment material "given that Burzaco's concealment of the scheme and related misrepresentations will appropriately bear on his credibility." DTV Motion at 4. Both of these arguments are meritless.

As an initial matter, the requested records – which will purportedly show that Mr. Burzaco concealed the bribery schemes from DirecTV – are not relevant as impeachment material because Mr. Burzaco is not expected to testify to the contrary; rather, he will concede that he concealed the bribery schemes from the DirecTV Board of Directors. Indeed, Mr. Burzaco has always been open about concealing the bribery schemes from DirecTV. Accordingly, the DirecTV records are not in any way relevant to Mr. Burzaco's credibility, and they would be duplicative of and collateral to Mr. Burzaco's testimony regarding his deception of DirecTV.

Furthermore, the requested records are not relevant to showing that Mr. Burzaco purportedly "employed similar means and methods in hiding the scheme" from the Defendants. Putting aside the fact that, as the government will prove, Mr. Burzaco did not hide the scheme from the Defendants – to the contrary, the Defendants actively participated in the scheme and in

12

concealing it from others at Fox – the context in which Mr. Burzaco and Torneos concealed the scheme from DirecTV was far different from the context at issue here in several respects. For one thing, in 2008, DirecTV acquired a stake in Torneos – primarily from other shareholders, not from Mr. Burzaco – whose business included production services, valuable local soccer rights in Argentina, and various other assets that had far more significance to DirecTV than Torneos's 25% economic interest in T&T Sports Marketing Ltd. ("T&T"), the partnership at the center of the charged schemes. By contrast, in 2011, the Defendants and Fox acquired 100% ownership of Fox Pan American Sports (FPAS), which in turn owned the remaining 75% economic interest in T&T, whose core assets were the club tournament rights at issue in this case, procured at below-market rates through bribery. The primary mechanisms used by Mr. Burzaco and the Defendants to conceal the bribery at the core of their T&T partnership, including their reliance on a shell company in the Netherlands to "clean" T&T's books, had little bearing on the assets acquired by DirecTV in 2008. Of course, the primary "means" of hiding the scheme in both instances was just a failure to disclose, and diligence documents – to the extent they exist and to the extent Burzaco had any input into their contents – would do little to illuminate the point.

        2.        <u>The Requested Records are Inadmissible</u>

Even if there were some marginal relevance to the requested records, such records would not be admissible at trial under Rules 608 and 403.

First, the requested records are inadmissible under Rule 608. The Defendants argue that these records are admissible to impeach Mr. Burzaco to show he is untruthful and biased. DTV Motion at 8-9. Rule 608(b) provides in relevant part that, "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." As the Defendants note, Rule 608 permits the admission "of extrinsic evidence offered for other grounds of

impeachment (such as contradiction, prior inconsistent statement, bias and mental capacity)." Fed. R. Evid. 608 committee's note to 2003 amendment; see also United States v. Beverly, 5 F.3d 633, 639-40 (2d Cir. 1993) ("The government's questioning arose in the form of impeachment of specific falsehoods, not as an attack on his general character for truthfulness, Fed. R. Evid. 608(b). . . . Where a defendant testifies on direct about a specific fact, the prosecution is entitled to prove . . . that he lied as to that fact."); United States v. Ramirez, 609 F.3d 495, 499 (2d Cir. 2010) ("[W]hen a witness puts certain facts at issue in his testimony, the government may seek to rebut those facts, including by resorting to extrinsic evidence if necessary.").

However, Rule 608 does not provide a basis for admissibility here. Mr. Burzaco has consistently stated, and is expected to testify, that he concealed the bribery schemes from DirecTV. Thus, even if the requested records were to show that Mr. Burzaco concealed the schemes from DirecTV, they would not contradict his testimony or prove that he has a motive to testify falsely and therefore would be extrinsic evidence inadmissible under Rule 608. See Watts, 2013 WL 2020178 at *2-3 (denying defendant's motion to introduce extrinsic evidence to establish bias because the witness's expected testimony was not shown to be false and did not evince a bias); see also United States v. Shoreline Motors, 413 F. App'x 322, 329 (2d Cir. 2011) ("[C]ross-examination is generally the proper mechanism by which to test an adverse witness's credibility, and the use of extrinsic evidence to further pursue questions posed on cross-examination is generally not permitted."); United States v. Masino, 275 F.2d 129, 133 (2d Cir. 1960) ("When a witness is cross-examined for the purpose of destroying his credibility by proof of specific acts of misconduct not the subject of a conviction, the examiner must be content with the answer. The examiner may not, over objection, produce independent proof to show the falsity of such an answer.").

In addition, under Rule 403, the limited probative value of the requested records – whether those records are communications, reports, analyses, due diligence materials, financial audits, or representations and warranties – would be substantially outweighed by the risk of juror confusion, the needless presentation of cumulative evidence, and a collateral mini-trial regarding DirecTV's acquisition of minority stake in Torneos in 2008. This type of mini-trial on a wholly collateral issue would confuse the jury and cause undue delay. The requested records are therefore prohibited by Rule 403. See Watts, 2013 WL 2020178 at *4 (holding that even assuming the extrinsic evidence could show the witness's testimony to be false, its "questionable probative value" was substantially outweighed by "the danger of undue delay, misleading and confusing the jury, and unfair prejudice" because the jury "would be forced to engage in a trial within this trial").

### 3. The Defendants' Request Lacks Specificity

The Defendants' request also fails under Rule 17 because it includes vague, overbroad categories of documents that fall short of Nixon's specificity requirement. See ECF Dkt. No. 1755-1 (requesting all documents during an eight and a half year period "relating to DirecTV's investment in [Torneos] evidencing efforts by Alejandro Burzaco . . . to conceal the various bribery schemes charged in this matter . . . ."); ECF Dkt. No. 1755-2, 1755-3 (requesting all documents during an eight and a half period "evidencing efforts by Alejandro Burzaco . . . to conceal the various bribery schemes charged in this matter from actual or potential outside partners with or investors in TyC, including DirecTV"). Although the Defendants, in their proposed subpoena to DirecTV, reference "communications, reports, analyses, due diligence materials, financial audits, and representations and warranties," they have identified no specific document or other evidence that they seek through these subpoenas – no email exchange, no contract, no admissible evidence. Indeed, it is unclear whether any of the requested records they seek even

15

exist, and the Defendants have not proffered a sufficient basis to establish their existence. Such requests thus do not meet Rule 17's specificity requirement.

## CONCLUSION

For the foregoing reasons, the Defendants' motions should be denied.

Dated: Brooklyn, New York
April 1, 2022

                                      Respectfully submitted,

                                      BREON PEACE
                                      United States Attorney

By:   /s/
        Samuel P. Nitze
        Patrick T. Hein
        Kaitlin T. Farrell
        Victor A. Zapana
        Assistant United States Attorneys
        (718) 254-7000