SPN/PTH/KTF/VAZ
F.#2015R00747

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -

                                      Docket No. <u>15-CR-252 (S-3) (PKC)</u>

FULL PLAY GROUP S.A.,
HERNAN LOPEZ, and
CARLOS MARTINEZ,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - X

<u>THE GOVERNMENT'S REQUEST TO CHARGE</u>

                                BREON PEACE
                                UNITED STATES ATTORNEY
                                Eastern District of New York
                                271 Cadman Plaza East
                                Brooklyn, New York 11201

Samuel P. Nitze
Patrick T. Hein
Kaitlin T. Farrell
Victor Zapana
Assistant United States Attorneys
      (Of Counsel)

## PRELIMINARY STATEMENT

Pursuant to Rule 30(a) of the Federal Rules of Criminal Procedure, the government requests that the Court include the following instructions in its charge to the jury.  In addition, the government requests leave to offer additional instructions as they become necessary during the course of the trial.

I.      STANDARD INSTRUCTIONS

On October 11, 2017, the Court filed its standard instructions (the "Standard Instructions") in this case.[1]  With regard to the Standard Instructions, the government requests that the Court charge the jury in its usual manner, with the following exceptions.

**INTRODUCTORY INSTRUCTIONS**

The government respectfully requests that the Court include the following description of the conduct and charges:

> As you know, all three of the defendants—FULL PLAY GROUP S.A. ("FULL PLAY"), HERNAN LOPEZ, and CARLOS MARTINEZ—are charged with one count of wire fraud conspiracy, eleven counts of wire fraud, and one count of money laundering conspiracy in connection with allegations relating to the Copa Libertadores tournament.  In addition, Defendant FULL PLAY is charged with one count each of wire fraud conspiracy and money laundering conspiracy in connection with allegations relating to CONMEBOL World Cup qualifiers and friendlies, as well as one count of wire fraud conspiracy, six counts of wire fraud, and one count of money laundering conspiracy in connection with allegations relating to the Copa América tournament.[2]

**I.D.     TESTIMONY OF A DEFENDANT [If Applicable]**

The government requests that the Court charge the jury in its usual manner if any of the defendants testify.  If one or more of the defendants do not testify, the government requests that the Court instruct the jury as follows, as the Court did during the first trial:

"The Defendants' Right Not to Testify: The defendants did not testify in this case. Under our Constitution, they have no obligation to testify or to present any other evidence

---

[1] See ECF Dkt. No. 700.

[2] Adapted from First Tr. Inst. 1, ECF Dkt. No. 872; see also Third Superseding Ind., ECF Dkt. No. 1319.

because it is the government's burden to prove their guilt beyond a reasonable doubt.  You may

not attach any significance to the fact that the defendants did not testify.  Nor may you draw any

adverse inference against the defendants because they did not take the witness stand.  In your

deliberations in the jury room, you may not consider this decision against the defendants in any

way."[3]

### I.E.    CREDIBILITY OF LAW ENFORCEMENT OFFICERS

The government requests that the Court replace the subheading of its Standard

Instruction on Credibility of Law Enforcement Officers with the subheading "Testimony of Law

Enforcement Officers," as the Court did during the first trial.[4]

### I.G.    INTERVIEWS OF WITNESSES

The government requests that the Court replace its Standard Instruction on

Interviews of Witnesses with the following instruction, as the Court did during the first trial:

"WITNESS INTERVIEWS:  There was testimony at trial that the attorneys for

the government (and/or the defense) interviewed witnesses when preparing for and during the

course of the trial.  There is nothing inappropriate about such meetings.  Attorneys have an

obligation to prepare their case as thoroughly as possible and, in the discharge of that

responsibility, to interview witnesses.  However, you may consider the frequency and duration of

these preparation sessions, and the impact they may have had on the witness's testimony, in

evaluating the credibility of the witness."[5]

---

[3] See First Tr. Inst. 6; see also United States v. Ashburn, 11-CR-303 (NGG) (E.D.N.Y.), Jury Instructions, dated March 11, 2015 ("Ashburn Inst.") at 25, ECF Dkt. No. 425.

[4] See First Tr. Inst. 6.

[5] See First Tr. Inst. 8-9.

### I.H.    NO PARTICULAR PROOF REQUIRED

The government requests that the Court replace its Standard Instruction on No

Particular Proof Required with the following instruction, as the Court did during the first trial:

"NO PARTICULAR PROOF OF SPECIFIC INVESTIGATIVE TECHNIQUES

REQUIRED:  A party is not required to call a particular witness or offer any specific item or

types of evidence.  You may have heard argument about types of evidence that were not

introduced in this case.  While the defense is permitted to argue that there is a lack of certain

evidence, you should not speculate on whether such evidence exists or what such evidence might

have shown.  Relatedly, I instruct you that there is no legal requirement that the government use

any specific investigative techniques to prove its case.  Law enforcement techniques are not your

concern.  Your concern is to determine whether or not, based upon all of the evidence in this

case, the government has proven that the defendants are guilty beyond a reasonable doubt as to

each count charged against them."[6]

### I.I.    PRIOR INCONSISTENT STATEMENTS

The government requests that the Court replace its Standard Instruction on Prior

Inconsistent Statements with the following instruction, as the Court did during the first trial:

"You have heard evidence that a witness made a statement on an earlier occasion

that counsel argues is inconsistent with the witness's trial testimony.  Evidence of the prior

inconsistent statement was placed before you for the more limited purpose of helping you to

decide whether to believe the trial testimony of the witness who is claimed to have contradicted

himself.  If you find that the witness made an earlier statement that conflicts with his or her trial

---

[6] See First Tr. Inst. 7; see also Ashburn Inst. 15.

testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all of the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much weight, if any, to give to the inconsistency in determining whether to believe all or part of the witness's testimony."[7]

## II.    SUBSTANTIVE LAW

The government respectfully requests that the Court replaces its Standard Instruction on the description of the charges with the following instruction:

"I will now turn to the second part of this charge and instruct you as to the legal elements of the criminal counts the government has alleged.  The defendants are formally charged in a superseding indictment, which I will simply call the Indictment.  As I instructed you at the outset of this case, an indictment is a charge or accusation.   The Indictment in this case contains twenty-three separate counts, and you will be called upon to render a separate verdict on each of them.   Counts One to Thirteen of the Indictment charges all three defendants with wire fraud conspiracy, wire fraud, and money laundering conspiracy as to the Copa Libertadores

_____

[7] See First Tr. Inst. 10; see also Ashburn Inst. 25.

tournament.[8]  Counts Fourteen and Fifteen charge Defendant FULL PLAY with wire fraud

conspiracy and money laundering conspiracy, respectively, as to the CONMEBOL World Cup

qualifiers and friendlies.   Counts Sixteen to Twenty-Three charge Defendant FULL PLAY with

wire fraud conspiracy, wire fraud, and money laundering conspiracy as to the Copa América

---

[8]  The government has renumbered the counts in this submission on the assumption that the Court will use a trial indictment that excludes the irrelevant counts from the Third Superseding Indictment ("S-3").  The government has provided a draft trial indictment to the defense and will submit one to the Court shortly.  The count numbers herein compared to those in S-3 as follows:

| Jury Instruction Count | S-3 Count | Description |
| --- | --- | --- |
| One | Nine | Wire Fraud Conspiracy – Copa Libertadores Scheme #2 |
| Two | Ten | Wire Fraud – Copa Libertadores Scheme #2 |
| Three | Eleven | Wire Fraud – Copa Libertadores Scheme #2 |
| Four | Twelve | Wire Fraud – Copa Libertadores Scheme #2 |
| Five | Thirteen | Wire Fraud – Copa Libertadores Scheme #2 |
| Six | Fourteen | Wire Fraud – Copa Libertadores Scheme #2 |
| Seven | Fifteen | Wire Fraud – Copa Libertadores Scheme #2 |
| Eight | Sixteen | Wire Fraud – Copa Libertadores Scheme #2 |
| Nine | Seventeen | Wire Fraud – Copa Libertadores Scheme #2 |
| Ten | Eighteen | Wire Fraud – Copa Libertadores Scheme #2 |
| Eleven | Nineteen | Wire Fraud – Copa Libertadores Scheme #2 |
| Twelve | Twenty | Wire Fraud – Copa Libertadores Scheme #2 |
| Thirteen | Twenty-One | Money Laundering Conspiracy – Copa Libertadores Scheme #2 |
| Fourteen | Twenty-Seven | Wire Fraud Conspiracy – CONMEBOL World Cup Qualifiers / Friendlies Scheme |
| Fifteen | Twenty-Eight | Money Laundering Conspiracy – CONMEBOL World Cup Qualifiers / Friendlies Scheme |
| Sixteen | Twenty-Nine | Wire Fraud Conspiracy – Copa America Scheme |
| Seventeen | Thirty | Wire Fraud – Copa America Scheme |
| Eighteen | Thirty-One | Wire Fraud – Copa America Scheme |
| Nineteen | Thirty-Two | Wire Fraud – Copa America Scheme |
| Twenty | Thirty-Three | Wire Fraud – Copa America Scheme |
| Twenty-One | Thirty-Four | Wire Fraud – Copa America Scheme |
| Twenty-Two | Thirty-Five | Wire Fraud – Copa America Scheme |
| Twenty-Three | Thirty-Six | Money Laundering Conspiracy – Copa America Scheme |

tournament.   You should not speculate as to why some defendants are or are not charged in certain counts of the Indictment."[9]

II.    ADDITIONAL GENERAL INSTRUCTIONS

The government respectfully requests that the Court also include in its instructions to the jury the following general instructions, as the Court did during the first trial:

A.    TESTIMONY OF EXPERT WITNESSES:  In this case, I have permitted certain witnesses to express their opinions about matters that are at issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.  In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all of the evidence in this case.  You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.[10]

B.    TESTIMONY OF COOPERATING WITNESSES:  In the attorneys' opening and closing arguments, much was said about these so-called "cooperating witnesses" and about

---

[9] Adapted from First Tr. Inst. 16; see also Third Superseding Ind.

[10] See First Tr. Inst. 6-7; Ashburn Inst. 13-14.

7

whether or not you should believe them.  The government argues, as it is permitted to do, that it must take the witnesses as it finds them.  It argues that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others.  For those very reasons, the law allows the use of accomplice and co-conspirator testimony.

However, it is also the case that cooperator testimony is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony, if any, to believe.  I have given you some general considerations on credibility, and I will not repeat them all here.  Nor will I repeat all of the arguments made on both sides.  Instead, I will say a few things that you may want to consider during your deliberations on the subject of cooperating witnesses.  You should ask yourselves whether these witnesses would benefit more by lying or by telling the truth.  Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely?  Or did they believe that their interests would be best served by testifying truthfully?  If you believe that a witness was motivated by hopes of personal gain, was this motivation one that would cause him to lie, or was it one that would cause him to tell the truth?  Did this motivation color his testimony at all?

You have also heard testimony from certain witnesses who testified under an agreement with the government in which the witness agreed to testify and the government promised not to prosecute the witness in a federal court for certain criminal conduct.[11]  You have also heard testimony that certain other witnesses in this case have been promised that if they

---

[11] See First Tr. Inst. 7-8; see also United States v. Gigliotti, 15-CR-204 (S-2) (RJD) (E.D.N.Y.), Jury Instructions, dated July 21, 2017.

provide substantial assistance to the government and testify truthfully, completely, and fully, the government will present to the sentencing court what is called a 5K1.1 letter, or a "5K letter." The 5K letter sets forth the cooperating witness's criminal acts, as well as the substantial assistance the witness has provided. I instruct you that the 5K letter does not guarantee the cooperating witness a lower sentence. This is because the sentencing court may, but is not required to, take the 5K letter into account when imposing sentence on the cooperating witness. Thus, while the decision regarding whether to write the 5K letter rests with the government, the final determination as to the sentence to be imposed rests with the court. Ultimately, you should look at all of the evidence in deciding what credence and what weight you give to the cooperating witnesses.[12]

C.     [If Applicable] RECORDINGS AND ENGLISH-LANGUAGE TRANSCRIPTS:

The government has offered evidence in the form of recordings of conversations. These recordings were made with the consent and agreement of one of the parties to the conversations, but without the knowledge of some of those who were recorded. The use of this procedure to gather evidence is perfectly lawful, and the government is entitled to use the recordings in this case.[13] The government has also offered evidence in the form of English-language transcripts of foreign-language recordings. The transcripts are translations of the recordings. The transcripts are evidence for you to consider so that you can understand the recordings. You may consider these transcripts like any other evidence in this case.[14]

---

[12] See First Tr. Inst. 7-8; see also Ashburn Inst. 19-21; Sand, Modern Federal Jury Instructions, Inst. 7-14.

[13] See First Tr. Inst. 9; see also Sand, Modern Federal Jury Instructions, Inst. 5-10.

[14] See First Tr. Inst. 9-10; see also United States v. Bahadar, 954 F.2d 821, 830 (2d Cir. 1992).

D.     CHARTS AND SUMMARIES:  The parties have presented exhibits in the form of charts and summaries.  These charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence.  They are no better than the documents upon which they are based and are not themselves independent evidence. Therefore, you are to give no greater consideration to these schedules or summaries than you would give to the evidence upon which they are based.  It is for you to decide whether the charts, schedules, or summaries correctly present the information contained in the testimony and in the exhibits on which they were based.  You are entitled to consider the charts, schedules, and summaries if you find that they are of assistance to you in analyzing and understanding the evidence.[15]

E.     DEMONSTRATIVE EVIDENCE:  The parties have shown you demonstrative exhibits in the form of flowcharts, organizational charts, and diagrams.  Those demonstrative exhibits do not constitute evidence but are simply visual depictions that the parties have used in an effort to summarize the evidence in order to aid the jury.  It is for you, the jury, to decide whether a demonstrative exhibit in fact summarizes the evidence.[16]

F.     GUILTY PLEAS OF OTHER INDIVIDUALS: You have heard testimony from witnesses who pleaded guilty to charges arising out of the same facts as this case or related cases. You are instructed that you are to draw no conclusions or inferences of any kind about the guilt of the defendants on trial from the fact that other individuals pleaded guilty to similar charges.

---

[15] See First Tr. Inst. 10-11; see also Sand, Modern Federal Jury Instructions, Inst. 5-13.

[16] See First Tr. Inst. 11.

Their decisions to plead guilty were personal decisions about their own guilt. Those decisions may not be used by you in any way as evidence against the defendants on trial here.[17]

G.      OTHER PERSONS NOT ON TRIAL:  You have heard evidence about the involvement of certain other people in the conduct referred to in the Indictment, besides the three defendants and certain witnesses.  You may not draw any inference, favorable or unfavorable, toward the government or the defendants from the fact that certain persons are not on trial before you.  That these individuals are not on trial before you is not your concern.  You should neither speculate as to the reason these people are not on trial before you nor allow their absence as parties to influence in any way your deliberations in this case.  Nor should you draw any inference from the fact that any other person is not present at this trial.  Your concern is solely the defendants on trial before you.[18]

H.      INDIVIDUAL CONSIDERATIONS OF EACH DEFENDANT:  As I will instruct you momentarily, the Indictment contains a total of twenty-three counts or charges against the defendants.  Each count charges one or more of the defendants with a different crime. You must consider each count separately and return a separate verdict of guilty or not guilty for each count.  Whether you find a defendant guilty or not guilty as to one count should not affect your verdict as to any of the other charged counts.  Although the defendants have been charged together in one or more counts of the Indictment and are being tried together, you must evaluate the evidence against each defendant individually and determine whether each defendant is not guilty or guilty on a particular count individually.[19]

---

[17] See First Tr. Inst. 11; see also Ashburn Inst. 23.

[18] See First Tr. Inst. 13-14; see also Ashburn Inst. 22-23.

[19] Adapted from First Tr. Inst. 14; see also Ashburn Inst. 17; Sand, Modern Federal Jury

* * *

The government also respectfully requests that the Court also include in its instructions to the jury the following general instructions:

I.      CORPORATE PARTIES:  One of the defendants, FULL PLAY, is a business entity that is the equivalent of a corporation.  A corporation is a legal entity and is considered a person under law.  The fact that one of the defendants is a corporation does not mean it is entitled to any different consideration by you.  A corporate defendant is entitled to the same fair consideration as you would give any individual defendant or any other party.[20]

J.      CORPORATE RESPONSIBILITY:  A corporation may be found guilty of a criminal offense.  Of course, a corporation can only act through its agents; that is, its directors, officers, and employees or other persons authorized to act for it.  A corporation is legally responsible for those acts or omissions made or performed in the course of their employment.[21] No distinctions are made between officers and agents, or between persons holding positions involving varying degrees of responsibility.[22]  In order to prove the corporation guilty, the government need not show that any particular officer or director was involved in the charged

---

Instructions, Inst. 3-6.

[20] See United States v. Ionia Mgmt. S.A., No. 3:07-CR-134 (CBA) (D. Conn.), Jury Instructions, dated Sept. 6, 2007 ("Ionia Inst.") at 10, ECF Dkt. No. 164, aff'd, 555 F.3d 303 (2d Cir. 2009); Sand, Modern Federal Jury Instructions, Inst. 2-6; see also Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 87 (2d Cir. 2005) (noting that societe anonyme is "analogous to a corporation"); Pittway Corp. v. United States, 88 F.3d 501, 502 (7th Cir. 1996) (same).

[21] See Sand, Modern Federal Jury Instructions, Inst. 2-6.

[22] See United States v. George F. Fish, Inc., 154 F.2d 798, 801 (2d Cir. 1946), cited in United States v. Ionia Mgmt. S.A., 555 F.3d 303 (2d Cir. 2009); see also United States v. Steiner Plastics Mfg. Co., 231 F.2d 149, 153 (2d Cir. 1956).

crime, if the government shows the involvement of one or more officers, agents, employees, or authorized persons of the corporation having a sufficient degree of responsibility that their conduct may fairly be assumed to represent the corporation.[23]

Before you may find defendant FULL PLAY guilty, you must find that the government has proven beyond a reasonable doubt that all of the elements of the offense as I will explain them to you have been met with respect to the corporation in the form of acts or omissions of its agents that were performed within the scope of their employment.

Action within the scope of one's employment may be shown in several ways. First, if the act or omission was specifically authorized by the corporation, it would be within the scope of the agent's employment.

Second, even if an act or omission was not specifically authorized, it may still be within the scope of an agent's employment if both of the following have been proven: that the agent intended that his act would produce some benefit to the corporation; and that the agent was acting within his or her authority.  An act is within an agent's authority if it was directly related to the performance of the kinds of duties that the agent had the general authority to perform.[24]  It is not necessary that the government prove that the corporation was actually benefited, only that the agent intended it would be.[25]

---

[23] See Steiner Plastics, 231 F.2d at 153; United States v. Koppers Co., 652 F. 2d 290, 298 (2d Cir. 1981).

[24] See Sand, Modern Federal Jury Instructions, Inst. 2-6.

[25] See Ionia Inst. 19.

If you find that the agent was acting within the scope of his or her employment, the fact that the agent's act was illegal, contrary to his or her employer's instructions, or against the corporation's policies will not relieve the corporation of responsibility for the act. However, you may consider the fact that the agent disobeyed instructions or violated company policy in determining whether the agent intended to benefit the corporation, or was acting within his or her authority.[26]

In determining whether an agent was acting for the benefit of the corporation, you are instructed that the government need not prove that the agent was only concerned with benefitting the corporation.  It is sufficient if one of the agent's purposes was to benefit the corporation.[27]

Finally, if you find that the agent was not acting within the scope of his or her authority at the time, you should then consider whether the corporation later approved the act. An act is approved after it is performed when another agent of the corporation having full knowledge of the act, and acting within the scope of his or her employment as I just explained it to you, approves the act by his or her words or conduct.  A corporation is responsible for any act or omission approved by its agents in this manner.[28]

---

[26] See Sand, Modern Federal Jury Instructions, Inst. 2-6.

[27] See Ionia Inst. 20.

[28] See Sand, Modern Federal Jury Instructions, Inst. 2-6.

III.     SUBSTANTIVE LAW

The government respectfully requests that the Court include the following

instructions as to the specific charges in the case:

REQUEST NO. 1

VENUE

Venue refers to the location of the charged crimes.  The Indictment alleges that

the crimes charged occurred in part in this judicial district, the Eastern District of New York.

This district encompasses the boroughs of Brooklyn, Queens, and Staten Island, as well as

Nassau and Suffolk Counties on Long Island; the waters surrounding those boroughs and

counties, as well as the waters within the Bronx and Manhattan, which include the waters

surrounding the island of Manhattan that separate Manhattan from the outer boroughs of New

York City and from the State of New Jersey; and the air space above the district or the waters in

the district.[29]

To establish that venue for a charged crime is appropriate in this district, the

government must prove that some act in furtherance of the crime occurred here.  This means that

with respect to the crime charged, even if other acts were committed outside this district or if the

crime was completed elsewhere, venue is established in the Eastern District of New York so long

as some act in furtherance of the crime took place in this district.  Indeed, a defendant need not

_____

[29] Adapted from First Tr. Inst. 17; United States v. Ng Chong Hwa, No. 18-CR-538 (MKB) (E.D.N.Y.), Jury Instructions, dated Apr. 8, 2022 ("Ng Inst.") at 20, ECF Dkt. No. 199; see also 28 U.S.C. § 112(b), (c); United States v. Rutigliano, 790 F.3d 389, 397 (2d Cir. 2015) (venue proper in Southern District of New York over continuing fraud offenses where fraudulent benefits were wired "through or over waters" within the joint jurisdiction of Southern and Eastern Districts of New York).

personally have been present in the district for venue to be proper.[30]  Venue turns on whether any

part of the crime or any act in furtherance of the offense was committed in the district.[31]  Venue

is proper in a district where the defendant intentionally or knowingly causes an act in furtherance

of the charged offense to occur or where it is foreseeable that such an act would occur in the

district.[32]

        In determining whether some act in furtherance of the crime you are considering

occurred in the Eastern District of New York, you may consider a number of things.  Venue can

be conferred based on physical presence or conduct, and passing through a district, including

through or over waters, is sufficient to confer venue.  Venue can also be based on electronic

impulses, including email communications and electronic transfers of funds such as banking

transfers, passing through a district.  Venue lies in any district where electronic communications

are sent or received and any district through which electronic communications are routed.  The

government need not prove all of these bases of venue; any one is sufficient.[33]

---

[30] See First Tr. Inst. 17; Ng Inst. 20-21; see also Hyde v. United States, 225 U.S. 347, 363-64
(1912).

[31] See First Tr. Inst. 17; Ng Inst. 21; see also United States v. Panebianco, 543 F.2d 447, 455 (2d
Cir. 1976) ("Venue turns on whether any part of the crime was committed in the district.").

[32] See Ng Inst. 21; see also United States v. Svoboda, 347 F.3d 471, 483 (2d Cir. 2003); United
States v. Teman, 465 F. Supp. 3d 277, 314 (S.D.N.Y. 2020) ("[O]ne causes a wire transmission
when he 'act[s] with knowledge that the use of the wires would follow in the ordinary course of
business, or if such use could reasonably have been foreseen.'")  (second alteration in original)
(citation omitted)); United States v. Kenner, No. 13-CR-607 (JFB), 2019 WL 6498699, at *9
(E.D.N.Y. Dec. 3, 2019) (Bianco, J.).

[33] See Ng Inst. 21; United States v. Ng Chong Hwa, No. 18-CR-538 (MKB) (E.D.N.Y.),
Memorandum and Order, dated Sept. 3, 2021 ("Ng M&O") at 44-49 (collecting cases), ECF Dkt.
83; see also United States v. Lange, 834 F.3d 58, 70 (2d Cir. 2016) ("Venue is proper not only in
the district where telephonic or electronic materially fraudulent communications were initiated,
but also in the district where such communications were received."); United States v. Rutigliano,
790 F.3d 389, 397-98 (2d Cir. 2015) (permitting venue based on insurance payments that were

Furthermore, several of the counts in the Indictment charge conspiracy.  In a conspiracy, actions of co-conspirators, as well as actions caused by co-conspirators, may be sufficient to confer venue if it was reasonably foreseeable to the defendant that the acts would occur in the Eastern District of New York.[34]

While the government's burden as to everything else in the case is proof beyond a reasonable doubt, a standard that I have already explained to you, venue need only be proved by the lesser standard of "preponderance of the evidence."[35]  To prove something by a preponderance of the evidence means simply to prove that the fact is more likely true than not

---

made by wire and "traveled through the waters over which the Southern and Eastern Districts share jurisdiction," and noting that "venue lies where a wire in furtherance of a scheme begins its course, continues or ends[,] . . . [and that] 'a scheme to defraud is not complete until the proceeds have been received'"  (citation omitted)); United States v. Royer, 549 F.3d 886, 895 (2d Cir. 2008) ("Receipt of electronic transmissions in a district is sufficient to establish venue activity there."); United States v. Brown, 293 F. App'x 826, 829 (2d Cir. 2008) (affirming venue based on wire transfer of proceeds that was "routed through [the Southern District], without any processing of the transaction within the district"); United States v. Kim, 246 F.3d 186, 192-93 (2d Cir. 2001) (noting that defendant "caused communications to be transmitted into and out of the Southern District when he approved fraudulent invoices knowing that the [foreign victim entity] paid its vendors from New York banks"); United States v. Goldberg, 830 F.2d 459, 465 (3d Cir. 1987) ("[I]t is clear from the record . . . that the wire transfer of funds from New York to Wilmington . . . passed through the Federal Reserve Bank in Philadelphia."); United States v. Gilboe, 684 F.2d 235, 239 (2d Cir. 1982) ("[T]here were numerous telexes and telephone calls between New York and Hong Kong and other parts of the world.  Also, the proceeds of the fraud were all transferred through New York so that 'such commerce' moved 'from, through, or into' the Southern District of New York."  (quoting 18 U.S.C. § 3237(a))); Teman, 465 F. Supp. 3d at 319 (affirming venue based on "reasonably foreseeable" wire communications that were sent to Manhattan based on defendant's transaction in Florida and that occurred before defendant received fraudulent proceeds); Kenner, 2019 WL 6498699, at *9 (affirming venue based on ancillary wire transfer to Eastern District that "continued and completed the scheme," even though the indictment alleged a different transfer to and from Arizona bank accounts).

[34] Adapted from Ng Inst. 21.

[35] See First Tr. Inst. 17; Ng Inst. 21; see also United States v. Davis, 689 F.3d 179, 185 (2d Cir. 2012).

true.[36]  A preponderance of the evidence means the greater weight of the evidence, both direct

and circumstantial.[37]  I emphasize that this lesser standard applies only where I specifically

mention it in this charge.[38]  If you find that the government has failed to prove by a

preponderance of the evidence that any act in furtherance of the count you are considering

occurred within this district, you must find the defendants charged in that count not guilty.

---

[36] See First Tr. Inst. 17; see also Ashburn Inst. 6-7.

[37] See Ng Inst. 21-22.

[38] See First Tr. Inst. 17; see also Ashburn Inst. 6-7.

REQUEST NO. 2

<u>DATES APPROXIMATE</u>

The Indictment charges "in or about" and "on or about" and "between" certain dates.  The proof need not establish with certainty the exact date of an alleged offense.  It is sufficient if the evidence establishes beyond a reasonable doubt that an offense was committed on a date reasonably near the dates alleged.[39]

---

[39] <u>See</u> First Tr. Inst. 17-18; <u>see also</u> <u>Ashburn</u> Inst. 7; Sand, <u>Modern Federal Jury Instructions</u>, Inst. 3-12.

REQUEST NO. 3

<u>KNOWLEDGE AND INTENT</u>

Because the Indictment charges twenty-three separate counts, and because all of these charges require you to consider the concepts of knowledge and intent, and specific words that describe different types of knowledge and intent, I will tell you now about those concepts before I address each of the twenty-three charges specifically.

a.      Knowingly: Certain allegations in the Indictment require that in order to sustain its burden of proof, the government must prove that a defendant acted "knowingly."  A defendant acts knowingly if he or she acts purposefully and voluntarily, and not because of ignorance, mistake, accident, or carelessness.  Whether a defendant acted knowingly may be proven by his or her conduct and by all of the facts and circumstances surrounding the case.[40]

b.      Intentionally: Certain allegations in the Indictment require that in order to sustain its burden of proof, the government must prove that a defendant acted "intentionally." Before you can find that a defendant acted intentionally, you must be satisfied beyond a reasonable doubt that the defendant acted deliberately and purposefully.  That is, a defendant's acts must have been the product of his conscious, objective decision, rather than the product of mistake or accident.[41]  A defendant need not have been aware of the specific law that his conduct may have violated.

These issues of knowledge and intent require you to make a determination about the defendants' state of mind, something that rarely can be proved directly.  A wise and careful

---

[40] <u>See</u> First Tr. Inst. 18; <u>see also</u> Sand, <u>Modern Federal Jury Instructions</u>, Inst. 3A-1; <u>Ashburn</u> Inst. 26-27.

[41] <u>See</u> First Tr. Inst. 18; <u>see also</u> Sand, <u>Modern Federal Jury Instructions</u>, Inst. 3A-4.

consideration of all the circumstances of the case may, however, permit you to make such a determination as to the defendants' state of mind.  Indeed, in your everyday affairs, you are frequently called upon to determine a person's state of mind from his or her words and actions in a particular circumstance.  You are asked to do the same here.[42]

---

[42] See First Tr. Inst. 18-19; see also Ashburn Inst. 26-27.

REQUEST NO. 4

<u>CONSPIRACY</u>

The charges in the Indictment allege that the defendants participated in various criminal conspiracies.  Therefore, first, I will instruct you on the elements of conspiracy.  Later, I will give you instructions on the various laws that the Indictment charges that the defendants conspired to violate.

<u>Conspiracy Generally</u>

A conspiracy is an agreement by two or more persons to accomplish some unlawful purpose.[43]  You will recall that the term "person" also refers to corporations.[44]

A conspiracy is sometimes referred to as a criminal partnership.  The crime of conspiracy is an offense separate from the crime the alleged conspirators intended to commit.  A conspiracy is in and of itself a crime.  If a conspiracy exists, even if it fails to achieve its purpose, it is still punishable as a crime.

The United States Congress has deemed it appropriate to make conspiracy a separate crime.  That is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct and increases the likelihood of success of a particular criminal venture.

In several of the counts charged against the defendants in the Indictment, the government has charged one or more of the defendants with conspiracies.  The following are the elements of the crime of conspiracy:

---

[43] <u>See</u> First Tr. Inst. 19; <u>see also</u> <u>Ashburn</u> Inst. 27-32.

[44] <u>See</u> <u>Ionia</u> Inst. 164.

<u>First</u>:        two or more persons entered into the particular unlawful agreement charged in the conspiracy count that you are considering; and

<u>Second</u>:     the defendant knowingly and intentionally became a member of the conspiracy.

The first element requires that the government prove that at least two conspirators had a meeting of the minds, and that they agreed to work together to accomplish the object of the charged conspiracy.

To establish a conspiracy, the government is not required to prove that the conspirators sat around a table and entered into a solemn contract, orally or in writing, stating that they have formed a conspiracy to violate the law, setting forth details of the plans, the means by which the unlawful project is to be carried out, or the part to be played by each conspirator. Common sense would suggest that when people do, in fact, undertake to enter into a conspiracy, much is left to an unexpressed understanding. A conspiracy, by its very nature, is almost invariably secret in both origin and execution. Therefore, it is sufficient for the government to show that the conspirators came to a mutual understanding, even if tacitly, to accomplish an unlawful act by means of a joint plan or common design.

Because conspiracy is usually characterized by secrecy, you may infer its existence from the circumstances and the conduct of the parties and others involved. You may consider the actions and statements of all of these persons as proof that a common design existed to act together for the accomplishment of an unlawful purpose. In short, you may consider all the evidence before you, and the reasonable inferences that may be drawn from all this evidence.

The second element requires that the government prove that the defendant you are considering was a member of that conspiracy. That is, you must determine whether he knowingly and intentionally became a participant in the conspiracy. I have already instructed

23

you as to the terms "knowingly" and "intentionally."  In deciding whether the defendant was a participant in or member of a conspiracy, you must consider whether, based upon all of the evidence, the defendant knowingly and intentionally joined that conspiracy: that is, that he or she participated in it with knowledge of its purpose and with the specific intention of furthering one or more of its objectives.  Proof of a financial interest in the outcome of a scheme is not essential, although if you find that a defendant did have a financial interest in the outcome of a scheme, you may consider that as evidence of a defendant's motive to join the conspiracy.

A defendant's knowledge is a matter of inference from the facts proved.  To become a member of the conspiracy, a defendant need not have known the identities of every member, nor need he have been apprised of all of their activities.  A defendant need not have been fully informed of all the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part.

A defendant need not have joined in all of a conspiracy's unlawful objectives.  A conspirator's guilt is not measured by the extent or duration of his participation.  In other words, the law does not require a defendant to play an equal role in the conspiracy as another defendant or conspirator.  Some conspirators may play major roles, while others may play minor ones. Each member may perform separate and distinct acts and may perform them at different times. Even a single act may be sufficient to draw a defendant within the circle of a conspiracy.  A person who intentionally joins an existing conspiracy is charged with the same responsibility as if he or she had been one of the originators or instigators of the conspiracy.

Thus, if you find that the conspiracy existed, and if you further find that a defendant participated in it knowingly and intentionally, the extent or degree of his participation is not material.  The government also need not prove that the defendant actually committed the

24

unlawful act or acts charged as the objective of the conspiracy.  Instead, the government must prove beyond a reasonable doubt only that the purpose of the conspiracy was to commit an act or acts that are unlawful.[45]

I want to caution you, however, that a defendant's mere presence at the scene of criminal activities, or at locations frequented by criminals, does not, by itself, make him a member of the conspiracy.  Similarly, mere association with one or more members of the conspiracy does not automatically make a defendant a member.   A person may know or be friendly with a criminal without being a criminal himself.   Indeed, a person may be a criminal without being a member of the charged conspiracy.   Mere similarity of conduct or the fact that individuals may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.

I further caution you that mere knowledge or acquiescence without participation in the unlawful plan is not sufficient.   The fact that the acts of a defendant merely happen to further the purposes or objectives of the conspiracy, without his knowledge, does not make that defendant a member.  More is required under the law.   What is necessary is that a defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends. Thus, while someone who is present during a conspiracy is not necessarily a member, I further instruct you that you may find that a defendant knowingly and willfully became and was a

---

[45] See First Tr. Inst. 19-22; see also Ashburn Inst. 27-32.

member of a conspiracy if you find that his presence was purposeful—that is, a defendant's presence on one or more occasions was intended to serve the purposes of the conspiracy. [46]

---

[46] <u>See</u> First Tr. Inst. 22.

Co-Conspirator Statements and Criminal Liability

All of the charges against the defendants allege that they participated in conspiracies. In that regard, I admitted into evidence against each defendant the acts and statements of others because these acts and statements were committed by persons who, the government charges, were also confederates or co-conspirators of the defendants on trial.

The reason for allowing this evidence to be received against each defendant has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements, and omissions of any member of the conspiracy, and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements, and omissions.

Thus, if you find beyond a reasonable doubt that a defendant was a member of a conspiracy charged in the Indictment, then any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy at the time those acts were committed or statements were made may be considered against that defendant so long as the acts or statements were reasonably foreseeable to the defendant. This is so even if such acts were done and statements were made in a defendant's absence and without his knowledge.

However, before you may consider the statements or acts of a co-conspirator in deciding the issue of a defendant's guilt, you must first determine that the acts and statements

27

were made during the existence of, and in furtherance of, the unlawful scheme.  If the acts were

done or the statements made by someone whom you do not find to have been a member of the

conspiracy, or if they were not done or said in furtherance of the conspiracy, they may not be

considered by you as evidence against a defendant.[47]

[If Applicable] Relatedly, let me clarify one point about how you may consider

statements made by a conspirator who agrees at some point to cooperate with the government.

A statement made by a co-conspirator during and in furtherance of the conspiracy <u>before</u> he

begins to cooperate with the government's investigation may be considered for its truth as a co-

conspirator statement.   However, a statement made by a co-conspirator who was cooperating with

the government's investigation at the time he made the statement may only be considered as

context for other co-conspirator statements, and not for the truth of that particular statement,

unless the statement was adopted by a conspirator who was not cooperating with the investigation

at that time.   This is because when a conspirator agrees to cooperate with the government's

investigation, he is deemed to no longer be part of the conspiracy.   This applies to statements

contained in the audio recordings you heard that were made by alleged conspirators who were

cooperating with the government at the time they made the recordings and statements on the

recordings.[48]

---

[47] See First Tr. Inst. 23-24; see also Ashburn Inst. 33-34.

[48] See First Tr. Inst. 25.

REQUEST NO. 5

COUNTS TWO THROUGH TWELVE AND SEVENTEEN
THROUGH TWENTY-TWO: WIRE FRAUD
(Title 18, United States Code, Section 1343)

I will first explain the wire fraud charges.  In Counts Two through Twelve of the

Indictment, the defendants FULL PLAY, HERNAN LOPEZ, and CARLOS MARTINEZ are

charged with wire fraud related to the Copa Libertadores.  In Counts Seventeen through Twenty-

Two of the Indictment, the defendant FULL PLAY is charged with additional wire fraud counts

related to the Copa América.  I will read each of the counts to you now.

Counts Two through Twelve relate to the Copa Libertadores and provide as

follows:

> On or about the dates set forth below, within the Eastern
> District of New York and elsewhere, the defendants FULL
> PLAY, HERNAN LOPEZ and CARLOS MARTINEZ,
> together with others, did knowingly and intentionally devise
> a scheme and artifice to defraud FIFA and CONMEBOL and
> their constituent organizations, including to deprive FIFA
> and CONMEBOL and their constituent organizations of
> their respective rights to honest and faithful services through
> bribes and kickbacks, and to obtain money and property by
> means of materially false and fraudulent pretenses,
> representations and promises.
>
> For the purpose of executing such scheme and artifice, the
> defendants FULL PLAY, HERNAN LOPEZ and CARLOS
> MARTINEZ did transmit and cause to be transmitted, by
> means of wire communication in interstate and foreign
> commerce, writings, signs, signals, pictures and sounds as
> described below:

29

| Count | Approx. Date | Wire Communication |
|-------|--------------|---------------------|
| TWO | March 20, 2015 | Wire transfer of approximately $20,100,000 from Fox Latin American Channel, Inc.'s account at Bank of America from and through New York, New York, for credit to an account in the name of T&T Sports Marketing, Ltd. at Interaudi Bank in Miami, Florida. |
| THREE | March 25, 2015 | Wire transfer of approximately $10,000,000 from an account in the name of T&T Sports Marketing, Ltd. at Interaudi Bank in Miami, Florida, to a Citibank correspondent account in New York, New York, for credit to a CONMEBOL account at Banco Itaú in Paraguay. |
| FOUR | April 15, 2015 | Wire transfer of approximately $550,000 from an account in the name of Bayan Group S.A. at Bank Hapoalim in Switzerland to a correspondent account at Citibank in New York, New York, for credit to an account in the name of Lisburn Strategies Inc. at Amicorp Bank and Trust Ltd. in Barbados. |
| FIVE | April 20, 2015 | Wire transfer of approximately $5,750,000 from Fox Latin American Channel, Inc.'s account at Bank of America from and through New York, New York, for credit to an account in the name of T&T Sports Marketing, Ltd. at Interaudi Bank in Miami, Florida. |
| SIX | April 20, 2015 | Wire transfer of approximately $2,000,000 from an account in the name of T&T Sports Marketing, Ltd. at Interaudi Bank in Miami, Florida, to a Citibank correspondent account in New York, New York, for credit to a CONMEBOL account at Banco Itaú in Paraguay. |
| SEVEN | May 8, 2015 | Wire transfer of approximately $1,000,000 from an account in the name of T&T Sports Marketing, Ltd. at Interaudi Bank in Miami, Florida, to a Citibank correspondent account in New York, New York, for credit to a CONMEBOL account at Banco Itaú in Paraguay. |

| EIGHT | May 18, 2015 | Wire transfer of approximately $2,500,000 from an account in the name of T&T Sports Marketing, Ltd. at Interaudi Bank in Miami, Florida, to a Citibank correspondent account in New York, New York, for credit to a CONMEBOL account at Banco Itaú in Paraguay. |
| NINE | May 21, 2015 | Wire transfer of approximately $6,210,000 from Fox Latin American Channel, Inc.'s account at Bank of America from and through New York, New York, for credit to an account in the name of T&T Sports Marketing, Ltd. at Interaudi Bank in Miami, Florida. |
| TEN | May 22, 2015 | Wire transfer of approximately $1,925,000 from an account in the name of Torneos & Traffic Sports Marketing B.V. at ING Bank in the Netherlands to a Wells Fargo correspondent account in New York, New York, for credit to an account in the name of Valente Corporation at Chase Bank in New York, New York. |
| ELEVEN | May 22, 2015 | Wire transfer of approximately $332,000 from an account in the name of Torneos & Traffic Sports Marketing B.V. at ING Bank in the Netherlands to a Wells Fargo correspondent account in New York, New York, for credit to an account in the name of Valente Corporation at Chase Bank in New York, New York. |
| TWELVE | May 26, 2015 | Wire transfer of approximately $400,000 from Fox Latin American Channel, Inc.'s account at Bank of America from and through New York, New York, for credit to an account in the name of T&T Sports Marketing, Ltd. at Interaudi Bank in Miami, Florida. |

Counts Seventeen through Twenty-Two relate to the Copa América and provide as follows:

On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant FULL PLAY, together with others, did knowingly and intentionally devise a scheme and artifice to defraud FIFA, CONCACAF and CONMEBOL and their constituent organizations of

31

their respective rights to honest and faithful services through bribes and kickbacks, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

For the purpose of executing such scheme and artifice, the defendant FULL PLAY, together with others, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds as described below:

| Count | Approx. Date | Wire Communication |
|---|---|---|
| SEVENTEEN | April 27, 2015 | Wire transfer of approximately $377,478 from an account in the name of Datisa S.A. at Bank Hapoalim in Switzerland to a correspondent account at Citibank in New York, New York, for credit to an account in the name of Traffic Sports International, Inc. at Itau Unibanco S.A. in the Bahamas. |
| EIGHTEEN | May 8, 2015 | Wire transfer of approximately $7,200,000 from an account in the name of Sports Marketing Company A, an entity the identity of which is known to the Grand Jury, at Barclays Bank in London, England to a correspondent account at Citibank in New York, New York, for credit to an account in the name of Datisa S.A. at Bank Hapoalim in Switzerland. |
| NINETEEN | May 12, 2015 | Wire transfer of approximately $20,000,000 from an account in the name of Datisa S.A. at Bank Hapoalim in Switzerland to a correspondent account at Citibank in New York, New York, for credit to a CONMEBOL account at Banco Itau in Paraguay. |
| TWENTY | May 15, 2015 | Wire transfer of approximately $1,000,000 from an account in the name of Major Satellite Broadcasting Company A, an entity the identity of which is known to the Grand Jury, at Bank of America in New York, New York to a correspondent account at Citibank in New York, New York, for credit to an account in the name of Datisa S.A. at Bank Hapoalim in Switzerland. |

| | | |
|---|---|---|
| TWENTY-ONE | May 20, 2015 | Wire transfer of approximately $1,100,000 from an account in the name of Major Satellite Broadcasting Company A at Bank of America in New York, New York to a correspondent account at Citibank in New York, New York, for credit to an account in the name of Datisa S.A. at Bank Hapoalim in Switzerland. |
| TWENTY-TWO | May 26, 2015 | Wire transfer of approximately $2,000,000 from an account in the name of Brazilian Broadcasting Company A, an entity the identity of which is known to the Grand Jury, at HSBC Bank in or from New York, New York to a correspondent account at Citibank in New York, New York, for credit to an account in the name of Datisa S.A. at Bank Hapoalim in Switzerland. |

Title 18, United States Code, Section 1343 provides that:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signals, pictures or sounds for the purpose of executing such scheme or artifice shall be [guilty of a crime].

The term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services. Honest services fraud is limited only to schemes involving bribes or kickbacks. These laws were passed by Congress to protect against the various fraudulent schemes that could be devised by individuals through the use of interstate wires.[49]

---

[49] Adapted from First Tr. Inst. 38-39; see also United States v. Boyland, No. 11-CR-850 (SLT) (E.D.N.Y.), Jury Instructions, dated Mar. 4, 2014 ("Boyland Inst."), ECF Dkt. No. 159-1, aff'd, 862 F.3d 279 (2d Cir. 2017).

33

To establish this offense, the government must prove beyond a reasonable doubt the following elements:

First: That the defendant knowingly devised or participated in a scheme or artifice to deprive FIFA, CONCACAF, CONMEBOL, or their constituent organizations of their right to the honest services of their officials by false and fraudulent pretenses, representations, or omissions;

Second: That the defendant did so knowingly and with intent to defraud;

Third: That the misrepresentation or omission was material; and

Fourth: The use of the wires in furtherance of the scheme.[50]

I will now explain further about each element of wire fraud.

First Element: Scheme or Artifice to Defraud

The first element that the government must prove beyond a reasonable doubt is that the defendant knowingly devised or participated in a scheme or artifice to defraud FIFA, CONCACAF, CONMEBOL, or their constituent organizations, as specified in the relevant charge, of their intangible right of honest services by means of false or fraudulent pretenses, representations, or promises.

A "scheme" is any plan or course of action formed with the intent to accomplish some purpose.[51]  "Fraud" is a general term that embraces all the various means that human ingenuity can devise and that are resorted to by an individual to gain an advantage over another by false pretenses, suggestions, or suppression of the truth.[52]  Such a scheme includes one to

---

[50] Adapted from First Tr. Inst. 39; see also Boyland Inst.; United States v. Harper, No. 13-CR-601 (RJD) (E.D.N.Y.), Jury Instructions, dated July 16, 2015 ("Harper Inst.").

[51] Adapted from First Tr. Inst. 39; see also Boyland Inst.

[52] See First Tr. Inst. 39; see also Sand, Modern Federal Jury Instructions, Inst. 44-4.

defraud the soccer organization by an officer, employee,[53] or person in a relationship that gives rise to a fiduciary duty, that is, where the person owes a duty of honest and faithful service to the soccer organization;[54] in other words, where there is a trusting relationship in which the person acts for the benefit of the soccer organization and the organization relied on the individual to carry out his or her job duties for the benefit of the organization.[55]  I will refer to a person who owes a fiduciary duty to a soccer organization as a soccer "executive."[56]  Whether the soccer executives alleged to have received bribes in this case had a fiduciary duty to the relevant soccer organization(s), or what that fiduciary duty required or prohibited, are questions of fact for you to determine.[57]

The government argues that the defendants in this case engaged in schemes to have soccer executives breach their fiduciary duties to FIFA, CONMEBOL, and other specified soccer organizations through the payment (by the defendants) and receipt (by the soccer executives) of bribes or kickbacks.  Bribery and kickbacks involve the exchange of a thing or things of value for official action by an executive, in other words, a quid pro quo (a Latin phrase meaning "this

---

[53] See First Tr. Inst. 39.

[54] See First Tr. Inst. 39-40; see also Harper Inst.

[55] See First Tr. Inst. 40; see also United States v. Rybicki, 354 F.3d 124, 142 & n.17 (2d Cir. 2003) (en banc); United States v. Milovanovic, 678 F.3d 713, 724 (9th Cir. 2012).

[56] Adapted from First Tr. Inst. 40.  The government respectfully submits that the term "executive" may be clearer than the term "official," which in the context of soccer may connote an individual akin to a referee.

[57] See First Tr. Inst. 40; see also United States v. Harper, No. 13-CR-601 (RJD), 2015 WL 6029530, at *3 (E.D.N.Y. Oct. 15, 2015).

for that" or "these for those").[58]  Bribery and kickbacks also include offers and solicitations of things of value in exchange for official action.[59]  Bribery and kickbacks also include the executive's acceptance, solicitation, or agreement to accept a thing of value in exchange for official action, regardless of whether or not the payor actually provides the thing of value, and regardless of whether or not the executive ultimately performs the official action or intends to do so.[60]

The term "official act" includes a decision or action on a matter involving the formal exercise of the organization's power akin to awarding a contract or issuing a lawsuit.[61] The term "official act" also includes using one's official position to exert pressure on another executive to perform an official act.[62]  The term also includes using one's official position to advise another executive, knowing or intending that such advice will form the basis for an official act by another executive.[63]

Standing alone, setting up a meeting, calling another executive, or hosting an event is not an "official act."[64]  This is not to say that setting up a meeting, calling another

---

[58] Adapted from First Tr. Inst. 40; see also Boyland Inst.

[59] See First Tr. Inst. 40; see also Boyland Inst.

[60] Adapted from First Tr. Inst. 40; see also Boyland Inst.

[61] See First Tr. Inst. 40; see also United States v. Silver, 864 F.3d 102, 118 (2d Cir. 2017); see also McDonnell v. United States, 579 U.S. 550, 574 (2016).

[62] Adapted from First Tr. Inst. 40; see also McDonnell, 579 U.S. at 574; United States v. Skelos, 707 F. App'x 733, 739-40 (2d Cir. 2017).

[63] Adapted from First Tr. Inst. 40; see also McDonnell, 579 U.S. at 574; Skelos, 707 F. App'x at 739-40.

[64] Adapted from First Tr. Inst. 40; see also McDonnell, 579 U.S. at 574.

executive, or hosting an event is irrelevant.[65]  If an executive sets up a meeting, hosts an event, or

makes a phone call on a question or matter that is or could be pending before another executive,

that can serve as evidence of an agreement to take an official act.[66]  Whether or not an executive

took an official act or agreed to do so is a question of fact for you to determine, like any other

fact question.

The executive and the payor need not state the <u>quid pro quo</u> in express terms,

otherwise, the law's effect could be frustrated by knowing winks and nods.[67]  Similarly, a

scheme to defraud need not be shown by direct evidence.[68]  Rather, the intent to exchange may

be implied from the executive's words and actions.[69]

Bribery and kickbacks require the intent to effect an exchange of money or other

thing of value for official actions, but each payment need not be correlated with a specific

official act.[70]  If the government establishes the <u>quid pro quo</u>, the specific transactions

comprising the illegal scheme need not match up this for that.[71]  In other words, the intended

exchange in bribery can be "this for these" or "these for these," not just "this for that."[72]  It is

---

[65] Adapted from First Tr. Inst. 40-41; <u>see also</u> <u>McDonnell</u>, 579 U.S. at 573.

[66] <u>See</u> First Tr. Inst. 41; <u>see also</u> <u>McDonnell</u>, 579 U.S. at 573.

[67] Adapted from First Tr. Inst. 41; <u>see also</u> <u>Boyland</u> Inst.

[68] <u>See</u> First Tr. Inst. 41; <u>see also</u> Sand, <u>Modern Federal Jury Instructions</u>, Inst. 44-4.

[69] <u>See</u> First Tr. Inst. 41; <u>see also</u> <u>Boyland</u> Inst.

[70] <u>See</u> First Tr. Inst. 41; <u>see also</u> <u>Boyland</u> Inst.; <u>United States v. Ganim</u>, 510 F.3d 134, 148 (2d Cir. 2007) (Sotomayor, J.).

[71] <u>Id.</u>

[72] <u>Id.</u>

enough that the government proves that a particular payment or promise to provide something of value is made in exchange for a commitment to perform official acts to benefit the payor in the future.[73]

The government is not required to prove an explicit promise at the time of payment to perform certain acts.[74]  Rather, the requisite quid quo pro may be satisfied upon a showing that an executive received a benefit in exchange for his promise to perform official acts on a specific, focused, and concrete question or matter as specific opportunities arise.[75]  In other words, the honest services fraud statute criminalizes schemes involving payments at regular intervals in exchange for specific official acts on a particular question or matter as the opportunities to commit those acts arise, even if the opportunity to undertake the requested act has not arisen, and even if the payment is not exchanged for a particular act but given with the expectation that the executive will exercise particular kinds of influence on a particular question or matter.[76]  The particular question or matter must be identified at the time the executive accepts a payment.  However, circumstantial evidence demonstrating an understanding between the payor and the executive will often be sufficient to identify the question or matter.[77]

_____

[73] Id.

[74] See First Tr. Inst. 41; see also United States v. Percoco, 13 F.4th 180, 189-91 (2d Cir. 2021), cert. filed on other grounds sub nom., Ciminelli v. United States, No. 21-1170 (U.S. filed Feb. 18, 2022); United States v. Rosen, 716 F.3d 691, 701 (2d Cir. 2013), abrogated on other grounds by McDonnell v. United States, 579 U.S. 550 (2016).

[75] Adapted from First Tr. Inst. 41; see also Percoco, 13 F.4th at 189-91; Rosen, 716 F.3d at 701.

[76] Adapted from First Tr. Inst. 41; see also Percoco, 13 F.4th at 189-91; Skelos, 707 F. App'x at 738-39.

[77] See Percoco, 13 F.4th at 190-91.

It is not a defense to claim that an executive would have lawfully performed the official action in question even without having accepted a thing of value or that the official action is actually lawful, desirable, or even beneficial to the organization.[78]  Also, it is not necessary for the government to prove that the scheme actually succeeded, or that any official act was actually taken by the executive in the course of the scheme.[79]  What the government must prove is that the defendant knowingly devised or participated in a scheme or artifice to defraud the organization or organizations of their right to honest services through bribes or kickbacks. The offense of honest services fraud is not concerned with the wisdom or results of the executive's decisions, but rather with the manner in which the executive makes his or her decisions.

The government is not required to prove that the defendant personally originated the scheme to defraud.[80]  Furthermore, it is not necessary that the government prove that the defendant actually realized any gain from the scheme or that the intended victim actually suffered any loss.[81]  At the same time, you may consider whether it succeeded in determining whether the scheme existed.[82]

---

[78] Adapted from First Tr. Inst. 42; see also Boyland Inst.

[79] Adapted from First Tr. Inst. 42; see also Boyland Inst.; Sand, Modern Federal Jury Instructions, Inst. 44-4.

[80] Adapted from First Tr. Inst. 42; see also Sand, Modern Federal Jury Instructions, Inst. 44-4.

[81] Adapted from First Tr. Inst. 42; see also Sand, Modern Federal Jury Instructions, Inst. 44-4; Boyland Inst..

[82] See First Tr. Inst. 42; see also Boyland Inst.; Sand, Modern Federal Jury Instructions, Inst. 44-4.

<u>Second Element: Participation in Scheme With Intent</u>

The second element of wire fraud is that the defendant devised or participated in the scheme knowingly, intentionally, and with specific intent to defraud.[83]  The definitions of knowingly and intentionally here are the same as the definitions that I gave you earlier.

"Intent to defraud" means to act knowingly and with the specific intent to deceive, for the purpose of depriving the soccer organization or organizations of their right to the honest services of their executives—<u>i.e.</u>, their right to the executive's faithful performance of his or her fiduciary duties to the organization, including the duty to not accept personal payments in exchange for official acts on behalf of the organization.[84]  The deceit may consist of the concealment of the things of value that the executive has solicited or received, or the executive's implicit false pretense to the organization that he remains loyal to the organization's interests.[85] The government need not prove that the defendant intended to cause economic or pecuniary harm or that any such harm actually resulted from the fraud.[86]  Whether a person acted knowingly, intentionally, and with intent to defraud is a question of fact for you to determine, like any other fact question.

Direct proof of knowledge and fraudulent intent is almost never available.[87]  It would be a rare case where it could be shown that a person wrote or stated that as of a given time

---

[83] Adapted from First Tr. Inst. 42; <u>see also</u> Sand, <u>Modern Federal Jury Instructions</u>, Inst. 44-5.

[84] Adapted from First Tr. Inst. 42; <u>see also</u> Sand, <u>Modern Federal Jury Instructions</u>, Inst. 44-5.

[85] Adapted from First Tr. Inst. 42-43; <u>see also</u> <u>Boyland</u> Inst.

[86] Adapted from First Tr. Inst. 43; <u>see also</u> <u>Rybicki</u>, 354 F.3d at 145.

[87] <u>See</u> First Tr. Inst. 43; <u>see also</u> <u>Boyland</u> Inst.

in the past he or she committed an act with fraudulent intent.[88]  Such direct proof is not required.[89]

The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his or her words, conduct, and acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.[90]  Circumstantial evidence, if believed, is of no less value than direct evidence.[91]  In either case, the essential elements of the crime must be established beyond a reasonable doubt.

Since an essential element of the crime charged is intent to defraud, it follows that good faith on the part of the defendant is a complete defense to wire fraud.[92]  However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith.[93]  A defendant has no burden to establish a defense of good faith.[94]  The burden is on the government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt.[95]

---

[88] See First Tr. Inst. 43; see also Sand, Modern Federal Jury Instructions, Inst. 44-5.

[89] Id.

[90] Id.

[91] Id.

[92] Adapted from First Tr. Inst. 43; see also Boyland Inst.

[93] See First Tr. Inst. 43; see also Sand, Modern Federal Jury Instructions, Inst. 44-5.

[94] See First Tr. Inst. 43; see also Boyland Inst.

[95] Id.

However, if the defendant participated in the scheme to defraud, then a belief by the defendant, if such belief existed, that ultimately everything would work out so that no one would lose any money does not require you to find that the defendant acted in good faith.[96]  If the defendant participated in the scheme with the intent of depriving the victim or victims of their right to an executive's honest services, then no amount of honest belief on the part of the defendant that the scheme would, for example, ultimately benefit the organization, will excuse fraudulent actions or false representations by him or her.[97]

In sum, in order to prove wire fraud, the government must prove beyond a reasonable doubt that the defendant knew that his conduct as a participant in the scheme was calculated to deceive and he or she nonetheless participated in the alleged fraudulent scheme for the purpose of depriving an organization or organizations of the honest services of at least one individual who owed a fiduciary duty to such organization or organizations.[98]  Thus, in order to sustain the charges against the defendants, the government must establish beyond a reasonable doubt that the defendants were knowing participants in the scheme and acted with specific intent to defraud.[99]

Third Element: Materiality

The third element of wire fraud is that the false or fraudulent representation or failure to disclose relates to a material fact or matter. A fact or matter is material if it would

---

[96] Adapted from First Tr. Inst. 43; see also United States v. Finazzo, 682 F. App'x 6, 8-9 (2d Cir. 2017).

[97] Adapted from First Tr. Inst. 43-44; see also Finazzo, 682 F. App'x at 8-9.

[98] Adapted from First Tr. Inst. 44; see also Finazzo, 682 F. App'x at 8-9.

[99] See First Tr. Inst. 44.

reasonably be expected to be of concern to or influence the employer – here, the relevant soccer organization – to change its behavior.[100]

Fourth Element: Use of the Wires

The fourth and final element the government must establish beyond a reasonable doubt to prove wire fraud is the use of an interstate or international wire communication in furtherance of the scheme to defraud.[101]  It is not necessary for the defendant to be directly or personally involved in the wire communications, as long as the wire communication was reasonably foreseeable in the execution of the alleged scheme to defraud.[102]  Evidence that a defendant agreed to cause the wires to be used by others is sufficient.  This does not mean that a defendant must specifically have authorized others to do the communication.  When one does an act with knowledge that the use of the wires will follow in the ordinary course of business or where such use of the wires can be reasonably foreseen, even though not actually intended, then he or she causes the wires to be used for the purposes of the element.[103]  Furthermore, this wire use requirement is satisfied even if the wire use was done by a person with no knowledge of the fraudulent scheme, including a victim of the alleged fraud.  The use of the wires need not itself

---

[100] Harper Inst.

[101] See First Tr. Inst. 45; see also Boyland Inst.; Sand, Modern Federal Jury Instructions, Inst. 44-7.

[102] Adapted from First Tr. Inst. 45; see also Boyland Inst.; Sand, Modern Federal Jury Instructions, Inst. 44-7.

[103] See First Tr. Inst. 45; see also Sand, Modern Federal Jury Instructions, Inst. 44-7.

transmit a fraudulent representation.[104]  It must, however, further or assist in the carrying out of the scheme to defraud.[105]

It is not necessary that all or most of the wire communications involved in the alleged scheme to defraud were sent to, from, or within the United States.  However, for the wire-use element to be satisfied, the scheme to defraud must make more than minimal use of wire communications that pass between two or more states or pass between the United States and a foreign country.[106]

---

[104] See First Tr. Inst. 45; see also Boyland Inst.; Sand, Modern Federal Jury Instructions, Inst. 44-7.

[105] Id.

[106] Id.

Aiding and Abetting

The wire fraud charges in Counts Two through Twelve and Seventeen through Twenty-Two also charge the defendants with aiding and abetting wire fraud.  That is, in each of these counts, each defendant is charged not only as a principal who committed the crimes, but also as an aider and abettor and as a person who willfully caused the crimes.  As a result, there are two additional ways that the government may establish each defendant's guilt on these counts.  One way is called "aiding and abetting," and the other is called "willfully causing a crime."  I will explain each of these.

I will start by explaining "aiding and abetting."  Aiding and abetting is defined under federal law in Title 18, United States Code, Section 2, which provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands or procures its commission, is punishable as a principal."

Under the aiding and abetting statute, it is not necessary for the government to show that a defendant himself or herself physically committed the crime with which he or she is charged for you to find the defendant guilty.  A defendant who aids or abets another to commit an offense is just as guilty of that offense as if he or she committed it himself or herself.

Accordingly, you may find the defendant you are considering guilty of the offense charged if you find beyond a reasonable doubt that the government has proven the following elements.

First, another person committed the crime (that is, all of the elements of the crime previously described were committed by someone).  No one can be convicted of aiding and abetting the criminal acts of another if no crime was committed by the other person in the first place.

45

Second, the defendant, knowing that such a crime was being committed, intentionally associated himself or herself with that crime. For this element, the government must prove that the defendant associated himself or herself with the crime with the same criminal intent that would be necessary to convict the defendant as a principal.

Third, the defendant intentionally took some action to make the crime succeed.

Please remember, though, that merely associating with others who were committing is not sufficient to establish aiding and abetting. One who has no knowledge that a crime is being committed or is about to be committed but inadvertently does something that aids in the commission of that crime is not an aider and abettor. An aider and abettor must know that the crime is being committed and act in a way which is intended to bring about the success of the criminal venture.

An alternative way of aiding and abetting a crime is by willfully causing the crime. The relevant statute is section 2(b) of the aiding and abetting statute, which provides that "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

What does the term "willfully caused" mean? It does not mean that the defendant you are considering must physically have committed the crime or supervised or participated in the actual criminal conduct charged in the indictment. Rather, anyone who causes the doing of an act that, if done by him or her directly, would render him or her guilty of an offense against the United States is guilty as a principal. Accordingly, one who intentionally causes someone else to make a materially false and fraudulent misrepresentation or omission in connection with depriving a soccer organization of its right to the honest services of its executives is guilty as a principal, if the government proves that the person who causes the making of such

46

misrepresentation or omission acted knowingly, willfully, and with the specific intent to defraud

the soccer organization and satisfies the other elements of wire fraud that I have described to

you.  This is so even if the individual that was caused to make the misrepresentation or omission

had no criminal intent.[107]

---

[107] Adapted from <u>United States v. Gatto</u>, No. 17-CR-686 (LAK) (S.D.N.Y.), Jury Instructions, dated Oct. 22, 2018, ECF Dkt. No. 284, <u>aff'd</u>, 986 F.3d 104 (2d Cir. 2021).

REQUEST NO. 6

COUNTS ONE, FOURTEEN, AND
SIXTEEN: WIRE FRAUD CONSPIRACY
(Title 18, United States Code, Section 1349)

In Count One of the Indictment, the defendants FULL PLAY, HERNAN LOPEZ,

and CARLOS MARTINEZ are charged with a wire fraud conspiracy related to the Copa

Libertadores.  In Counts Fourteen and Sixteen of the Indictment, the defendant FULL PLAY is

charged with wire fraud conspiracy related to the CONMEBOL World Cup qualifiers and

friendlies and the Copa América, respectively.    I will read each of the counts to you now.

Count One relates to the Copa Libertadores and provides as follows:

In or about and between 2000 and 2015, both dates being
approximate and inclusive, within the Eastern District of New York
and elsewhere, the defendants FULL PLAY, HERNAN LOPEZ and
CARLOS MARTINEZ, together with others, did knowingly and
intentionally conspire to devise a scheme and artifice to defraud
FIFA and CONMEBOL and their constituent organizations,
including to deprive FIFA and CONMEBOL and their constituent
organizations of their respective rights to honest and faithful
services through bribes and kickbacks, and to obtain money and
property by means of materially false and fraudulent pretenses,
representations and promises, and for the purpose of executing such
scheme and artifice, to transmit and cause to be transmitted by
means of wire communication in interstate and foreign commerce,
writings, signs, signals, pictures and sounds, to wit: wire transfers,
telephone calls and emails, contrary to Title 18, United States Code,
Section 1343.

Count Fourteen relates to the CONMEBOL World Cup qualifiers and friendlies

and provides as follows:

In or about and between 2009 and 2015, both dates being
approximate and inclusive, within the Eastern District of New York
and elsewhere, the defendant FULL PLAY, together with others, did
knowingly and intentionally conspire to devise a scheme and artifice
to defraud FIFA and CONMEBOL and their constituent
organizations, including to deprive FIFA and CONMEBOL and

their constituent organizations of their respective rights to honest and faithful services through bribes and kickbacks, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: wire transfers, telephone calls and emails, contrary to Title 18, United States Code, Section 1343.

Count Sixteen relates to the Copa América and provides as follows:

In or about and between 2010 and 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FULL PLAY, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud FIFA, CONCACAF and CONMEBOL and their constituent organizations, including to deprive FIFA, CONCACAF and CONMEBOL and their constituent organizations of their respective rights to honest and faithful services through bribes and kickbacks, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: wire transfers, telephone calls and emails, contrary to Title 18, United States Code, Section 1343.

I have already instructed you with respect to the law of conspiracy and with respect to honest services wire fraud in connection with Counts Two through Twelve and Seventeen through Twenty-Two. Those same principles apply here, and I will not repeat every instruction again. However, in order to find Defendants FULL PLAY, HERNAN LOPEZ, or CARLOS MARTINEZ guilty of the wire fraud conspiracy charged in Count One, or Defendant FULL PLAY guilty of the wire fraud conspiracies charged in Counts Fourteen or Sixteen, the government must prove beyond a reasonable doubt the two following elements as to each count:

First:     two or more persons entered into the particular unlawful agreement charged in the conspiracy count you are considering; and

49

<u>Second</u>:       the defendant you are considering knowingly and intentionally became a member of the conspiracy.

In addition, with respect to the use of the wires contemplated by the conspiracies charged in Counts One, Fourteen, and Sixteen, the government must prove beyond a reasonable doubt that the conspiracies contemplated the particular types of wire usage charged in the Indictment, that is, wire transfers, telephone calls, or emails.[108]  However, I remind you that the crime of conspiracy—an agreement—to violate a law, as charged in these counts of the Indictment, is an independent offense.  It is separate and distinct from the actual violation of any specific law, such as the law prohibiting honest services wire fraud.  Accordingly, you may find the defendants guilty of the offenses charged in Counts One, Fourteen, and Sixteen even if you find that the honest services wire fraud was never actually committed.[109]

---

[108] Adapted from First Tr. Inst. 48-50; <u>see also</u> Sand, <u>Modern Federal Jury Instructions</u>, Inst. 44-7.

[109] <u>See</u> First Tr. Inst. 50; <u>see also</u> <u>Boyland</u> Inst.

REQUEST NO. 7

COUNTS THIRTEEN, FIFTEEN, AND
TWENTY-THREE: MONEY LAUNDERING CONSPIRACY
(Title 18, United States Code, Section 1956)

In Count Thirteen of the Indictment, the defendants FULL PLAY, HERNAN

LOPEZ, and CARLOS MARTINEZ are charged with a money laundering conspiracy related to

the Copa Libertadores.  In Counts Fifteen and Twenty-Three of the Indictment, the defendant

FULL PLAY is each charged with another money laundering conspiracy related to the

CONMEBOL World Cup qualifiers and friendlies and the Copa América, respectively.  I will

read each of these charges to you now.

Count Thirteen relates to the Copa Libertadores and provides as follows:

In or about and between 2000 and 2015, both dates being
approximate and inclusive, within the Eastern District of New York
and elsewhere, the defendants FULL PLAY, HERNAN LOPEZ and
CARLOS MARTINEZ, together with others, did knowingly and
intentionally conspire to transport, transmit and transfer monetary
instruments and funds, to wit: wire transfers, from places in the
United States to and through places outside the United States and to
places in the United States from and through places outside the
United States, with the intent to promote the carrying on of specified
unlawful activity, to wit: wire fraud, contrary to Title 18, United
States Code, Section 1343, all contrary to Title 18, United States
Code, Section 1956(a)(2)(A).

Count Fifteen relates to the CONMEBOL World Cup qualifiers and friendlies and

provides as follows:

In or about and between 2009 and 2015, both dates being
approximate and inclusive, within the Eastern District of New York
and elsewhere, the defendant FULL PLAY, together with others, did
knowingly and intentionally conspire to transport, transmit and
transfer monetary instruments and funds, to wit: wire transfers, from
places in the United States to and through places outside the United
States and to places in the United States from and through places
outside the United States, with the intent to promote the carrying on

of specified unlawful activity, to wit: wire fraud, contrary to Title 18, United States Code, Section 1343, all contrary to Title 18, United States Code, Section 1956(a)(2)(A).

Count Twenty-Three relates to the Copa América and provides as follows:

In or about and between 2010 and 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FULL PLAY, together with others, did knowingly and intentionally conspire to transport, transmit and transfer monetary instruments and funds, to wit: wire transfers, from places in the United States to and through places outside the United States and to places in the United States from and through places outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud, contrary to Title 18, United States Code, Section 1343, all contrary to Title 18, United States Code, Section 1956(a)(2)(A).

I have already instructed you with respect to the law of conspiracy. Those same instructions apply here.[110] With respect to Counts Thirteen, Fifteen, and Twenty-Three, the government alleges that the object of the defendants' conspiracies is the offense of money laundering. I will explain money laundering and conspiracy to commit money laundering in turn.

Money Laundering

Title 18, United States Code, Section 1956(a)(2)(A) provides:

Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of specified unlawful activity [shall be guilty of a crime].

---

[110] Adapted from First Tr. Inst. 50-51.

52

The offense of money laundering in violation of section 1956(a)(2)(A) consists of two elements:

First, that the defendant transported, or attempted to transport, a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States.[111]

The term "funds" refers to money or negotiable paper that can be converted into currency.[112]  "Transportation" is not a word that requires a definition; it is a word which has its ordinary, everyday meaning.[113]  It is not required that the defendant physically carried the funds or monetary instrument in order that he or she be responsible for transporting it.[114]  The term also includes wire transfers as well as physical conveyances of money.[115]  All that is required is that the defendant caused the funds or monetary instrument to be transported.[116]  To satisfy this element, the funds or monetary instruments must have been transported from somewhere in the United States to or through someplace outside the United States or to someplace in the United States from or through someplace outside the United States.[117]

---

[111] Adapted from First Tr. Inst. 45-46; see also Sand, Modern Federal Jury Instructions, Inst. 50A-13; United States v. Piervinanzi, 23 F.3d 670 (2d Cir. 1994).

[112] See First Tr. Inst. 46; see also Sand, Modern Federal Jury Instructions, Inst. 50A-13.

[113] Id.

[114] Adapted from First Tr. Inst. 46; see also Sand, Modern Federal Jury Instructions, Inst. 50A-13.

[115] See First Tr. Inst. 46; United States v. Piervinanzi, 23 F.3d 670, 678 (2d Cir. 1994).

[116] Adapted from First Tr. Inst. 46; see also Sand, Modern Federal Jury Instructions, Inst. 50A-13.

[117] Id.

The term "monetary instrument" includes, among other things, money, coins, or currency of the United States or any other country, personal checks, traveler's checks, cashier's checks, bank checks, money orders, and investment securities or negotiable instruments in bearer form or otherwise in such a form that title passes on delivery.[118]

Second, that the defendant acted with the intent to promote the carrying on of specified unlawful activity.[119]

The term "specified unlawful activity" means one of a variety of offenses defined by the statute.  In this case, the government has alleged that the offense in question is honest services wire fraud, which I explained earlier.  I instruct you that, as a matter of law, honest services wire fraud falls within the definition of specified unlawful activity.

I have already explained what it means to act intentionally, and those instructions apply here.

To be clear, the defendants here are not charged with money laundering but I provide these instructions as context for the conspiracy charge that follows.

---

[118] See First Tr. Inst. 46-47; see also 18 U.S.C. § 1956(c)(5); Sand, Modern Federal Jury Instructions, Inst. 50A-13.

[119] See First Tr. Inst. 47; see also Sand, Modern Federal Jury Instructions, Inst. 50A-13; United States v. Piervinanzi, 23 F.3d 670 (2d Cir. 1994).

Conspiracy to Commit Money Laundering

Title 18, United States Code, Section 1956(h) provides that "[a]ny person who conspires to commit any offense defined in this section [shall be guilty of a crime]."

To prove money laundering conspiracy, the government must establish the following elements beyond a reasonable doubt:

First:    two or more persons entered into the particular unlawful agreement to commit the money laundering offense I just explained; and

Second:    the conspirator knowingly and intentionally became a member of the conspiracy.

Again, I remind you that with respect to Counts Thirteen, Fifteen, and Twenty-Three, the government alleges only that the defendants conspired to commit the offense of money laundering. The money laundering conspiracies are separate and distinct from the actual violation of any specific law, such as the law prohibiting money laundering.[120] The government does not need to prove that money laundering was committed or attempted for you to find that a money laundering conspiracy has been proven.[121] Accordingly, you may find the defendants guilty of the offenses charged in Counts Thirteen, Fifteen, and Twenty-Three even if you find that money laundering was never actually committed.[122]

---

[120] See First Tr. Inst. 51.

[121] Adapted from First Tr. Inst. 48; see also United States v. Petrossi, 16-CR-234 (BMC) (E.D.N.Y.), Jury Instructions, dated May 2, 2017 ("Petrossi Inst.").

[122] See First Tr. Inst. 51.

55

CONCLUSION

The United States respectfully requests that the Court include the foregoing

charges in its instructions to the jury.

Dated: Brooklyn, New York
       April 25, 2022

Respectfully submitted,

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Samuel P. Nitze
Patrick T. Hein
Kaitlin T. Farrell
Victor Zapana
Assistant United States Attorneys
       (Of Counsel)