

1990 South Bundy Drive, Suite 705  
Los Angeles, CA 90025  
P 310.826.4700  F 310.826.4711

617 West 7th Street, Suite 200  
Los Angeles, CA 90017  
P 213.205.6520  F 213.205.6521

www.spertuslaw.com

February 17, 2023

**Via CM/ECF- UNDER SEAL**

The Honorable Pamela K. Chen  
United States District Court for the Eastern District of New York  
255 Cadman Plaza East  
Brooklyn, New York 11201

    Re:    *United States v. Carlos Martinez*, No. 15-cr-252 (PKC)

Dear Judge Chen,

### I. Background

Mr. Martinez moves to strike GX-2011/GX-2011-T, and preclude GX-959/GX-959-T. GX-2011 is an email from Sebastian Bauza to Luis Bedoya and others. It is inclusive of GX-959, which is the standalone news article. GX-2011 constitutes hearsay within hearsay within hearsay. Separate and apart, GX-959 is inadmissible because it constitutes hearsay within hearsay.

As it applies to GX-2011-t, the first layer of hearsay is Mr. Bauza's email Bedoya and others. This layer of hearsay encompasses the entire email, from the header to the line at the bottom that reads "Sent from my iPad Sebastian Bauza." GX-2011-t at 3.

From here, GX-2011-t and GX-959 are substantively identical. This layer of hearsay is the news article. It reflects the statements of Natalia Roba, the reporter, and (most likely) interviewer for the publication El Observador. Some of the statements in the news article are Ms. Roba's own statements, such as the introduction before the Q&A and the questions she asks Mr. Martinez and Mr. Veiga. This layer also includes statements of Roba's that she attributes to Mr. Martinez and Mr. Veiga.

The third layer of hearsay consists of statements the government attributes to Mr. Martinez and Mr. Veiga.

### II. Law on Hearsay

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). When there are multiple layers of hearsay within a statement, the statement will only come into evidence if there is an independent basis to admit each layer. *United States v. Cruz*, 894 F.2d 41, 44 (2d Cir. 1990). In other words, each layer must be analyzed separately. *Thomas v. Bronco Oilfield Servs.*, 503 F. Supp. 3d 276, 291 (W.D. Pa. 2020) ("Evidence containing multiple

SPERTUS
LANDES &
JOSEPHS
LLP

February 17, 2023
Page 2 of 7

levels of hearsay is inadmissible for its truth unless each layer, analyzed independently falls within an established hearsay exception or is treated as nonhearsay.").

When an outer layer of hearsay is admissible, but the inner layer contains inadmissible statements, courts will sometimes redact the inadmissible portion. *See, e.g.*, *Carlson v. Bukovic*, No. 07 C 06, 2009 WL 1575548, at *4 (N.D. Ill. June 4, 2009). For example, medical records admissible as business records under 803(6) sometimes contain statements from the patient or the doctor that may be inadmissible, in which case a court may redact the inadmissible portions and allow the majority of the report to come into evidence. *Id.*

This rule does not work in the inverse. If the outer layer is inadmissible hearsay, the entire contents are precluded. *See Halloway v. Milwaukee Cnty.*, 180 F.3d 820, 824–25 (7th Cir.1999) (excluding "hearsay within hearsay" where the inner layer would have been admissible as statements of party opponents but the outer layer was inadmissible). This is because the inner layer is fully encompassed within hearsay, so there is no way to excise the problematic portion. The available remedy in that case is to call the declarant of the inner layer to testify.

### III. Analysis

**A. Mr. Bauza's email is inadmissible**

Mr. Bauza's email, is an out of court statement. The government is offering this statement to show that that Mr. Bauza communicated with Mr. Bedoya about the fact that Fox was dueling with Paco in Uruguay. That is, in fact, the subject line of the email. *See* GX-2011-t. The email is therefore hearsay and inadmissible unless an exception applies.

The email cannot be admitted as a coconspirator statement because Mr. Bauza is not a coconspirator, and the statement was not made in furtherance of the conspiracy. To fall within the coconspirator exception to the rule against hearsay, the statement must be "offered against an opposing party. . . and made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To court must conclude that (a) "there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy." *United States v. Al-Moayad*, 545 F.3d 139, 173 (2d Cir. 2008) (quoting *United States v. Alameh*, 341 F.3d 167, 176 (2d Cir. 2003)).

Mr. Bauza, the declarant, is not a coconspirator. *See* Trial Tr. at 4675-78. The government has made a point to emphasize he was not receiving bribes. *See id.*



It is additionally inadmissible because Mr. Bauza did not make any statements to further the conspiracy. "The touchstone of the 'in furtherance' requirement is that the statement be designed to promote the accomplishment of the conspiracy's goals." *United States v. Johnson*, 469 F. Supp. 3d 193, 212–13 (S.D.N.Y. 2019) (citations and alterations omitted). Mr. Bauza's email to Bedoya did not further any goals of the conspiracy. He did not share those goals. Thus, the statement cannot come in as a coconspirator statement for this independent reason.

### B. Ms. Roba's reporting is inadmissible hearsay

The news article is an out of court statement. The government offers it to show that, when Mr. Martinez was confronted with an accusation of bribery and asked about the fact that CONMEBOL had granted T&T the Copa Libertadores rights over Paco Casal's higher dollar offer, Mr. Martinez portrayed the allegation of bribery and Casal's lawsuit as third-party issues that were not concerning. Thus, the news article is offered for its truth.[1]

"[A] newspaper article is hearsay, and in almost all circumstances is inadmissible." *Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590, 595 (S.D.N.Y. 2002) (quoting *Dallas County v. Commercial Union Assurance Co.,* 286 F.2d 388 (5th Cir. 1961)). Because newspaper articles do not fit within any of hearsay exceptions, they are analyzed under the residual exception. *See id.*; *E. Profit Corp. Ltd. v. Strategic Vision US, LLC,* No. 18-CV-2185 (LJL), 2020 WL 7490107, at *4 (S.D.N.Y. Dec. 18, 2020).

To be admissible under the residual exception at Fed. R. Evid. 807, an out of court statement "must fulfill five requirements: trustworthiness, materiality, probative importance, the interests of justice, and notice." *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991). When examining trustworthiness, courts ask "to what extent, it minimizes the 'four class hearsay dangers,' namely, insincerity, faulty perception, faulty memory, and faulty narration" are present. *Id.* (citation omitted). "Unsupported newspaper articles will normally fail on all of these grounds. Unless their author is available for cross-examination, newspaper stories generally will present a blank face that gives little clue as to the reliability of the reporter's perception, memory, narration, or sincerity, and in addition fails to disclose how the article was changed in the editing process." *Id.* (quoting *In re Columbia Sec. Litig.*, 155 F.R.D. 466, 474 (S.D.N.Y. 1994)).

Here, the email fails for, at least, three reasons. The email is not trustworthy, it is not material, and Mr. Martinez received no notice of the government's intent to rely on the residual exception.

---

[1] The email cannot be offered under 803(3) for a state of mind purpose. The news article reveals only Ms. Roba's state of mind—which is not relevant to any issue in the case.



February 17, 2023
Page 4 of 7

First the email is not trustworthy. In *Jacobson*, the court excluded a news article because it was no more trustworthy than average. The article published in Bloomberg contained both English and German, and the undisputed facts demonstrated that the reporter was "fluent in English and German," that he "underst[ood] the meaning of quotation marks," as a verbatim sentence, he "normally wr[ote] down quotations from an interview 'in a quiet moment' following the interview, that he always wr[ote] in English, and that he and at least one editor read every article he wr[ote] before publication." *Jacobson*, 206 F. Supp. 2d at 596. The court found that these facts "provide[d] no support for . . . [the] contention the [news article was] more trustworthy than the average news account," and found the article inadmissible. *Id.*

By way of contrast, *In re Columbia Sec. Litig.*, the court found a reporter's article adequately trustworthy because the reporter was "availability to testify and be cross-examined" which the court found "offset to a large degree the primary rationale for the hearsay rule." 155 F.R.D. 466, 476–77 (S.D.N.Y. 1994). The court found the article additionally trustworthy because the journalist was "an experienced reporter at a well-regarded publication and took contemporaneous notes as she spoke to the witness, [and the] defendants raise no serious challenge regarding faulty perception, memory, or reporting." *Id.*

Here, Ms. Roba is not testifying. The government has not introduced any information about her process, including: (1) whether she took contemporaneous notes; (2) how long after the interview she wrote the article; (3) whether, by drafting Mr. Martinez's answers to her questions in the first person, she intended them to be taken as a verbatim transcription and, if so, whether she was faithful in recounting his words; (4) whether she is an experienced or inexperienced reporter; (5) whether her work is edited by others; and (6) whether the El Observador has a good reputation or an average one.

Here, the absence of information as to the trustworthiness of Mr. Roba's reporting is even less than that which was deemed inadequate in *Jacobson*. More importantly, there are indicators that the quality of Ms. Roba's reporting—and the El Observador's publication—are actually quite low.

Significantly, the document contains at least one material error. On the final page, on the last sentence of the second to last paragraph, the article attributes the interviewer's questions to Mr. Martinez. This is best shown in the government's translation GX-2011-t at page 2. But the issue is not with the translation. The translation faithfully captures the substantive error in the original Spanish news article. *See* GX-2011.

Ms. Roba writes:

**And why does T&T offer less than what Casal offers?**



CM: I have no idea. We have an agreement to purchase the rights from T&T. This company Gol TV must recently made an offer, but our contract has been running for several years, it's longstanding, and there are several years left on it. But that contract was renewed. Did that happen automatically, or was there a bidding process?

It's clear from the context that Mr. Martinez has not suddenly began to ask himself questions. Nor is this a scrivener's error. The last two sentences are Ms. Roba's next questions. This is a substantive error that attributes to Mr. Martinez words that are not his. The fact that this obvious error survived the editorial process suggests that the article was not carefully drafted or carefully reviewed. Because the article, on its face, gives reason to doubt it has faithfully captured Mr. Martinez's statements, this reporting is not trustworthy.

Second, the email or news article are not material to the government's case. The government "has not made any showing why the evidence it seeks to present through news articles, if it is trustworthy, could not be presented in some other form" such as a live witness. *E. Profit Corp. Ltd.*, 2020 WL 7490107, at *5. The government has flown witnesses in for trial from all over the world. There is no reason why it could not have planned to include Mr. Veiga or Ms. Roba on its roster.

Finally, Mr. Martinez received no notice of the government's intent to rely on the residual exception. Because of the government's lack of notice, the legal issue was not identified in time to adequately address it and the email is now in evidence. Thus, the lack of notice has harmed Mr. Martinez.

### III. Mr. Martinez's statements are inadmissible

The statements in the article ostensibly attributable to Mr. Martinez are hearsay within hearsay. *Mandal v. City of New York*, No. 02 CIV. 1234 WHP, 2006 WL 3405005, at *1 (S.D.N.Y. Nov. 26, 2006) ("[N]ewspaper articles containing quoted remarks are hearsay within hearsay—they contain out of court statements by the quoted individual, within a document that is itself an out of court statement."). The government offers these statements for their truth.[2] Specifically, the government wants to show the jury that, when asked about bribes, Mr. Martinez responded that he could not comment and went on to say, "any complaints there may be between third parties aren't our concern." GX-2011-t. The government offers this to show that Mr. Martinez was not concerned

---

[2] Any claim that Mr. Martinez's statements are nonhearsay because they reveal his mental state suffers from the same reliability issues. His statements are admissible for a state of mind purpose only if the Court first concludes that they may be fairly attributed to him. Because the newspaper article lacks indicia of reliability, statements ostensibly attributed to him are not admissible for any purpose.



about third party allegations of bribery. Thus, the statements are hearsay unless an exception applies.

When a news article contains "direct quotations or attributes specific statements to individual Defendants or their agents" the statements are admissible because they fit within the hearsay exception for "admissions by party opponents under Rule 801(d)(2)." *Mandal*, 2006 WL 3405005, at *2. That is, unless the defendant "denies having made *any of the statements* attributed to" him. *Id.* (emphasis added).

Here, Mr. Martinez did not say, at least, two sentences that are directly attributed to him. He never said "[b]ut the contract was renewed. Did that happen automatically, or was there a bidding process?" *See* GX-2011-t at 2. This casts doubt on whether any of the other statements directly attributed to him are fairly so attributed. Thus, the same reliability concerns described above render his statements inadmissible as statements of a party opponent.

## IV. Conclusion

Here, all three layers of hearsay are inadmissible. Even if the inner most layer were admissible as a statement of a party opponent, it would still not come into evidence because it is wholly encompassed within an outer layer of hearsay. In other words, there are no statements attributable to Mr. Martinez that are not filtered through Ms. Roba's reporting. If Ms. Roba's reporting is inadmissible hearsay, all of its subparts are too. Ms. Roba's news article does not fit within the residual exception, so the entire article must be stricken.

## V. Remedy

Mr. Martinez requests the Court issue the following curative instruction to the jury:

> "Yesterday the government showed you an exhibit that was an email sent to Mr. Bedoya. The body of that email contained a newspaper article of an interview with Mr. Martinez. I have stricken this email from evidence after concluding that the interview within it contained errors and was not sufficiently



trustworthy.  You are to disregard it.  You may not consider this email in rendering a verdict."

Respectfully,

Samuel A. Josephs
Payton J. Lyon
Kirsi Luther
Steven J. McCool
Julia M. Coleman
Michael T. Cornacchia
Ramon A. Abadin

*Counsel for Carlos Martinez*